FILED
NOV 21 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

SUSAN M. ROHDE

Plaintiff,

v.

UNITED STATES

Defendant.

No.: 05-1226T

## COMPLAINT

### COUNT I
### (For Recovery of Taxes Paid and Abatement of TFRP for First Quarter 2001)

1. Plaintiff Susan M. Rohde ("Plaintiff"), is an individual residing at 1944 East River Terrace, Minneapolis, Minnesota 55414-3672. Her Social Security number is 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.

2. Defendant is the United States of America.

3. This is an action for the recovery and abatement of trust fund recovery penalty regarding federal employment taxes and interest erroneously and/or illegally assessed and collected from Plaintiff pursuant to Internal Revenue Code ("IRC") Section 6672. This Court has jurisdiction by reason of 28 U.S.C. §1491(a)(1).

4. On or about October 4, 2004, the Defendant, through the Cincinnati Service Center of the Internal Revenue Service, erroneously assessed a penalty against Plaintiff for not paying employment taxes or Trust Fund Recovery Penalty ("TFRP") in the amount of $96,331.74 for unpaid employment taxes for the tax period ended March 31, 2001 ("First Quarter 2001"), for

employees of TechArch, Inc. (EIN 41-1841273). A true and correct copy of the correspondence dated October 4, 2004, from Defendant to Plaintiff assessing the TFRP is attached hereto as **Exhibit 1** (012-013) and incorporated by reference.

5. On June 17, 2005, Plaintiff filed with the Cincinnati Service Center of the Internal Revenue Service a Claim for Refund and Request for Abatement (IRS Form 843) for the First Quarter 2001 ("First Quarter 2001 Claim"), and paid $793.00, the full amount of the withheld federal employment taxes for TechArch, Inc.'s (EIN 41-1841273) employee John M. Henney for the period ended March 31, 2001, which is part of the TFRP erroneously assessed against Plaintiff in the total amount of $96,331.74. A true and correct copy of the Claim for Refund and Request for Abatement for the First Quarter of 2001 and exhibits thereto are attached hereto as **Exhibit 2** (014-151) and incorporated by reference.

6. On September 1, 2005, Defendant, through the Department of the Treasury, Internal Revenue Service, notified Plaintiff via Letter 3784 that her Claim for Refund and Request for Abatement for the First Quarter 2001 was disallowed on the purported basis that her "claim has not produced any information that was not already considered in your previous appeal." A true and correct copy of Letter 3784 dated September 1, 2005 is attached hereto as **Exhibit 3** (152-153) and incorporated by reference.

7. Recovery is sought of trust fund recovery penalty in the amount of $793.00, paid by Plaintiff on June 17, 2005 to pay in full the withheld federal employment taxes for TechArch, Inc.'s (EIN 41-1841273) employee John M. Henney for the period ended March 31, 2001, and abatement of the TFRP erroneously assessed against Plaintiff in the total amount of $96,331.74.

8. Defendant has refused and continues to refuse to refund the TFRP paid by Plaintiff in the amount of $793.00 for the First Quarter 2001 and/or abate the TFRP erroneously assessed Plaintiff in the amount of $96,331.74 for unpaid employment taxes for the First Quarter 2001.

9. Plaintiff is entitled to and hereby demands judgment against Defendant for the full amount of $793.00 and abatement of the TFRP assessment in the total amount of $96,331.74, or such other amount as is appropriate, plus interest thereon as provided by law for the reasons set forth below and/or included in her First Quarter 2001 Claim, Exhibit D thereto (Exhibit 2) (088-121):

(a) Under IRC Section 6672, a person can be held liable for the TFRP only if that person is a "responsible person" who is required to collect, truthfully account for and pay over the taxes in question and that person willfully fails to collect, truthfully account and/or pay over the tax. The TFRP does not apply because Plaintiff did not willfully fail to collect, truthfully account for, or pay over the trust fund taxes.

(b) The IRS erroneously concluded that Plaintiff was a "responsible person" throughout the period 2000-2002, when in fact Plaintiff was not a "responsible person" prior to a date no earlier than February 10, 2001.

(c) Plaintiff can have no TRFP liability for trust fund taxes arising before February 10, 2001, or such later date on which she became a "responsible person" because she was not then a "responsible person" and TechArch had no unencumbered funds when she became a "responsible person".

(d) The full net proceeds of the SBA loan must be allocated, for TFRP purposes only, to TechArch's First Quarter 2001 employment taxes.

(e) The federal tax deposit penalties paid must be allocated, for TFRP purposes only, to TechArch's trust fund taxes for the period in which paid.

(f) All payments under TechArch's installment payment agreement with the Service with respect to employment taxes must be allocated, for TFRP purposes only, to reduce TechArch's trust fund taxes for the period during which Plaintiff was a responsible person, except that payments during the second and third quarters of 2002 must be allocated as if they were current employment tax deposits.

(g) Proper allocation of the SBA loan proceeds, the federal tax deposit penalties and the installment agreement and other payments, in light of the timing of Plaintiff's accession to "responsible person" status and TechArch's lack of unencumbered funds at that point, completely eliminates Plaintiff's potential TFRP liability for First Quarter 2001.

**COUNT II**
**(For Recovery of Taxes Paid and Abatement of TFRP for Second Quarter 2002)**

10. Plaintiff restates and realleges paragraphs 1 through 3 of this Complaint.

11. On or about October 4, 2004, the Defendant, through the Cincinnati Service Center of the Internal Revenue Service, erroneously assessed a TFRP against Plaintiff in the amount of $81,469.18 for unpaid employment taxes for the tax period ended June 30, 2002

("Second Quarter 2002"), for employees of TechArch, Inc. (EIN 41-1841273). **Exhibit 4**. (154-155).

12. On June 17, 2005, Plaintiff filed with the Cincinnati Service Center of the Internal Revenue Service a Claim for Refund and Request for Abatement (IRS Form 843) for the Second Quarter 2002 ("Second Quarter 2002 Claim"), and paid $67.73, the full amount of the withheld income taxes for TechArch, Inc.'s (EIN 41-1841273) employee, Brian A. Clark, for the tax period ended June 30, 2002, which is part of a TFRP erroneously assessed against Plaintiff in the total amount of $81,469.18. A true and correct copy of the Claim for Refund and Request for Abatement for the Second Quarter of 2002 and exhibits thereto are attached hereto as **Exhibit 5** (156-189) and incorporated by reference.

13. On September 1, 2005, Defendant, through the Department of the Treasury, Internal Revenue Service, notified Plaintiff via Letter 3784 that her Claim for Refund and Request for Abatement for the Second Quarter 2002 was disallowed on the purported basis that her "claim has not produced any information that was not already considered in your previous appeal." **Exhibit 3** (152-153).

14. Recovery is sought of trust fund recovery penalty in the amount of $67.73, paid by Plaintiff on June 17, 2005 to pay in full the withheld federal employment taxes for TechArch, Inc.'s (EIN 41-1841273) employee, Brian A. Clark, for the period ended June 30, 2002, and abatement of the TFRP erroneously assessed against Plaintiff for the Second Quarter 2002 in the total amount of $81,469.18.

15. Defendant has refused and continues to refuse to refund the TFRP paid by Plaintiff in the amount of $67.73 for the Second Quarter 2002 and/or abate the TFRP erroneously

assessed Plaintiff in the amount of $81,469.18 for unpaid employment taxes for the Second Quarter 2002.

16. Plaintiff is entitled to and hereby demands judgment against Defendant for the full amount of $67.73 and abatement of the TFRP assessment in the total amount of $81,469.18, or such other amount as is appropriate, plus interest thereon as provided by law for the reasons set forth below and/or included in her Second Quarter 2002 Claim, Exhibit D thereto (Exhibit 4) (132-133):

(a) Under IRC Section 6672, a person can be held liable for the TFRP only if that person is a "responsible person" who is required to collect, truthfully account for and pay over the taxes in question and that person willfully fails to collect, truthfully account and/or pay over the tax. The TFRP does not apply for Second Quarter 2002 trust fund taxes because Plaintiff did not willfully fail to collect, truthfully account for, or pay over the trust fund taxes.

(b) For the reasons set forth in paragraph 9 of this Complaint, Plaintiff has no TFRP liability for the First Quarter 2001, as a result of which payments in excess of those required to be allocated to eliminate the TFRP liability for First Quarter 2001, if any, cannot, for TFRP purposes only, be allocated to First Quarter 2001 employment taxes.

(c) The federal tax deposit penalties and interest paid after the Second Quarter 2002 must be allocated, for TFRP purposes only, to TechArch's employment taxes for Second Quarter 2002.

(d) All payments under TechArch's installment payment agreement with the Service with respect to employment taxes must be allocated, for TFRP purposes only, to reduce TechArch's trust fund taxes for the period during which Plaintiff was a responsible person, except that payments during the second and third quarters of 2002 must be allocated as if they were current employment tax deposits.

(e) The TFRP does not apply to the extent that payments under TechArch's installment payment agreement with the Service with respect to employment taxes could have been applied to reduce TFRP exposure because the Service is estopped to allocate the payments otherwise by its misleading advice to Plaintiff.

**COUNT III**
**(For Recovery of Taxes Paid and Abatement of TFRP for Third Quarter 2002)**

17. Plaintiff restates and re-alleges paragraphs 1 through 3 of this Complaint.

18. On or about October 4, 2004, the Defendant, through the Cincinnati Service Center of the Internal Revenue Service, erroneously assessed a TFRP against Plaintiff in the amount of $32,341.45 for unpaid employment taxes for the tax period ended September 30, 2002 ("Third Quarter 2002"), for employees of TechArch, Inc. (EIN 41-1841273). **Exhibit 6** (190-191).

19. On June 17, 2005, Plaintiff filed with the Cincinnati Service Center of the Internal Revenue Service a Claim for Refund and Request for Abatement (IRS Form 843) for the Third Quarter 2002 ("Third Quarter 2002 Claim"), and paid $301.21, the full amount of the withheld

federal employment taxes for TechArch, Inc.'s (EIN 41-1841273) employee Denis J. Deutsch for the tax period ended September 30, 2002, which is part of the TFRP erroneously assessed against Plaintiff in the total amount of $32,341.45. A true and correct copy of the Claim for Refund and Request for Abatement for the Third Quarter of 2002 and exhibits thereto are attached hereto as **Exhibit 7** (192-220)and incorporated by reference.

20. On September 1, 2005, Defendant, through the Department of the Treasury, Internal Revenue Service, notified Plaintiff via Letter 3784 that her Claim for Refund and Request for Abatement for the Third Quarter 2002 was disallowed on the purported basis that her "claim has not produced any information that was not already considered in your previous appeal." **Exhibit 3**.

21. Recovery is sought of trust fund recovery penalty in the amount of $301.21, paid by Plaintiff on June 17, 2005 to pay in full the withheld federal employment taxes for TechArch, Inc.'s (EIN 41-1841273) employee Denis J. Deutsch for the period ended September 30, 2002, and abatement of the TFRP erroneously assessed against Plaintiff for the Third Quarter 2002 in the total amount of $32,341.45.

22. Defendant has refused and continues to refuse to refund the TFRP paid by Plaintiff in the amount of $301.21 for the Third Quarter 2002 and/or abate the TFRP erroneously assessed Plaintiff in the amount of $32,341.45 for unpaid employment taxes for the Third Quarter 2002.

23. Plaintiff is entitled to and hereby demands judgment against Defendant for the full amount of $301.21 and abatement of the TFRP assessment in the total amount of $32,341.45, or

such other amount as is appropriate, plus interest thereon as provided by law for the reasons set forth below and/or included in her Third Quarter 2002 Claim, Exhibit D thereto (Exhibit 5):

(a) Under IRC Section 6672, a person can be held liable for the TFRP only if that person is a "responsible person" who is required to collect, truthfully account for and pay over the taxes in question and that person willfully fails to collect, truthfully account and/or pay over the tax. The TFRP does not apply to a portion of the Third Quarter 2002 trust fund taxes because Plaintiff did not willfully fail to collect, truthfully account for, or pay over the trust fund taxes through July 15, 2002.

(b) For the reasons set forth in paragraphs 9 and 16 of this Complaint, Plaintiff has no TFRP liability for the First Quarter 2001 or the Second Quarter 2002, as a result of which payments in excess of those required to be allocated to eliminate the TFRP for First Quarter 2001 and Second Quarter 2002, if any, cannot, for TFRP purposes only, be allocated to First Quarter 2001 or Second Quarter 2002 employment taxes.

(c) All payments under TechArch's installment payment agreement with the Service with respect to employment taxes must be allocated, for TFRP purposes only, to reduce TechArch's trust fund taxes for the period during which Plaintiff was a responsible person, except that payments during the second and third quarters of 2002 must be allocated as if they were current employment tax deposits.

(d) The TFRP does not apply to the extent that payments under TechArch's installment payment agreement with the Service with respect to employment taxes could have been applied to reduce TFRP exposure because the Service is estopped to allocate the payments otherwise by its misleading advice to Plaintiff.

24. No action on the claims for refund attached as Exhibits 2, 4 and 5 has been taken by Congress or any agency of the United States or in any judicial proceeding, including any in the Tax Court of the United States.

25. Plaintiff is the sole owner of the claims included in Exhibits 2, 4 and 5 asserted herein, and has made no assignment thereof.

**WHEREFORE**, Plaintiff demands judgment as follows:

(1) As to Count I, judgment against Defendant for the full amount of $793.00 and abatement of the TFRP assessment in the total amount of $96,331.74, or such other amount as is appropriate, plus interest thereon as provided by law; and

(2) As to Count II, judgment against Defendant for the full amount of $67.73 and abatement of the TFRP assessment in the total amount of $81,469.18, or such other amount as is appropriate, plus interest thereon as provided by law; and

(3) As to Count III, judgment against Defendant or the full amount of $301.21 and abatement of the TFRP assessment in the total amount of $32,341.45,

or such other amount as is appropriate, plus interest thereon as provided by law; and

(4) As to all Counts, judgment against Defendant for Plaintiff's reasonable attorneys' fees and costs incurred in this proceeding, as provided under 26 U.S.C. § 7430; and

(5) Such other relief as the Court may deem just.

Dated: November 16, 2005

LOMMEN, NELSON, COLE & STAGEBERG, P.A.

BY [signature]

John P. James, I.D. No. 49608
Attorneys for Plaintiff
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 339-8131
FAX: (612) 339-8064

00676 17254-658-52041-4 200438 CP: 155

SBW

Department of the Treasury
Internal Revenue Service
CINCINNATI, OH 45999-0010

Date of this notice: OCT. 4, 2004
Taxpayer Identifying Number 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
Form: CVL PEN Tax Period: MAR. 31, 2001

For assistance you may call us at:
1-800-829-8374

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445

WE CHARGED YOU A PENALTY FOR NOT PAYING EMPLOYMENT TAX

ACCORDING TO OUR RECORDS, YOU HAVE NOT PAID THE EMPLOYMENT TAXES THAT YOU WERE RESPONSIBLE FOR WITHHOLDING ON THE FOLLOWING TAX ACCOUNT(S).

| EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED | EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED |
|---|---|---|---|---|---|
| 41-1841273 | 941 | MAR. 31, 2001 | | | |

THE LAW ALLOWS US TO CHARGE A PENALTY IF YOU DON'T COLLECT, ACCOUNT FOR, OR PAY OVER EMPLOYMENT TAXES. THE PENALTY IS THE AMOUNT OF UNPAID EMPLOYMENT TAXES WITHHELD FROM EMPLOYEES. WE USUALLY REFER TO THESE TAXES AS "TRUST FUND TAXES." THEREFORE, WE CALL THE PENALTY THE "TRUST FUND RECOVERY PENALTY."

WE FIGURED THE PENALTY AND INTEREST YOU OWE AS FOLLOWS:

| | |
|---|---|
| PENALTY | $96,331.74 |
| INTEREST FIGURED TO OCT. 4, 2004 | .00 |
| TOTAL AMOUNT DUE | $96,331.74 |

IF YOU AGREE WITH OUR FIGURES, PLEASE PAY THE AMOUNT SHOWN ABOVE BY OCT. 25, 2004 TO AVOID FURTHER INTEREST CHARGES.

IF YOU DON'T AGREE, THE LAW ALLOWS YOU TO FILE SUIT FOR REFUND. TO DO SO, YOU MUST:

-PAY THE WITHHELD TAX FOR ONE EMPLOYEE FOR ONE QUARTER OF LIABILITY; AND

-FILE A CLAIM FOR REFUND ON FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT, FOR THE AMOUNT PAID BY NOV. 3, 2004. HOWEVER, WE WILL CHARGE INTEREST ON ANY AMOUNT YOU DON'T PAY BY OCT. 25, 2004.

IF YOU WANT US TO SUSPEND COLLECTION OF THE PENALTY WHILE THE SUIT IS PENDING BEFORE THE COURT, YOU MUST:

-POST A BOND WITH THE INTERNAL REVENUE SERVICE FOR ONE AND A HALF TIMES THE BALANCE (THE PENALTY AMOUNT SHOWN ABOVE MINUS THE AMOUNT YOU PAID) BY NOV. 3, 2004.

HOWEVER, IF WE DETERMINE THAT THE COLLECTION OF THE AMOUNT DUE IS IN JEOPARDY, WE MAY COLLECT IT IMMEDIATELY WITHOUT WAITING UNTIL NOV. 3, 2004.

CINCINNATI SERVICE CENTER 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 TAX PERIOD: MAR. 31, 2001

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

.TURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
UR TELEPHONE NUMBER BEST TIME TO CALL
( ) -

AMOUNT YOU OWE..................$96,331.74

LESS PAYMENTS NOT INCLUDED. $______________

618

PAY ADJUSTED AMOUNT........ $______________

W

200438 17254-658-52041-4

INTERNAL REVENUE SERVICE
CINCINNATI, OH 45999-0010

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445



501849856 CW ROHD 55 0 200103 670 000009633174

Form **843** (Rev. November 2002) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

| | |
|---|---|
| Name of claimant<br>**Susan M. Rohde** | Your SSN or ITIN<br>**501 : 84 : 9856** |
| Address (number, street, and room or suite no.)<br>**1944 East River Terrace** | Spouse's SSN or ITIN<br>: : |
| City or town, state, and ZIP code<br>**Minneapolis, MN 55414-3672** | Employer identification number (EIN)<br>: |
| Name and address shown on return if different from above | Daytime telephone number<br>( **612** ) **316-0010** |

**1** Period. Prepare a separate Form 843 for each tax period
From **01** / **01** / **01** to **03** / **31** / **01**

**2** Amount to be refunded or abated
$ **793.00**

**3a** Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ **6672**

**b** Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

**The IRS assessed trust fund recovery penalty ("TFRP") of $96,331.74 on October 4, 2004. A copy of the notice of assessment is attached as Exhibit A.**

**The assessment relates to the trust fund taxes of TechArch, Inc., EIN 41-1841273 ("TechArch"). A copy of the TechArch Payroll Summary for the first quarter of 2001 is attached as Exhibit B. As shown on Exhibit B, John M. Henney was a TechArch employee whose withheld income taxes totaled $793. As shown in Exhibit D-1, IRS Position on Details of Unpaid Trust Fund Taxes, the entire TFRP assessment for this period is for withheld income taxes. Taxpayer paid $793 of TFRP on June 17, 2005, directing that the entire payment be applied to pay in full the withheld income taxes of John M. Henney, as shown in the cover letter accompanying payment, a copy of which is attached as Exhibit C. Taxpayer believes that this claim must be allowed, and that no additional amount of TFRP is owed by Taxpayer for the above-referenced period, for the reasons set forth in the attached Exhibit D, Grounds for Inapplicability of the Trust Fund Recovery Penalty for the above-referenced period, and sub-exhibits D-1 - D-9.**

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Susan M Rohde 6/17/2005
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

Signature Date

**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.** Cat. No. 10180R Form **843** (Rev. 11-2002)

# EXHIBIT A

First Quarter of 2001

Notice of Assessment

Department of the Treasury
Internal Revenue Service
CINCINNATI, OH 45999-0010

Date of this notice: OCT. 4, 2004
Taxpayer Identifying Number 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
Form: CVL PEN Tax Period: MAR. 31, 2001

For assistance you may call us at:
1-800-829-8374

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445

WE CHARGED YOU A PENALTY FOR NOT PAYING EMPLOYMENT TAX

ACCORDING TO OUR RECORDS, YOU HAVE NOT PAID THE EMPLOYMENT TAXES THAT YOU WERE RESPONSIBLE FOR WITHHOLDING ON THE FOLLOWING TAX ACCOUNT(S).

| EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED | EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED |
|---|---|---|---|---|---|
| 41-1841273 | 941 | MAR. 31, 2001 | | | |

THE LAW ALLOWS US TO CHARGE A PENALTY IF YOU DON'T COLLECT, ACCOUNT FOR, OR PAY OVER EMPLOYMENT TAXES. THE PENALTY IS THE AMOUNT OF UNPAID EMPLOYMENT TAXES WITHHELD FROM EMPLOYEES. WE USUALLY REFER TO THESE TAXES AS "TRUST FUND TAXES." THEREFORE, WE CALL THE PENALTY THE "TRUST FUND RECOVERY PENALTY."

WE FIGURED THE PENALTY AND INTEREST YOU OWE AS FOLLOWS:

| | |
|---|---|
| PENALTY | $96,331.74 |
| INTEREST FIGURED TO OCT. 4, 2004 | .00 |
| TOTAL AMOUNT DUE | $96,331.74 |

IF YOU AGREE WITH OUR FIGURES, PLEASE PAY THE AMOUNT SHOWN ABOVE BY OCT. 25, 2004 TO AVOID FURTHER INTEREST CHARGES.

IF YOU DON'T AGREE, THE LAW ALLOWS YOU TO FILE SUIT FOR REFUND. TO DO SO, YOU MUST:

-PAY THE WITHHELD TAX FOR ONE EMPLOYEE FOR ONE QUARTER OF LIABILITY; AND

-FILE A CLAIM FOR REFUND ON FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT, FOR THE AMOUNT PAID BY NOV. 3, 2004. HOWEVER, WE WILL CHARGE INTEREST ON ANY AMOUNT YOU DON'T PAY BY OCT. 25, 2004.

IF YOU WANT US TO SUSPEND COLLECTION OF THE PENALTY WHILE THE SUIT IS PENDING BEFORE THE COURT, YOU MUST:

-POST A BOND WITH THE INTERNAL REVENUE SERVICE FOR ONE AND A HALF TIMES THE BALANCE (THE PENALTY AMOUNT SHOWN ABOVE MINUS THE AMOUNT YOU PAID) BY NOV. 3, 2004.

HOWEVER, IF WE DETERMINE THAT THE COLLECTION OF THE AMOUNT DUE IS IN JEOPARDY, WE MAY COLLECT IT IMMEDIATELY WITHOUT WAITING UNTIL NOV. 3, 2004.

CINCINNATI SERVICE CENTER 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

TAX PERIOD: MAR. 31, 2001

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

URN THIS PART TO US WITH YOUR CHECK OR INQUIRY
JR TELEPHONE NUMBER BEST TIME TO CALL
) -

AMOUNT YOU OWE..................$96,331.74

LESS PAYMENTS NOT INCLUDED. $__________

PAY ADJUSTED AMOUNT........ $__________

618

200438 17254-658-52041-4

INTERNAL REVENUE SERVICE
CINCINNATI, OH 45999-0010

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445



501849856 CW ROHD 55 0 200103 670 000009633174

# EXHIBIT B

## TechArch Payroll Summary

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Beckwith, Kenn C. | Billington, Kathleen M | Casper, Paul A |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 0.00 | 16,696.14 | 0.00 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Sales Commission | 27,536.92 | 0.00 | 29,477.89 |
| Total Gross Pay | 27,536.92 | 16,696.14 | 29,477.89 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -136.24 | -63.90 | -182.52 |
| Employee 401(k) (old) | -1,652.20 | -1,001.76 | -1,768.67 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -384.60 | 0.00 | -346.14 |
| Medical Ins. | -1,077.24 | -220.14 | -1,103.52 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -3,250.28 | -1,285.80 | -3,400.85 |
| Adjusted Gross Pay | 24,286.64 | 15,410.34 | 26,077.04 |
| Taxes Withheld | | | |
| Federal Withholding | -3,653.00 | -2,769.00 | -3,893.00 |
| Medicare Employee | -376.11 | -237.98 | -403.77 |
| Social Security Employee | -1,608.21 | -1,017.55 | -1,726.43 |
| MN - Withholding | -1,084.00 | 0.00 | -1,235.00 |
| Total Taxes Withheld | -6,721.32 | -4,024.53 | -7,258.20 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -172.60 | 0.00 | -120.60 |
| Total Deductions from Net Pay | -172.60 | 0.00 | -120.60 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| Net Pay | 17,392.72 | 11,385.81 | 18,698.24 |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 56.00 | 56.00 | 41.34 |
| Medicare Company | 376.11 | 237.98 | 403.77 |
| Social Security Company | 1,608.21 | 1,017.55 | 1,726.43 |
| MN - Unemployment Company | 320.00 | 0.00 | 247.43 |
| 401k Match - COGS (old) | 1,858.74 | 1,087.26 | 1,787.62 |
| Employer 401(k) match (old) | 619.58 | 415.38 | 865.38 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Beckwith, Kenn C. | Billington, Kathleen M | Casper, Paul A |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 4,838.64 | 2,814.17 | 5,071.97 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Castro, Anne | Clark, Brian A | Deutsch, Denis J |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 10,558.92 |
| Salary-Consultants | 10,425.86 | 15,946.14 | 10,384.62 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 522.90 |
| Total Gross Pay | 10,425.86 | 15,946.14 | 21,466.44 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -173.62 | -63.90 | 0.00 |
| Employee 401(k) (old) | -625.56 | -956.76 | -1,288.00 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -427.68 | 0.00 | 0.00 |
| Medical Ins. | -118.76 | -202.14 | 0.00 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -1,345.62 | -1,222.80 | -1,288.00 |
| Adjusted Gross Pay | 9,080.24 | 14,723.34 | 20,178.44 |
| Taxes Withheld | | | |
| Federal Withholding | -1,336.00 | -2,793.00 | -4,624.00 |
| Medicare Employee | -140.73 | -227.36 | -311.26 |
| Social Security Employee | -601.76 | -972.17 | -1,330.92 |
| MN - Withholding | -480.00 | -871.00 | -1,328.00 |
| Total Taxes Withheld | -2,558.49 | -4,863.53 | -7,594.18 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -72.10 | 0.00 | -105.48 |
| Total Deductions from Net Pay | -72.10 | 0.00 | -105.48 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **6,449.65** | **9,859.81** | **12,478.78** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 140.73 | 227.36 | 311.26 |
| Social Security Company | 601.76 | 972.17 | 1,330.92 |
| MN - Unemployment Company | 155.29 | 250.88 | 320.00 |
| 401k Match - COGS (old) | 633.72 | 1,019.76 | 1,448.97 |
| Employer 401(k) match (old) | 304.62 | 415.38 | 482.99 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

Case 1:05-cv-01226-LAS Document 1 Filed 11/21/2005 Page 22 of 220

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Castro, Anne | Clark, Brian A | Deutsch, Denis J |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 1,892.12 | 2,941.55 | 3,950.14 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Henney, John M | Hockin, Robert | Johnson, Richard L. |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 17,384.60 | 0.00 |
| Salary-Consultants | 7,140.10 | 9,675.30 | 19,615.38 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 7,140.10 | 27,059.90 | 19,615.38 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -55.94 | -63.90 | -66.12 |
| Employee 401(k) (old) | -428.41 | -1,623.60 | -1,176.90 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -41.07 | 0.00 | 0.00 |
| Medical Ins. | -482.24 | -333.72 | -276.90 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -1,007.66 | -2,021.22 | -1,519.92 |
| Adjusted Gross Pay | 6,132.44 | 25,038.68 | 18,095.46 |
| Taxes Withheld | | | |
| Federal Withholding | -793.00 | -5,993.00 | -3,396.00 |
| Medicare Employee | -95.13 | -386.60 | -279.45 |
| Social Security Employee | -406.77 | -1,653.06 | -1,194.89 |
| MN - Withholding | -278.00 | -1,673.00 | -1,002.00 |
| Total Taxes Withheld | -1,572.90 | -9,705.66 | -5,872.34 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -45.39 | -165.78 | -128.10 |
| Total Deductions from Net Pay | -45.39 | -165.78 | -128.10 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **4,514.15** | **15,167.24** | **12,095.02** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 52.49 | 56.00 | 56.00 |
| Medicare Company | 95.13 | 386.60 | 279.45 |
| Social Security Company | 406.77 | 1,653.06 | 1,194.89 |
| MN - Unemployment Company | 104.97 | 320.00 | 308.36 |
| 401k Match - COGS (old) | 391.15 | 1,653.07 | 1,176.92 |
| Employer 401(k) match (old) | 251.46 | 782.30 | 588.46 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Henney, John M | Hockin, Robert | Johnson, Richard L. |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 1,301.97 | 4,851.03 | 3,604.08 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Kavie, Andrew J | Kellerman, Ron | Krengel, Steven E |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 20,076.90 | 14,764.24 | 0.00 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 0.00 | 49,463.46 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 20,076.90 | 14,764.24 | 49,463.46 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -128.04 | -60.12 | 0.00 |
| Employee 401(k) (old) | 0.00 | -885.84 | -2,967.79 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | -636.00 |
| Medical Ins. | -530.28 | -207.05 | 0.00 |
| MN Child Support Payment Ctr | -3,412.86 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -4,071.18 | -1,153.01 | -3,603.79 |
| Adjusted Gross Pay | 16,005.72 | 13,611.23 | 45,859.67 |
| Taxes Withheld | | | |
| Federal Withholding | -4,428.00 | -2,610.00 | -10,521.00 |
| Medicare Employee | -281.57 | -197.00 | -708.00 |
| Social Security Employee | -1,203.95 | -842.33 | -3,027.30 |
| MN - Withholding | -1,314.00 | -800.00 | -2,846.00 |
| Total Taxes Withheld | -7,227.52 | -4,449.33 | -17,102.30 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -151.08 | -92.13 | -270.90 |
| Total Deductions from Net Pay | -151.08 | -92.13 | -270.90 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 636.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 636.00 |
| Net Pay | 8,627.12 | 9,069.77 | 29,122.47 |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 281.57 | 197.00 | 708.00 |
| Social Security Company | 1,203.95 | 842.33 | 3,027.30 |
| MN - Unemployment Company | 310.70 | 190.86 | 474.24 |
| 401k Match - COGS (old) | 0.00 | 1,328.76 | 2,837.65 |
| Employer 401(k) match (old) | 0.00 | 0.00 | 1,614.07 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

# Fecharch, Inc.
## Payroll Summary
January through March 2001

| | Kavie, Andrew J | Kellerman, Ron | Krengel, Steven E |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 1,852.22 | 2,614.95 | 8,717.26 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Lassiter, Brian | Logajan, George M. | Lund, Eric J. |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 16,615.40 | 0.00 | 29,538.48 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 38,503.75 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 16,615.40 | 38,503.75 | 29,538.48 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -93.48 | 0.00 | -128.04 |
| Employee 401(k) (old) | -996.92 | -2,310.22 | -1,772.28 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | 0.00 |
| Medical Ins. | -420.00 | 0.00 | -1,158.90 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -1,510.40 | -2,310.22 | -3,059.22 |
| Adjusted Gross Pay | 15,105.00 | 36,193.53 | 26,479.26 |
| Taxes Withheld | | | |
| Federal Withholding | -2,832.00 | -10,084.00 | -4,572.00 |
| Medicare Employee | -233.48 | -558.30 | -409.65 |
| Social Security Employee | -998.32 | -2,387.23 | -1,751.60 |
| MN - Withholding | -880.00 | -2,630.00 | -1,404.00 |
| Total Taxes Withheld | -4,943.80 | -15,659.53 | -8,137.25 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -108.52 | -213.90 | -188.40 |
| Total Deductions from Net Pay | -108.52 | -213.90 | -188.40 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **10,052.68** | **20,320.10** | **18,153.61** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 233.48 | 558.30 | 409.65 |
| Social Security Company | 998.32 | 2,387.23 | 1,751.60 |
| MN - Unemployment Company | 257.63 | 389.23 | 320.00 |
| 401k Match - COGS (old) | 1,121.55 | 2,201.24 | 1,772.32 |
| Employer 401(k) match (old) | 373.85 | 1,264.11 | 886.16 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

Case 1:05-cv-01226-LAS Document 1 Filed 11/21/2005 Page 28 of 220

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Lassiter, Brian | Logajan, George M. | Lund, Eric J. |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 62.80 |
| Total Employer Taxes and Contributions | 3,040.83 | 6,856.11 | 5,258.53 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Lyng, Robert C. | Marlin, Mark A. | Menzel, Kelvin J |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 8,565.08 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 0.00 | 0.00 | 28,211.49 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 9,611.18 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 18,461.52 | 0.00 |
| Total Gross Pay | 18,176.26 | 18,461.52 | 28,211.49 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -21.30 | 0.00 | -204.36 |
| Employee 401(k) (old) | -576.67 | -553.86 | -1,692.67 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | -150.00 |
| Medical Ins. | -76.16 | 0.00 | -1,402.62 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | -532.50 |
| Total Deductions from Gross Pay | -674.13 | -553.86 | -3,982.15 |
| Adjusted Gross Pay | 17,502.13 | 17,907.66 | 24,229.34 |
| Taxes Withheld | | | |
| Federal Withholding | -4,488.91 | -2,172.00 | -3,428.00 |
| Medicare Employee | -262.14 | -267.69 | -375.87 |
| Social Security Employee | -1,120.88 | -1,144.61 | -1,607.16 |
| MN - Withholding | -1,579.00 | -798.00 | -1,118.00 |
| Total Taxes Withheld | -7,450.93 | -4,382.30 | -6,529.03 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -74.30 | -51.36 | -213.90 |
| Total Deductions from Net Pay | -74.30 | -51.36 | -213.90 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **9,976.90** | **13,474.00** | **17,486.41** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 262.14 | 267.69 | 375.87 |
| Social Security Company | 1,120.89 | 1,144.61 | 1,607.16 |
| MN - Unemployment Company | 289.26 | 295.38 | 320.00 |
| 401k Match - COGS (old) | 865.00 | 553.84 | 1,708.25 |
| Employer 401(k) match (old) | 0.00 | 276.92 | 830.76 |
| Expense Reserve | 652.04 | 0.00 | 0.00 |

Case 1:05-cv-01226-LAS Document 1 Filed 11/21/2005 Page 30 of 220

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Lyng, Robert C. | Marlin, Mark A. | Menzel, Kelvin J |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | **3,245.33** | **2,594.44** | **4,898.04** |

# TechArch, Inc.

## Payroll Summary

January through March 2001

| | Meyer, Nathan | Mishra, Lingaraj | Padgett, David W |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| **Gross Pay** | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 27,533.65 | 25,961.55 | 0.00 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 0.00 | 57,883.39 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| **Total Gross Pay** | 27,533.65 | 25,961.55 | 57,883.39 |
| **Deductions from Gross Pay** | | | |
| Dental Ins. | 0.00 | -170.30 | -204.36 |
| Employee 401(k) (old) | -1,652.03 | -1,557.70 | -2,297.33 |
| Flex - Child Care | -1,153.82 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | -300.00 | 0.00 |
| Medical Ins. | 0.00 | -1,048.85 | -1,590.90 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | -538.92 | 0.00 | 0.00 |
| **Total Deductions from Gross Pay** | -3,344.77 | -3,076.85 | -4,092.59 |
| **Adjusted Gross Pay** | 24,188.88 | 22,884.70 | 53,790.80 |
| **Taxes Withheld** | | | |
| Federal Withholding | -5,608.00 | -3,880.00 | -14,909.00 |
| Medicare Employee | -374.69 | -354.41 | -813.28 |
| Social Security Employee | -1,602.14 | -1,515.43 | -3,477.46 |
| MN - Withholding | -1,650.00 | -1,190.00 | -3,786.00 |
| **Total Taxes Withheld** | -9,234.83 | -6,939.84 | -22,985.74 |
| **Deductions from Net Pay** | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -140.16 | -167.05 | -258.90 |
| **Total Deductions from Net Pay** | -140.16 | -167.05 | -258.90 |
| **Additions to Net Pay** | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| **Total Additions to Net Pay** | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **14,813.89** | **15,777.81** | **30,546.16** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 374.69 | 354.41 | 813.28 |
| Social Security Company | 1,602.14 | 1,515.43 | 3,477.46 |
| MN - Unemployment Company | 320.00 | 320.00 | 591.95 |
| 401k Match - COGS (old) | 1,661.10 | 1,869.24 | 874.08 |
| Employer 401(k) match (old) | 816.92 | 467.31 | 907.45 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Meyer, Nathan | Mishra, Lingaraj | Padgett, David W |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 4,830.85 | 4,582.39 | 6,720.22 |

7:10 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Peterson, David D. | Porter, Jill M | Rodenberg, Anne M |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 7,615.38 |
| Salary-Consultants | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 28,499.58 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 18,572.45 | 0.00 |
| Total Gross Pay | 28,499.58 | 18,572.45 | 7,615.38 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -68.12 | 0.00 | 0.00 |
| Employee 401(k) (old) | -1,709.98 | -1,114.37 | -456.93 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | -42.00 |
| Medical Ins. | -1,235.10 | 0.00 | -67.38 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -3,013.20 | -1,114.37 | -566.31 |
| Adjusted Gross Pay | 25,486.38 | 17,458.08 | 7,049.07 |
| Taxes Withheld | | | |
| Federal Withholding | -4,812.00 | -3,167.00 | -1,249.98 |
| Medicare Employee | -394.35 | -269.30 | -72.03 |
| Social Security Employee | -1,686.17 | -1,151.49 | -307.99 |
| MN - Withholding | -1,443.00 | -1,051.00 | -545.00 |
| Total Taxes Withheld | -8,335.52 | -5,638.79 | -2,175.00 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -240.90 | -120.60 | -31.64 |
| Total Deductions from Net Pay | -240.90 | -120.60 | -31.64 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| Net Pay | 16,909.96 | 11,698.69 | 4,842.43 |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 56.00 | 56.00 | 39.74 |
| Medicare Company | 394.35 | 269.30 | 72.03 |
| Social Security Company | 1,686.17 | 1,151.49 | 307.99 |
| MN - Unemployment Company | 320.00 | 297.16 | 79.48 |
| 401k Match - COGS (old) | 1,637.92 | 1,117.67 | 0.00 |
| Employer 401(k) match (old) | 927.04 | 553.84 | 685.39 |
| Expense Reserve | 1,424.98 | 0.00 | 0.00 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Peterson, David D. | Porter, Jill M | Rodenberg, Anne M |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 6,446.46 | 3,445.46 | 1,184.63 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Rohde, Susan M. | Savage, Carol | Scott, Mark |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| **Gross Pay** | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 23,076.92 | 0.00 | 0.00 |
| Salary-Consultants | 0.00 | 19,559.85 | 18,984.62 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| **Total Gross Pay** | 23,076.92 | 19,559.85 | 18,984.62 |
| **Deductions from Gross Pay** | | | |
| Dental Ins. | -42.60 | -63.90 | 0.00 |
| Employee 401(k) (old) | -1,384.60 | -1,173.61 | -1,139.10 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -180.00 | -576.90 | 0.00 |
| Medical Ins. | -152.32 | -234.00 | 0.00 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| **Total Deductions from Gross Pay** | -1,759.52 | -2,048.41 | -1,139.10 |
| **Adjusted Gross Pay** | 21,317.40 | 17,511.44 | 17,845.52 |
| **Taxes Withheld** | | | |
| Federal Withholding | -4,440.00 | -3,138.00 | -3,228.00 |
| Medicare Employee | -329.18 | -270.93 | -275.28 |
| Social Security Employee | -1,407.52 | -1,158.47 | -1,177.05 |
| MN - Withholding | -1,216.00 | -996.00 | -999.00 |
| **Total Taxes Withheld** | -7,392.70 | -5,563.40 | -5,679.33 |
| **Deductions from Net Pay** | | | |
| 401(k) Loan Pmt. | -2,149.40 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -180.60 | -126.60 | 0.00 |
| **Total Deductions from Net Pay** | -2,330.00 | -126.60 | 0.00 |
| **Additions to Net Pay** | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 1,713.36 | 0.00 | 0.00 |
| **Total Additions to Net Pay** | 1,713.36 | 0.00 | 0.00 |
| **Net Pay** | **13,308.06** | **11,821.44** | **12,166.19** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 329.18 | 270.93 | 275.28 |
| Social Security Company | 1,407.52 | 1,158.47 | 1,177.05 |
| MN - Unemployment Company | 320.00 | 298.96 | 303.75 |
| 401k Match - COGS (old) | 1,557.69 | 1,178.85 | 1,082.08 |
| Employer 401(k) match (old) | 519.23 | 581.54 | 626.54 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Rohde, Susan M. | Savage, Carol | Scott, Mark |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 4,189.62 | 3,544.75 | 3,520.70 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Smith, Gordon | Sohns, Brad | Stratton, Tammy J.V. |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 29,808.93 | 0.00 | 0.00 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 363.48 |
| Hourly Comm. | 0.00 | 43,169.91 | 19,899.40 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 29,808.93 | 43,169.91 | 20,262.88 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -600.58 | -182.46 | 0.00 |
| Employee 401(k) (old) | -1,788.51 | -1,726.81 | -1,215.77 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | 0.00 |
| Medical Ins. | -370.40 | 0.00 | 0.00 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -2,759.49 | -1,909.27 | -1,215.77 |
| Adjusted Gross Pay | 27,049.44 | 41,260.64 | 19,047.11 |
| Taxes Withheld | | | |
| Federal Withholding | -6,947.00 | -9,811.00 | -3,613.00 |
| Medicare Employee | -418.15 | -623.32 | -293.81 |
| Social Security Employee | -1,787.95 | -2,665.22 | -1,256.30 |
| MN - Withholding | -1,900.00 | -2,698.00 | -1,163.00 |
| Total Taxes Withheld | -11,053.10 | -15,797.54 | -6,326.11 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -158.22 | -236.76 | -135.66 |
| Total Deductions from Net Pay | -158.22 | -236.76 | -135.66 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **15,838.12** | **25,226.34** | **12,585.34** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 418.15 | 623.32 | 293.81 |
| Social Security Company | 1,787.95 | 2,665.22 | 1,256.30 |
| MN - Unemployment Company | 320.00 | 455.40 | 320.00 |
| 401k Match - COGS (old) | 1,796.66 | 1,671.94 | 1,125.73 |
| Employer 401(k) match (old) | 886.16 | 918.26 | 697.94 |
| Expense Reserve | 0.00 | 0.00 | 978.14 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Smith, Gordon | Sohns, Brad | Stratton, Tammy J.V. |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 5,264.92 | 6,390.14 | 4,727.92 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Taylor, Jill K | Ubl, Michele | Vaccaro, Nancy G. |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 0.00 |
| Salary | 10,846.14 | 0.00 | 11,550.00 |
| Salary-Consultants | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 0.00 |
| Hourly Comm. | 0.00 | 24,858.08 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 10,846.14 | 24,858.08 | 11,550.00 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -63.90 | 0.00 | 0.00 |
| Employee 401(k) (old) | -488.05 | -1,491.49 | -693.00 |
| Flex - Child Care | 0.00 | 0.00 | -461.52 |
| Flex. Benefit Plan | 0.00 | 0.00 | -715.36 |
| Medical Ins. | -202.14 | 0.00 | 0.00 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Vacation purchase | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -754.09 | -1,491.49 | -1,869.88 |
| Adjusted Gross Pay | 10,092.05 | 23,366.59 | 9,680.12 |
| Taxes Withheld | | | |
| Federal Withholding | -857.00 | -3,913.00 | -1,228.00 |
| Medicare Employee | -153.41 | -360.44 | -150.41 |
| Social Security Employee | -655.97 | -1,541.20 | -643.13 |
| MN - Withholding | -325.00 | -1,232.00 | -500.00 |
| Total Taxes Withheld | -1,991.38 | -7,046.64 | -2,521.54 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -66.30 | -204.90 | -97.98 |
| Total Deductions from Net Pay | -66.30 | -204.90 | -97.98 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 0.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 0.00 |
| Total Additions to Net Pay | 0.00 | 0.00 | 0.00 |
| **Net Pay** | **8,034.37** | **16,115.05** | **7,060.60** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 56.00 | 56.00 | 56.00 |
| Medicare Company | 153.41 | 360.44 | 150.41 |
| Social Security Company | 655.97 | 1,541.20 | 643.13 |
| MN - Unemployment Company | 168.70 | 320.00 | 165.97 |
| 401k Match - COGS (old) | 0.00 | 1,440.48 | 0.00 |
| Employer 401(k) match (old) | 732.13 | 796.75 | 1,039.50 |
| Expense Reserve | 0.00 | 0.00 | 0.00 |

# Techarch, Inc.
## Payroll Summary
### January through March 2001

| | Taylor, Jill K | Ubl, Michele | Vaccaro, Nancy G. |
|---|---|---|---|
| Life/Disability Insurance | 22.10 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | **1,788.31** | **4,514.87** | **2,055.01** |

Teamarch, Inc.

# Payroll Summary

January through March 2001

| | Webster, Leon C. | Wiborg, Liesl K. | TOTAL |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Expense reserve disbursement | 0.00 | 0.00 | 8,565.08 |
| Salary | 0.00 | 20,403.86 | 101,435.82 |
| Salary-Consultants | 31,653.59 | 0.00 | 352,592.24 |
| Alt. Hourly Comm 2 | 0.00 | 0.00 | 0.00 |
| Alt. Hourly Comm. | 0.00 | 0.00 | 363.48 |
| Hourly Comm. | 0.00 | 0.00 | 271,888.75 |
| Sales Commission | 0.00 | 0.00 | 94,571.68 |
| Total Gross Pay | 31,653.59 | 20,403.86 | 829,417.05 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -57.06 | -63.90 | -2,958.66 |
| Employee 401(k) (old) | -1,899.22 | -1,224.24 | -45,290.85 |
| Flex - Child Care | 0.00 | 0.00 | -1,615.34 |
| Flex. Benefit Plan | -180.00 | 0.00 | -3,979.75 |
| Medical Ins. | 0.00 | -220.14 | -12,730.90 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | -3,412.86 |
| Vacation purchase | 0.00 | 0.00 | -1,071.42 |
| Total Deductions from Gross Pay | -2,136.28 | -1,508.28 | -71,059.78 |
| Adjusted Gross Pay | 29,517.31 | 18,895.58 | 758,357.27 |
| Taxes Withheld | | | |
| Federal Withholding | -6,144.00 | -3,562.00 | -154,892.89 |
| Medicare Employee | -455.54 | -288.11 | -11,648.73 |
| Social Security Employee | -1,947.82 | -1,231.93 | -49,808.38 |
| MN - Withholding | -1,798.00 | -1,049.00 | -44,861.00 |
| Total Taxes Withheld | -10,345.36 | -6,131.04 | -261,211.00 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | -2,149.40 |
| STD/LTD Ins. (After-tax) | -231.90 | -160.80 | -4,733.51 |
| Total Deductions from Net Pay | -231.90 | -160.80 | -6,882.91 |
| Additions to Net Pay | | | |
| Adjust Credit | 0.00 | 0.00 | 636.00 |
| Loan Repay, Sue | 0.00 | 0.00 | 1,713.36 |
| Total Additions to Net Pay | 0.00 | 0.00 | 2,349.36 |
| **Net Pay** | **18,940.05** | **12,603.74** | **492,612.72** |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 56.00 | 56.00 | 1,925.57 |
| Medicare Company | 455.54 | 288.11 | 11,648.73 |
| Social Security Company | 1,947.82 | 1,231.93 | 49,808.39 |
| MN - Unemployment Company | 320.00 | 317.92 | 10,113.52 |
| 401k Match - COGS (old) | 1,914.22 | 0.00 | 42,373.48 |
| Employer 401(k) match (old) | 934.62 | 1,836.36 | 23,898.40 |
| Expense Reserve | 100.00 | 0.00 | 3,155.16 |

# Techarch, Inc.
## Payroll Summary
January through March 2001

| | Webster, Leon C. | Wiborg, Liesl K. | TOTAL |
|---|---|---|---|
| Life/Disability Insurance | 0.00 | 40.20 | 125.10 |
| Total Employer Taxes and Contributions | 5,728.20 | 3,770.52 | 143,048.35 |

**EXHIBIT C**

**Cover Letter with Payment**

LOMMEN NELSON
LAW FIRM
LOMMEN, NELSON, COLE & STAGEBERG, P.A.

2000 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

(612) 339-8131
National Toll-Free (800) 752-4297
FAX (612) 339-8064

John P. James
Attorney at Law

Minneapolis Office
Web Site: www.lommen.com
E-mail Address:JPJAMES@LOMMEN.COM
(612) 336-9317

Grandview Professional Building, Suite 210
400 South Second Street
Hudson, Wisconsin 54016

(715) 386-8217
Twin City Line (651) 436-8085
FAX (715) 386-8219

June 17, 2005

**Certified Mail, Return Receipt Requested**

Department of the Treasury
Internal Revenue Service
Cincinnati, OH 45999-0010

Re: Susan M. Rohde, 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

Payment on Trust Fund Recovery Penalty for Unpaid Unemployment Taxes of TechArch, Inc., 41-1841273 for Tax Periods Ended March 31, 2001, June 30, 2002, and September 30, 2002

Dear Sir/Madam:

Enclosed please find a Power of Attorney authorizing me to represent Susan M. Rohde in this matter and three checks of Susan M. Rohde, each in partial payment of trust fund recovery penalty relating to the employment taxes of TechArch, Inc. for the quarters ended March 31, 2001, June 30, 2002 and September 30, 2002, respectively. Also enclosed are copies of your assessment notices dated October 4, 2004 with respect to the above-referenced trust fund recovery penalty for each of the above-referenced periods.

Check No. 6159 in the amount of $793.00 is in full payment of the portion of the penalty relating to the withheld income taxes for TechArch employee John M. Henney for the tax period ended March 31, 2001. (The entire assessment for that tax period relates to withheld income taxes).

Check No. 6160 in the amount of $67.73 is in full payment of the portion of the penalty relating to the trust fund taxes for TechArch employee Brian A. Clark for the tax period ended June 30, 2002.

Check No. 6161 in the amount of $301.21 is in full payment of the portion of the penalty relating to the trust fund taxes for TechArch employee Denis J. Deutsch for the tax period ended

September 30, 2002.

The enclosed checks are to be allocated to the trust fund recovery penalty in the amounts and with respect to the employees and periods described above.

Sincerely,

John P. James

JPJ:dh
enclosures
cc: Susan M. Rohde

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6159

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 793.00

seven-hundred ninety-three and 00/100 DOLLARS

TFRP
MEMO 1st QTR 2001 - re: w/h of John M Henney

Susan Rohde

⑈006159⑈ ⑆091000022⑆ 1202 29090770⑈

---

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6160

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 67.73

sixty-seven and 73/100 DOLLARS

TFRP
MEMO 2nd QTR 2002 re: w/h BRIAN A. CLARK

Susan Rohde

⑈006160⑈ ⑆091000022⑆ 1202 29090770⑈

---

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6161

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 301.21

three-hundred one and 21/100 DOLLARS



TFRP
MEMO 3rd QTR 2002 re: w/h of Denis J. Deutsch

Susan Rohde

⑈006161⑈ ⑆091000022⑆ 1202 29090770⑈

**Susan M. Rohde**
**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**
**Form 843, Claim for Refund and Request for Abatement**
**Trust Fund Recovery Penalty for First Quarter of 2001**
**Exhibit D**
**Grounds for Inapplicability of Trust Fund Recovery Penalty for First Quarter of 2001**

**Table of Contents**


I. Introduction . . . . . . . . . . 2

II. Facts . . . . . . . . . . 4
- A. Origin of the Amount of TFRP Assessed . . . . . . . . . . 4
- B. Operating and Management History of TechArch and Rohde's Role Therein . . . 4
- C. Facts Relating to Responsible Person Status Prior to January 29, 2001 . . . . . . . . 5
- D. The CFO's Rose Colored View of TechArch's Prospects that Was Transmitted to All Concerned and Kept Ms. Rohde in the Dark on TechArch's Financial Problems . . . . . . . . . . 8
- E. The Reality of TechArch's Federal Employment Tax Delinquency Problems . . 10
- F. Loan Closing to Crisis Announcement to Response Thereto . . . . . . . . . . 11
- G. Ms. Rohde Became A Responsible Person on February 10 . . . . . . . . . . 12
- H. TechArch Had No Unencumbered Funds When Ms. Rohde Became a Responsible Person . . . . . . . . . . 13
- I. Ms. Rohde's Actions After Becoming a Responsible Person . . . . . . . . . . 14
- J. Rohde Loans and Investments into TechArch . . . . . . . . . . 15
- K. The Role of CFO Wrongdoing in TechArch's Problems . . . . . . . . . . 15
- L. Employment Tax Penalties, Interest and Costs Caused by CFO's Misconduct . . 20
- M. The Burst High Tech Bubble, Recession and 9-11 Aftermath as Factors in TechArch's Problems . . . . . . . . . . 20
- N. Requested Payment Allocation with Respect to First Quarter 2001 Trust Fund Taxes . . . . . . . . . . 21

III. Grounds for Inapplicability of Trust Fund Recovery Penalty for First Quarter 2001 . . . . . . 21
- A. Requirements for TFRP Application . . . . . . . . . . 21
- B. Susan Rohde Became a Responsible Person on February 10, 2001 . . . . . . . . . . 22
- C. The Appeals Officer Erred in Concluding that Ms. Rohde Was a Responsible Person Prior to February 10, 2001 . . . . . . . . . . 24
- D. Susan Rohde Can Have No TFRP Liability for Trust Fund Taxes Arising Before February 10, 2001, Because She Was Not then a Responsible Person and TechArch Had No Unencumbered Funds When She Became a Responsible Person . . . . . . . . . . 26
- E. The Full Net Proceeds of the SBA Loan Must Be Allocated, for TFRP Purposes Only, to TechArch's First Quarter 2001 Employment Taxes . . . . . . . . . . 27
- F. The Federal Tax Deposit Penalties Paid Must Be Allocated, for TFRP Purposes

Only, to TechArch's Employment or Trust Fund Taxes for the Period in which Paid . . . 29
G. The Installment Agreement Payments Must Be Allocated, for TFRP Purposes Only, to TechArch's Trust Fund Taxes for the Period During Which Ms. Rohde Was a Responsible Person, Except That Payments During the Second and Third Quarters of 2002 Must Be Allocated as if They Were Current Employment Tax Deposits . . . 29
H. Proper Allocation of the SBA Loan Proceeds, the Federal Tax Deposit Penalties and the Installment Agreement and Other Payments, in Light of the Timing of Ms. Rohde's Accession to Responsible Person Status and TechArch's Lack of Unencumbered Funds at that Point, Completely Eliminates Ms. Rohde's Potential TFRP Liability for First Quarter 2001 . . . 30
I. The TFRP Does Not Apply Because Ms. Rohde Did Not Willfully Fail to Collect, Truthfully Account for or Pay Over the Trust Fund Taxes . . . 31

IV. Conclusion . . . 34

## I.
## Introduction

This combination claim for refund and request for abatement relates to the assessment of trust fund recovery penalty under Internal Revenue Code Section 6672 ("TFRP") against Susan M. Rohde ("Rohde") for unpaid trust fund taxes of TechArch, Inc. ("TechArch") for the first quarter of 2001. The Service assessed the TFRP against Rohde for the first quarter of 2001 and the second and third quarters of 2002. TechArch has had no unpaid trust fund taxes for any other period during its existence to date. Ms. Rohde is contemporaneously filing claims for all three quarters for which the TFRP has been assessed against her. Ms. Rohde hereby requests that the three claims be consolidated and treated together by the Service and hereby incorporates by reference her claims with respect to the other two quarters.

Ms. Rohde has been TechArch CEO throughout its existence. TechArch began operating in 1996. It most recently received paid salaries in 2003 and received revenue in 2004. TechArch has been dormant since that time. It is expected to never again have active operations unless a valuable market emerges for certain software it owns, which is not expected. TechArch has not been formally liquidated and dissolved, but it currently has no activity whatsoever. Ms. Rohde has moved on and is now employed by Wells Fargo Bank, N.A.

As CEO, Ms. Rohde was a logical person for the Service to pursue for the TFRP penalty. Nevertheless, Ms. Rohde has grounds to contest the TFRP assessments which have been made against her. This situation is factually extraordinary in five respects: reasonable lack of involvement of Ms. Rohde in TechArch's finances; deception of Ms. Rohde (and the TechArch

Board) by its CFO, which enabled TechArch's financial problems to spiral completely out of control before Ms. Rohde and the Board even learned they existed; insistence by the Service on TechArch making very large monthly payments on the past employment tax liability, which led Ms. Rohde to have TechArch continue making those payments instead of staying current in 2002; the infusion of several hundred thousand dollars into TechArch by Ms. Rohde and her family members in an effort to enable it to permanently dig out of the hole its CFO's deception had dug for it; and the end of the technology consulting boom. This strange combination of circumstances delays the point at which Ms. Rohde became a responsible person and negates willfulness on her part after she became a responsible person.

The grounds for a determination that the TFRP does not apply for the first quarter of 2001 include:

(1) Ms. Rohde cannot be held personally responsible for trust fund taxes that arose prior to when she became a responsible person, which she contends was February 10, 2001, beyond the amount of TechArch's unencumbered funds at the time she became a responsible person, which she contends was zero (Section III.D.);

(2) The full net proceeds of the SBA loan must be allocated, for TFRP purposes only, to TechArch's 2001-1 employment taxes (Section III.E.);

(3) The federal tax deposit penalties paid must be allocated, for TFRP purposes only, to TechArch's trust fund taxes for the period in which paid (Section III.F.);

(4) All payments under TechArch's installment payment agreement with the Service with respect to trust fund taxes must be allocated, for TFRP purposes only, to reduce TechArch's employment taxes for the period during which Ms. Rohde was a responsible person except that payments during the second and third quarters of 2002 must be allocated as if they were current employment tax deposits (Section III.G.); and

(5) The TFRP does not apply because Ms. Rohde did not willfully fail to collect, truthfully account for, or pay over the trust fund taxes (Section III.I.).

For the reasons set forth below, we believe that Ms. Rohde's case for avoidance of TFRP liability for the first quarter of 2001 is very strong.

## II.
## Facts

### A. Origin of the Amount of TFRP Assessed

The TFRP assessed for the first quarter of 2001 was $96,331.74. That consists entirely of withheld income taxes, as shown on the last page of Exhibit D-1, IRS Position on Details of Unpaid Trust Fund Taxes.

### B. Operating and Management History of TechArch and Rohde's Role Therein

TechArch was formed in 1996 and grew rapidly. Its annual revenues were as follows:

| | |
|---|---|
| 1997 | $ 265,000 |
| 1998 | 2,274,512 |
| 1999 | 5,188,172 |
| 2000 | 5,085,475 |

In a letter dated December 12, 2000 to TechArch's banker, TechArch's CFO projected that TechArch's 2001 sales and net income would be $8,990,835 and $445,256, respectively.

Ms. Rohde is and has been TechArch's CEO and a director from its inception. She also served on TechArch's Executive Management Committee described below.

Ms. Rohde was also TechArch's CFO prior to April, 1997, and after December, 2001. She was not TechArch's CFO between April, 1997, and December, 2001. Crucially here, Ms. Rohde was not a "responsible person" under Section 6672 from April 1997 until February 10, 2001.

TechArch was a high end information technology consulting company which provided services often called "technology architectural services." Technology architects design how an organization should use technology, working with technologists on one hand and business functional managers on the other. Ms. Rohde is a technology architect. As TechArch's CEO, Ms. Rohde quickly became focused on sales and performance of services. She was a major provider of TechArch's services to its customers at all relevant times.

As TechArch's CEO, Ms. Rohde was fully occupied in performing the statutory duties of the CEO and the practical requirements of that job at rapidly growing TechArch, where she also was a major service provider. Ms. Rohde estimates that she spent between 16 and 40 hours per week as a billing consultant, most of it at client locations. She therefore sought to hire highly qualified, experienced individuals to handle the day-to-day business transactions required to keep TechArch running.

During the crucial time of the fourth quarter of 2000 and the first quarter of 2001, Ms. Rohde

was also the lead software architect to complete the Wells Fargo Information Privacy Architecture project, a three month contract valued at approximately $65,000, the account manager for a security software service that TechArch had been selected to build for the St. Paul Companies, a 12 month contract valued at approximately $1.2 million, and the lead negotiator for a projected major expansion of TechArch into the Duluth SoftCenter, as to which Duluth had offered TechArch a $5 million development funding package if TechArch would locate 40-60 jobs at Duluth's SoftCenter facility.

TechArch's Board of Directors met quarterly and would also have special meetings from time to time. Those meetings were attended regularly by TechArch's CFO, who reported on financial matters and never called the Board's attention to the reality that TechArch was experiencing financial difficulty in general and problems with lateness in meeting its employment tax obligations in particular. The reality and pattern of nondisclosure are described at E. below.

Ms. Rohde also participated actively on TechArch's day-to-day management team, called the Executive Management Committee ("EMC"). The EMC was composed of the CEO, the CFO, the Vice President of Marketing and the Vice President of Business Consulting Services (in February, 2001, TechArch hired a general counsel who became an advisor to the EMC). The EMC met every Monday and each EMC member reported on their area of responsibility, distributing appropriate materials such as financial statements and/or sales pipeline reports. Thus, the CFO reported to the EMC on a weekly basis. He simply failed to report on the problems with respect to TechArch's federal employment taxes or, indeed, the impending financial catastrophe that should have been apparent long before January 29, 2001.

## C. <u>Facts Relating to Responsible Person Status Prior to January 29, 2001</u>

TechArch is a Minnesota corporation. The Minnesota Business Corporation Act requires a corporation to have two officers - a CEO and a CFO. Minn. Stat. §302A.301.

Minnesota law prescribes certain required roles for the CEO:

"Subd. 2. **Chief executive officer.** The chief executive officer shall:

(a) have general active management of the business of the corporation;
(b) when present, preside at all meetings of the board and of the shareholders;
(c) see that all orders and resolutions of the board are carried into effect;
(d) sign and deliver in the name of the corporation any deeds, mortgages, bonds, contracts or other instruments pertaining to the business of the corporation, except in cases in which the authority to sign and deliver is required by law to be exercised by another person or is expressly delegated by the articles or bylaws or by the board to some other officer or agent of the corporation;
(e) maintain records of and, whenever necessary, certify all proceedings of the board and the shareholders; and

(f) perform other duties prescribed by the board."

Minn. Stat. §302A.305, subd. 2. The TechArch board did not prescribe any duties for Ms. Rohde that suggest she would be a responsible person under §6672.

From April, 1997, when TechArch's first CFO began work, through December 2001, when TechArch's third CFO left, Ms. Rohde rarely signed checks. Ms. Rohde believes that she signed fewer than one dozen checks during the period from May 1, 2000, through April 30, 2001, the period that is so crucial here. Generally Ms. Rohde would only sign a check if immediate payment was advisable and the CFO was unavailable. From January 1, 2001, through March 14, 2001, Ms. Rohde signed exactly two checks - one for $242.40 to Office Depot, and one for $1,437.85 to employee Andrew J. Kavie. Ms. Rohde did not have a copy of QuickBooks, which contains TechArch's accounting records, until September, 2002.

Ms. Rohde had no reason to meddle in the details of TechArch's finances. Moreover, she reasonably believed that timely federal tax deposits were being made and had no knowledge of them not being made, except as disclosed below.

TechArch's Board of Directors named Michael P. Deegan ("Deegan") as TechArch CFO on April 27, 2000. Deegan, a Certified Public Accountant and expert tax accountant, was, and still is, a partner in Weber & Deegan, Ltd., a CPA firm that was at that time, and throughout Deegan's tenure as CFO, TechArch's outside accounting firm. Deegan continued as an active partner in Weber & Deegan throughout his tenure as TechArch's CFO and billed TechArch for his CFO services through Weber & Deegan.

Ms. Rohde offered Deegan full time employment as CFO. Deegan advised her that TechArch, in his professional judgment, did not require a full time CFO, and that he could successfully handle the responsibilities of TechArch's CFO position on a half time basis by cutting back somewhat on his other work with Weber & Deegan and having TechArch hire another financial person to work under this supervision. Relying on Deegan's expertise, TechArch did that.

Mr. Deegan served as TechArch's CFO until April 23, 2001. Ms. Rohde, as CEO, and TechArch's Board relied upon Deegan to perform the duties of the CFO. Ms. Rohde did not interfere with Deegan's handling of the financial functions of the CFO.

The Minnesota Business Corporation Act prescribes that the Chief Financial Officer keep accurate financial records for the corporation; deposit all money, drafts, and checks in the name of and to the credit of the corporation in the banks and depositories designated by the board; endorse for deposit all notes, checks, and drafts received by the corporation as ordered by the board, making proper vouchers therefor; disburse corporate funds and issue checks and drafts in the name of the corporation, as ordered by the board; render to the chief executive officer and the board, whenever requested, an account of all transactions by the chief financial officer and of the financial condition of the corporation; and perform other duties prescribed by the board or by

the chief executive officer. Minn. Stat. §302A.305, subd. 3.

Clearly, a division of duties between CEO and CFO in which the CEO has essentially nothing to do with collecting, accounting for and paying over employment taxes under Section 6672 is perfectly appropriate under Minnesota law. Equally clearly, Ms. Rohde was fully occupied as TechArch's CEO and as a major provider of professional services to TechArch's customers and Mike Deegan was, at all times relevant here, functioning as TechArch's CFO and, in that status, clearly statutorily responsible for the duties enumerated in Internal Revenue Code §6672.

TechArch's financial operating procedures confirm that Deegan, and not Rohde, was a responsible person. TechArch employed a clerical person named Jill Taylor to work under Deegan's direction and control. TechArch had separate procedures for general check writing and payroll, respectively.

For check writing other than payroll, Ms. Taylor would from time to time present Mr. Deegan with a list of outstanding payables. Mr. Deegan would select from that list the parties to be paid and the amounts to be paid to each of them. Ms. Taylor would then prepare the checks for signature. Most of the time, the checks would be signed by Mr. Deegan. Occasionally, a check would be signed by Ms. Rohde, acting in a purely ministerial capacity, for she would have played no role in determining who should be paid or the appropriate amount to be paid if anything less than full payment was being made. The way TechArch actually operated, CFO Mike Deegan was solely in charge of making judgments about who got paid and how much.

Payroll operated in much more automatic fashion. TechArch employees were paid on Fridays on a bi-weekly basis. Ms. Taylor essentially handled the payroll. Employees submitted time sheets on a weekly basis. Ms. Taylor, working from the employee time sheets, developed all of the financial payroll data and completed it and electronically advised the bank on the Wednesday prior to the Friday payroll date. The net payrolls were direct deposited to the employees' bank accounts by TechArch's bank on the Friday payroll date, and on that same date, Ms. Taylor distributed the payroll remittance advices to the employees. This process was under the general supervision and control of Mr. Deegan as CFO, and Ms. Rohde played no role in it whatsoever, except for submitting her own time sheet. Ms. Rohde is in no way suggesting that Ms. Taylor was a responsible person, for she clearly was acting in ministerial fashion. The point here merely is that Ms. Rohde had nothing to do with the process.

Ms. Rohde had no inkling that TechArch had major financial problems until a meeting of TechArch's EMC on January 29, 2001, at which meeting Deegan announced that TechArch was in terrible shape and that it would be necessary to begin laying people off immediately.

Thus, from April 1997, until at least January 29, 2001, TechArch's CFO had both the power and the responsibility within TechArch's corporate structure for handling all financial matters and, in particular, deciding who would be paid how much, and seeing to the payment over of employment taxes; Ms. Rohde played no role in the accounting for TechArch's operations; and

Ms. Rohde played no role in determining who to pay, with her comparatively rare instances of check signing being mere ministerial acts of signing a check that had already been prepared at the direction of the CFO.

Thus, while Ms. Rohde was occupied with the responsibilities and activities as CEO, chief sales person and a major service provider, the CFO was in charge of the financial side of TechArch's business, which is exactly what is statutorily prescribed for the CFO under the Minnesota Business Corporation's Act. While Ms. Rohde was not directly involved in TechArch's finances, neither was she totally disengaged. She participated actively on TechArch's EMC, and on the board of directors. The problems there were that the CFO never brought up the financial problems.

This allocation of responsibilities between Ms. Rohde and the CFO relating to financial matters clearly was reasonable in light of TechArch's needs for Ms. Rohde to function in the role of CEO, sales person and service provider, and the professional qualifications of the CFO.

## D. <u>The CFO's Rose Colored View of TechArch's Prospects that Was Transmitted to All Concerned and Kept Ms. Rohde in the Dark on TechArch's Financial Problems</u>

Both TechArch's Board of Directors and its EMC met regularly at all relevant times. The CFO regularly attended those meetings. Attached as **<u>Exhibit D-2</u>**, Deegan Invoice Copies Showing Attendance at EMC and Board Meetings, are copies of invoices for Deegan's services which make clear that he regularly attended EMC and board meetings. Notwithstanding the regular occurrence of these meetings at which financial matters were discussed and problems should have been brought forth, he said nothing.

In late 2000, Ms. Rohde did become aware of a bridge financing challenge. TechArch was negotiating to establish a facility in Duluth that would enable it to shift from "time and materials" work to lump sum contract work. TechArch had positive connections with Congressman Oberstar, which would have helped it land federal contracts to be performed in Duluth. The SBA loan application probably was filed in mid-November, 2000.

In addition, Ms. Rohde's current recollection is that two TechArch consultants were released in late November 2000, and that three were released by Wells Fargo without notice as of December 31. But TechArch also had a very large project (about $1,000,000 in revenue over a year) with the St. Paul Companies in the works by early January 2001. This contract ultimately did occur (and enabled TechArch to right its financial ship in the second quarter of 2001).

Ms. Rohde relied on Deegan to determine how large a loan was needed, and Deegan determined that $250,000 would suffice.

On December 12, 2000, at a time when TechArch's cash situation obviously had become a crisis, Deegan sent a letter and financial statement projects to Gerald Anderson of Associated Bank,

copies of which are attached as **Exhibit D-3**, December 12, 2000 Representations to Associated Bank in Support of TechArch's Application for SBA Loan. Deegan gave no indication that there were any problems and, indeed, included projections of 2001 sales of $8,990,835 and net income of $445,256. In the cover letter, Deegan projected that technology (as opposed to management consulting) income should increase about 25% in 2001 over 2000, and that "we believe we have the management and sales staff in place to easily produce this increase." These representations were made not only to Associated Bank, but also to Ms. Rohde, the EMC and the board. TechArch's CFO, who had exclusive control of TechArch's accounting records and had, or should have had, knowledge of TechArch's rapidly deteriorating situation was, instead, painting an exceedingly rosy picture. Attached as **Exhibit D-4**, No Problems E-Mail, is Deegan's e-mail to EMC members of December 20, 2000, painting a positive picture for the future, and specifically the first quarter of 2001.

That Deegan was painting such a rosy picture is further demonstrated by two major transactions into which TechArch entered on August 25, 2000, with the CFO's blessing. First, TechArch agreed to redeem the 45% stock interest of Jeffrey A. Hickstein for $821,974.05. Second, TechArch acquired substantially all of the assets of Ian Alliot, Inc. for a price of $229,718.75, plus $590,000 in noncompete payments. These were major transactions for TechArch, adding obligations of $1,641,692.80 at a time when TechArch, unbeknownst to Ms. Rohde, was already beginning to experience federal employment tax payment problems.

A special meeting of TechArch's Board of Directors was held on January 11, 2001, to seek the board's approval to proceed with the Duluth SoftCenter initiative. The CFO expressed concern that this was a very large financial leap, but never mentioned that TechArch had not paid any of its December, 2000 withholding taxes and was not in a position to pay the withholding taxes for the payroll that the CFO would have staged for electronic deposit the previous day.

Associated Bank, as is typical, required additional security from outside the borrower, so Ms. Rohde agreed to personally guarantee the SBA loan, and Rohde Sisters Farm LLP agreed to give a third mortgage on its farm to further secure the loan. The SBA Loan closed on January 24, 2001, with Ms. Rohde's personal guaranty and her family partnership's mortgage being given, while she and her family remained completely in the dark as to TechArch's financial condition.

Deegan had committed TechArch to using loan proceeds to pay the January employment taxes, and he had an obligation to use them to pay those taxes instead of making other payments and it was his breach, not Ms. Rohde's that led to them not being so used.

Had the truth about TechArch's financial situation been communicated to Ms. Rohde as it gradually deteriorated, many things would have been different. Most importantly here, Deegan's deceit left Ms. Rohde completely in the dark about TechArch's financial problems until January 29, and Deegan misapplied the SBA Loan proceeds to Ms. Rohde's detriment.

## E. The Reality of TechArch's Federal Employment Tax Delinquency Problems

To the best of Ms. Rohde's recollection, TechArch had never had a Federal tax problem of any kind prior to Deegan becoming CFO on April 27, 2000. The Appeals Officer in Ms. Rohde's appeal of the proposed TFRP assessment found an earlier penalty abatement. Ms. Rohde never knew about that problem, which occurred during the tenure of Deegan's predecessor, though she did find evidence confirming it in the process of following up on the conversation with the Appeals Officer.

Unbeknownst to Ms. Rohde or the Board, beginning almost immediately after Deegan became CFO, TechArch began a pattern of lateness with respect to making its Federal tax deposits.

Problems in the second quarter of 2000 led to an assessment of penalties and interest of $1,773.52, which was paid on December 6, 2000. Ms. Rohde was unaware of the lateness, the assessment and the payment.

TechArch's Federal tax deposit compliance became a much greater problem in the third quarter of 2000, and Deegan failed to disclose that reality to Ms. Rohde and the Board. He only mentioned cash flow difficulty twice - once in July 2000 when cash was particularly tight because one customer was very late in paying $82,000 of invoices, and again on November 16 in response to an officer's embarrassment at being late in paying a supplier. The latter instance triggered an EMC discussion in which Deegan participated and at which he gave no indication of there being any problems with employment taxes or any serious structural financial problems.

Penalties in the amount of $12,567.06 and interest in the amount of $2,959.87, for a total of $15,526.93 were assessed against TechArch for the third quarter of 2000. Meanwhile, Deegan wrote TechArch checks to Weber & Deegan for $14,420 in the third quarter. Ms. Rohde was unaware of the lateness, the penalties and the interest. In retrospect, there was a heads up in August 2000, when Techies.com released all of their consultants, including about three or four from TechArch, but this signal of impending trouble was disregarded by Ms. Rohde because Techies had just been acquired by another firm, which made the consultant layoffs understandable, and Deegan gave no indication that TechArch was having any difficulty in meeting its obligations.

Ultimately, $3,999.13 of the penalties and $2,524.06 of the interest were abated, but TechArch ended up paying the remainder of the penalties and interest, which totaled $9,003.74. This was paid in two stages. The first was by the Service allocating $657.96 from an inadvertent TechArch overpayment in the second quarter of 2001. Ms. Rohde was completely unaware of this overpayment and allocation. The second was an allocation of $8,345.78 by the Service of the first payment, on August 30, 2001, of $15,000 by TechArch under the installment payment plan mentioned below.

A review of TechArch's employment tax transcripts suggests that the Federal tax deposits for the

two October 2000 payrolls and the first November payroll were timely made. Unbeknownst to Ms. Rohde, the Federal tax deposit for the second November payroll was made late, on December 7, 2000. In October and November, Deegan wrote TechArch checks to his own firm for $30,760.

There were three payrolls in December. Unbeknownst to Ms. Rohde, no December 2000 federal tax deposits were made in timely fashion. The fourth quarter employment tax problems led to the assessment of penalties of $14,348.89 and interest of $554.84, for a total additional outlay of $14,903.73. The December employment taxes were in fact paid by Deegan on January 26, 2001, by using $115,914.72 of the SBA loan proceeds that had been intended to be a bridge to a major project for TechArch. In fact, Deegan actually overpaid the fourth quarter taxes by $688.60, which the Service ultimately credited against the penalties and interest. The remainder of the penalties and interest have been eliminated by the Service allocating $4,161.41 of the first $15,000 installment payment on August 30, 2001 and $10,053.72 of the second $15,000 installment payment on September 12, 2001.

TechArch's federal employment tax problems continued right on into January 2001, as no Federal tax deposits were made with respect to either payroll. The second January payroll was on January 26, which would have required a Federal tax deposit on January 30. In January, Deegan wrote TechArch checks to his own firm for $17,057.50.

The first Ms. Rohde learned of a potentially serious problem with respect to Federal employment taxes was in a conversation with Deegan during the week following the January 12, 2001 payroll. Deegan mentioned that payment of the employment taxes for that payroll would be delayed until TechArch's SBA loan closed. Ms. Rohde was not concerned, as January revenues had always been light due to the December holidays. Deegan either lied to her or was grossly negligent in not using the SBA loan proceeds to pay those taxes. Moreover, he clearly intentionally deceived her by mentioning only the most recent payroll when he knew she had no idea that the employment taxes had not been paid for any of the December payrolls either.

Most importantly here, Deegan had represented to Rohde that the SBA Loan proceeds would be used in part to completely cover TechArch's federal employment tax obligations for its January 12 payroll. Ms. Rohde was entitled to count on that being the case, and should not be held responsible for it not having been done.

## F. <u>Loan Closing to Crisis Announcement to Response Thereto</u>

The SBA loan closed on January 24, 2001. The principal amount was $250,000, but $45,320.32 was used to pay off an existing equipment loan with the lending bank, and $6,720 went to the bank as its fee, so $197,959.58 was available to TechArch for other uses. Unbeknownst to Ms. Rohde, Deegan chose to pay his own firm $9,467.50 and to pay the December payroll tax obligations of $115,914.72, consisting of $115,226.12 in tax and $688.60 in penalty (about which Ms. Rohde had no knowledge), but not the January ones, and also to pay a 401(k)

obligation of $34,932.93, leaving $44,364.53 from the loan proceeds. Ms. Rohde and the EMC and Rohde Sisters Farm, LLP had all believed these funds were going to tide TechArch over until a prospective St. Paul Companies project and a prospective Duluth project began generating revenue. As a direct result of Deegan's misrepresentations and failure to make appropriate disclosures, TechArch hired a person as communications director on January 25, 2001.

The first inkling to Ms. Rohde that TechArch had major financial problems came at the EMC meeting on January 29, 2001. At that meeting, CFO Deegan announced that TechArch was in terrible shape and that it would be necessary to begin laying people off immediately. Nothing close to a full disclosure was made at that meeting.

Once TechArch's EMC became aware of the financial crisis on January 29, 2001, they immediately began investigating options to right TechArch's financial ship. The EMC's focus was on current cash, future revenues and future expenditure needs, not on the past. Thus the EMC paid no attention to how the SBA loan had been used. The EMC examined the bills, invoices, etc. and constructed a cash flow to determine what the expenses were and where cuts could be made. TechArch immediately laid off one person. By about February 20, the EMC had a plan and began acting on that plan. Many employees were on a 28-day pay lag, so even when steps were taken, they often did not provide TechArch financial relief for approximately 30 days.

## G. Ms. Rohde Became A Responsible Person on February 10

January 29, 2001, obviously is a key date in the evolution of this situation. Deegan's announcement that TechArch was in such terrible financial shape that it would be necessary to begin laying people off immediately caused Ms. Rohde and the EMC to go into crisis mode and develop a survival plan. Notwithstanding that Ms. Rohde suddenly found out on January 29, 2001, that TechArch had major financial problems, because of the way TechArch's financial operations functioned and continued to function, the most appropriate date to mark as Ms. Rohde's attaining responsible person status is February 10, 2001, not January 29, 2001, as explained below.

After January 29, 2001, Deegan continued to act as CFO by preparing financial statements, working with the various banks to close on the prospective Duluth project, providing financial expertise to the EMC, and continuing to authorize and sign checks. Deegan continued as CFO until April 23, 2001. Throughout this time, he clearly was a responsible person under Section 6672. As time passed after January 29, he gradually became less engaged in TechArch's affairs. Rohde attributed this to Deegan becoming more and more involved in meeting the demands of "tax season" at Weber & Deegan. In retrospect, now that the magnitude of Deegan's wrongdoing has been discovered, Deegan probably was running away out of shame and embarrassment, each of which he should have intensely experienced over his conduct.

**Exhibit D-5**, TechArch's First Quarter 2001 Check Register, shows the activity in TechArch's checking account during the first quarter of 2001. TechArch had payrolls on January 26 and

February 9, 2001. The details of each of those is shown in **Exhibit D-5**. As noted above, each of these payrolls was handled in the usual fashion by Ms. Taylor. Ms. Rohde had nothing to do with either one of them. Mr. Deegan remained as CFO and as Ms. Taylor's supervisor. Note that this was not a delegation of duties by Ms. Rohde when times got tough, but rather merely a continuation of the reasonable procedures that had been in place during three years of rapid and seemingly successful growth.

TechArch issued 10 checks on January 30, 2001. These checks had been generated at Mr. Deegan's request and were signed by Mr. Deegan. These checks almost certainly had been signed prior to January 29, when Deegan disclosed that TechArch had major financial problems. Deegan also was responsible for issuing the January 26 payroll that created the payroll tax obligation that could not be timely paid. Obviously, Deegan should have insisted that at least the highest paid leaders of TechArch take less pay, so that the payroll tax obligations could have been met. Instead, he was silent. Deegan also signed the checks issued through February 5.

The February 1 payment of employment taxes to the Minnesota Department of Revenue was an electronic transfer originated by Mr. Deegan. The February 5 checks payable to Ms. Rohde and the Minnesota Department of Economic Security were authorized and signed by Mr. Deegan. The February 6 item of $4,543.95 to Robert C. Lyng was a direct deposit of his final payroll check, as he had recently resigned. The Paul Kasper item on February 6 was a journal entry of some kind that did not involve a disbursement of funds. Except for a few deposits, which presumably were payments of client receivables, there are no other entries between January 29, 2001, and February 10, 2001, except for the February 9 payroll, which, as indicated above, was simply done in the ordinary course without any participation by Ms. Rohde.

TechArch's checks and payrolls issued through February 9 were a continuation of Deegan's historical control over TechArch's finances, as the EMC focused on planning for the future.

The checks written on February 14, 2001, had been approved by TechArch's EMC. Thus, by that time, the former approach of simply having Deegan handle the whole financial side of TechArch's business himself, had been modified. Those checks were signed by Nancy Vaccaro, TechArch's office manager.

The most appropriate date to assign for Ms. Rohde's accession to responsible person status is February 10, 2001, the date immediately following the February 9 payroll, which had been paid in the ordinary course in accordance with TechArch's long established procedures, without any participation whatsoever by Ms. Rohde.

## H. TechArch Had No Unencumbered Funds When Ms. Rohde Became a Responsible Person

TechArch had only one bank account, its account with Associated Bank, the check register for which for the first quarter of 2001 is attached as **Exhibit D-5**. TechArch's checkbook balance on

February 10, 2001, as disclosed on **Exhibit D-5**, was $32,552.55. At most, then, TechArch's balance of "unencumbered funds" at the time Ms. Rohde became a responsible person was $32,552.55.

In fact, however, TechArch's entire checkbook balance, and considerably more, was already encumbered as of February 9, 2001. Salaries that TechArch owed its employees for work they had already performed far exceeded the $32,552.55 balance.

TechArch's professional employees, who constituted by far the greatest portion of its employee roster and accounted for by far the greatest portion of its payroll expense, submitted time sheets on a weekly basis. Two weeks' worth of time sheets were used to develop and pay a payroll every two weeks. However, for many of its professional employees, TechArch's payroll lagged the services performed by the employees by a full month. For example, the payroll paid on February 9, 2001, was for services rendered through January 12, 2001. Thus, as of February 10, TechArch owed many of its professional employees for a full four weeks of services - from January 13 through February 9 - for which they had not been paid.

The first two weeks of those services - from January 13 through January 26 - were paid in the February 23, 2001 payroll, the total of which was $46,867.37 for the employees in question. The remaining two weeks of services that had been performed through February 9 - those from January 27 to February 9 - were paid in the March 9, 2001 payroll, which totaled $47,490.16 for the employees in question. The sum of these two payrolls for the employees in question was $94,357.53. Clearly, TechArch's entire checkbook balance of $32,552.55 as of February 10, 2001, was already encumbered to pay salaries already earned by its employees.

TechArch's approach was a bit unusual, and, indeed may be one reason why financial difficulties snuck up on it. Nevertheless, this was in fact the approach TechArch was using at that time. It was initially adopted because clients were billed every two weeks and were expected to pay within 30 days thereafter. Thus, the work performed by employees in weeks one and two is billed to clients early in week three and not expected to be paid to TechArch until late in week seven. The delayed payment of its professionals was very useful to TechArch as it was growing rapidly. It minimized the borrowing necessary to meet its expanding payroll.

## I. Ms. Rohde's Actions After Becoming a Responsible Person

Ms. Rohde led the EMC through a series of excruciatingly painful decisions to cut benefits, reduce salaries and lay off employees to allow TechArch to achieve financial stability once again. In addition, as noted in Paragraph J. below, Ms. Rohde and her sisters inserted funds into TechArch to "bridge" the corporation through March since its ability to secure additional funding was obliterated by the nonpayment of employee withholding taxes.

TechArch successfully righted itself in April, 2001, and timely made its Federal tax deposits from April 2001 through February 2002. TechArch was doing successful work on large projects.

In addition, as noted below, Ms. Rohde and her sisters invested approximately $300,000 more into TechArch.

In May 2001, TechArch, in the person of either Ms. Rohde or its general counsel, Steve Hetland, acting upon Ms. Rohde's direction, initiated contact with the Service over its employment tax delinquency. This contact led to an installment payment agreement with the Service dated September 3, 2001, in which TechArch agreed to pay $15,000 per month (after a $15,000 down payment on about August 30) with respect to its outstanding Federal employment tax obligations, including tax, penalties and interest. In connection with this, the Service abated $41,416.36 in penalties for the first quarter of 2001. This abatement did not address the November/December 2000 problems. At that point, Ms. Rohde was not even aware of those. The $15,000 monthly payment level was insisted upon by IRS Collection Officer Karen Nyquist and Ms. Rohde agreed to it on behalf of TechArch, believing in all good faith that TechArch would generate the cash flow to make the payments, in addition to staying current on its employment taxes and other obligations. The installment agreement payments were timely made through July 2002. After that, payments were made irregularly in amounts less than $15,000.

No sooner had the installment payment agreement been signed than 9-11 occurred. That led immediately to loss of business for TechArch and to a crucial bad debt of $250,000. Nevertheless, TechArch and Ms. Rohde soldiered on. The total payments by TechArch on its past due federal employment tax liabilities made to date have been $211,500. This was only made possible by repeated injections of additional funds into TechArch by Ms. Rohde and her family.

## J. <u>Rohde Loans and Investments into TechArch</u>

Ms. Rohde and her family invested more than $400,000 in TechArch, after the federal and employment tax problems arose. Attached as **<u>Exhibit D-6</u>** is a schedule titled "Rohde Loans/Investments." This shows family investments into TechArch totaling $403,718 in a serious of 23 separate increments during the period March 9, 2001 through January 6, 2003. In effect, Sue Rohde already had personally assessed herself far beyond what she was legally required to do in an effort to keep TechArch afloat. Moreover, although we have not traced the actual dollars, clearly a substantial amount of that investment into TechArch found its way into the hands of the IRS through payments totaling $211,500 which TechArch has made pursuant to the installment payment agreement into which it entered in August, 2001.

## K. <u>The Role of CFO Wrongdoing in TechArch's Problems</u>

TechArch was gravely harmed by some unknown combination of incompetent performance and deliberate wrongdoing by its CFO, Mike Deegan. That wrongdoing occurred should be apparent from the foregoing narrative.

The CFO's wrongdoing not only caused those federal employment tax problems, but also caused

TechArch to incur obligations that it never would have incurred had the CFO been painting a realistic picture of its financial condition. These included the SBA loan in the amount of $250,000 from Associated Bank, guaranties of that loan by Ms. Rohde and her family partnership, expansion of TechArch by taking down new office space and hiring additional personnel, and continuing to operate at an unsustainable level of employment.

The most egregious instances of wrongdoing in the employment tax context are:

(1) Deegan's wrongdoing with respect to the representations made to obtain the SBA loan, a substantial portion of the proceeds of which he promptly used to pay past due employment taxes that clearly would have subjected him to six figure TFRP exposure, almost certainly rises to the level of criminal fraud.

(2) Deegan's payments to his own firm, at the same time that federal tax deposits were not being timely made, were unconscionable. Those payments totaled $62,237.50 from July 17, 2000, to January 24, 2001.

The full impact of Deegan's wrongdoing on TechArch and Ms. Rohde can only be appreciated by reviewing what he did.

TechArch was a relatively small, closely held company. Sue Rohde has been TechArch's CEO throughout its entire existence. Ms. Rohde successfully delegated financial management responsibilities to TechArch's CFO from approximately April, 1997, until approximately May, 2000, when Mike Deegan took over as CFO. TechArch had experienced no major problems with respect to payment of its federal employment tax obligations prior to the assumption of the CFO position by Deegan. Under the circumstances, it was reasonable for TechArch's Board to continue the allocation of executive responsibilities that placed the financial management responsibility in the hands of the CFO and had Ms. Rohde fully occupied with other responsibilities.

This allocation of responsibilities, unfortunately, turned out to be a huge and lasting mistake due to Deegan's misconduct. Charged with seeing that all required bills were paid on time, he soon began a pattern of failing to pay federal employment tax obligations on time, as a result of which penalties began to be assessed. Charged with keeping TechArch's CEO and Executive Management Team apprised of the status of TechArch's finances, Deegan said nothing to alert any of them to mounting problems towards the end of the year 2000. This gross misconduct by TechArch's CFO meant that TechArch missed an opportunity to downsize more quickly and minimize or avoid the problems that were, unknown to executive management other than the CFO, developing.

Worse, while failing to stay current with the IRS, Deegan did not hesitate to pay his own firm for the services he was providing to TechArch. Payments made to that firm during Deegan's tenure as CFO totaled $62,237.50. While Deegan could not have been expected to work for nothing, it

was unconscionable for Deegan to say nothing about failing to timely make federal tax deposits while paying invoices from his own firm. This surely was a violation of his duty of loyalty to TechArch as an officer of TechArch.

Deegan's wrongdoing against TechArch escalated in December, 2000 and January, 2001. Unbeknownst to any other officer of TechArch, TechArch made no employment tax payments with respect to any of its three December, 2000 payrolls. Deegan did alert Ms. Rohde on or about January 12 that the payroll taxes for the first January payroll would have to be paid out of the soon to be closed SBA loan, but this amounted to an indirect misrepresentation with respect to December, about which he said nothing. Then, when the SBA loan proceeds were received, he chose to apply them to the December payroll taxes that were already in arrears and to his own invoice rather than paying the current January payroll taxes. This was simply outrageous conduct that multiplied the penalties against TechArch for no good reason whatsoever.

When Deegan finally did advise TechArch's CEO and Executive Management Team that there was financial distress, which came in a meeting on January 29, 2001, even then he did not make clear the depths of the problems and he said nothing about his own misconduct with respect to the employment taxes.

Deegan's failure throughout his tenure to provide the IRS with the deference to which it is entitled by law caused TechArch to incur unnecessary penalties. Deegan's preference for his own firm over the IRS caused TechArch to incur unnecessary penalties. Deegan's failure to provide any warning to TechArch's other top management of the financial crisis caused TechArch to continue operating at a completely unrealistic level of expenditures, and even to enter into a new lease, which Deegan signed, on January 21, 2001, and to hire a new management employee shortly thereafter. Deegan's failures to disclose the reality of TechArch's situation caused TechArch to incur thousands of dollars of penalties for failure to pay employment taxes on time, which never would have been incurred had he given warning so that TechArch could have downsized sooner. Most egregious, there should have been no penalties for late January, February or March even assuming that Deegan gave no timely warning of trouble, because the SBA loan proceeds should have been conserved to enable TechArch to meet its employment tax obligations for the immediate and forthcoming payrolls instead of paying those funds down on already delinquent taxes and Weber & Deegan invoices. In sum, the picture here is of outrageously, deliberately irresponsible conduct by TechArch's CFO that needless multiplied TechArch's financial problems in general, and its incurrence of federal employment tax penalties in particular.

Given that Deegan had chosen all along to prefer other creditors, including his own firm, to the Service, it would appear to be no coincidence that he made misrepresentations regarding TechArch's financial condition in order to help TechArch obtain the SBA loan and induce the Rohde Sisters Partnership to guarantee it. Such misrepresentations enabled him to materially reduce his own personal exposure to the trust fund recovery penalty, which he knew about, but Ms. Rohde did not, by using the SBA loan proceeds to pay the delinquent December employment

taxes. Deegan either negligently or intentionally wronged TechArch (and Rohde Sisters Farm, LLP) in at least the following ways:

(1) Unnecessarily incurring Federal tax deposit penalties for late federal tax deposits and then saying nothing about them from May through November 2000.

(2) Failure to advise Rohde of what in retrospect appears to have been a growing cash flow problem between May 2000 and approximately the end of November 2000. Rohde was aware of only two instances of tightness - in July and November, as noted above, but neither was flagged by Deegan as involving federal employment taxes or being an ongoing problem. TechArch had excellent relations with Associated Bank, which almost surely would have enabled it to avoid all payroll tax lateness during this time span. TechArch was seen by the Bank as a successful, growing customer.

(3) Failure to advise Rohde of the catastrophically bad economic situation that led to no Federal tax deposits being made in December 2000 and January 2001. Deegan should have been able to see this coming. Had he done so, Rohde and TechArch could and would have taken action that would have saved well over $100,000 in liabilities. Rohde was never told by Deegan that the December 2000 taxes had not been paid and she finally learned in March 2003 that they were paid out of SBA loan proceeds on January 24, 2001.

(4) Signing checks totaling $62,237.50 for payments to his firm, Weber & Deegan, when payroll taxes were either not being paid timely or not being paid at all.

TechArch's payments to Weber & Deegan during the time of Deegan's services as CFO were as follows:

| Date | Check Amount | Check Number |
|---|---|---|
| 7/17/2000 | 3,080.00 | 3060 |
| 8/4/2000 | 6,800.00 | 3090 |
| 8/23/2000 | 4,540.00 | 3140 |
| 10/2/2000 | 14,960.00 | 3189 |
| 11/28/2000 | 15,800.00 | 3294 |
| 01/02/2001 | 7,590.00 | 3334 |
| 01/24/2001 | 9,467.50 | 3370 |
| Total | $62,237.50 | |

(5) Payments of discretionary invoices (in addition to those to Weber & Deegan) instead of payroll taxes. TechArch's preliminary investigation suggests that such payments totaled at least $65,000 in January 2001 alone. There may have been additional such payments both earlier and later.

(6) Failure to alert Rohde to the reality of TechArch's financial condition at the time of the Hickstein stock redemption and the Alliott asset acquisition, each of which occurred in late August, 2000. The Hickstein stock redemption included a note payable of $821,974.05 and the Alliott asset acquisition used $100,000 in cash and included a note payable of $129,718.75.

(7) Misrepresentations regarding TechArch's financial condition made to Associated Bank in the SBA loan application, including the letter attached as **Exhibit D-3**.

(8) Misrepresentations regarding TechArch's financial condition made to Rohde Sisters Farm, LLP in connection with their guaranty of the SBA loan.

(9) Misrepresentation to Rohde and TechArch's Executive Management Committee on January 12, 2001 in which Deegan said that payment of the first January payroll taxes would be delayed until the SBA loan proceeds were received, but made no mention of any other payroll tax problems for prior periods.

(10) Making irresponsible comments out of the blue in a meeting on January 18, 2001 involving TechArch's banker and prospective funders of a major project in Duluth, which led to TechArch not getting the contract. TechArch was well connected with project decision makers and Rohde believes that TechArch would have gotten the project had Deegan not ineptly presented TechArch's financial position.

(11) Signing a lease on behalf of TechArch to double its office space on January 21, 2001, notwithstanding his knowledge that TechArch was in deep financial trouble which he had not disclosed to Rohde. This action alone cost TechArch $69,891.36.

(12) Paying the already delinquent December employment obligations instead of avoiding additional penalties by paying the current federal tax deposits and conserving funds for future tax deposits.

Rohde does not know whether Deegan negligently failed to perceive how bad the situation was getting or deliberately withheld information against TechArch's best interests. Rohde does know that Deegan had done some work for NBA referees who were convicted of tax fraud, that he was a witness in those prosecutions, that he was himself under investigation for perjury, that he was building a house and that his wife was pregnant. All of this was taking place in the summer and fall of 2000. Rohde believes that Deegan lost focus on TechArch and the fact that it was gradually spiraling out of control until things got so bad that he chose to say nothing rather than admit to having been, for practical purposes, asleep on the job. Deegan had gotten off to what appeared to be a good start (deceptively since payroll deposit lateness began almost immediately), regularly presenting financial statements and cash flow projections.

Throughout his tenure, Deegan failed to inform Rohde that there was any problem with the employment taxes. Rohde, oblivious to the fact that late payments had already begun to crop up frequently from May through November, was completely unaware that the December employment taxes had not been paid. Had she known of these problems, she would have acted much sooner and avoided much of the problem that ultimately destroyed TechArch.

## L. Employment Tax Penalties, Interest and Costs Caused by CFO's Misconduct

The CFO's misconduct in not making timely federal employment tax deposits cost TechArch dearly. Some of those penalties were abated, but others were not, resulting in the assessment and payment of unnecessary penalties, interest and costs.

The employment tax deposit penalties, interest and costs that were assessed against TechArch during the period of CFO misconduct and ultimately paid by TechArch, net of any abatements, included $1,736.84 in penalty and $36.68 in interest, for a total of $1,773.52 in 200006, which was paid on December 6, 2000; $8,567.93 in penalty, $405.81 in interest, and $30.00 in collection costs, for a total of $9,003.74 in 200009, which was paid in two installments on July 31 (by application of a $657.80 overpayment for the second quarter of 2001 and interest thereon of $.16) and August 30, 2001 (by allocation of $8,345.78 from the first installment agreement payment of $15,000); and $14,348.89 in 200012, which was paid in three installments on January 26, 2001 (by application of $688.60 of the payment out of loan proceeds), August 30, 2001 (by allocation of $4,161.41 from the first installment payment), and September 12, 2001 (by allocation of $10,053.72 from the second installment payment), for a total of $24,653.66 in penalties caused by CFO misconduct that were paid by TechArch with funds that could have been used to reduce the amount of trust fund taxes owing, and hence the amount of TFRP ultimately assessed against Ms. Rohde. Of that amount, $22,916.82 was paid in 2001. Of that amount, $688.60 came from the January 26, 2001 payment out of loan proceeds, $657.80 came from application of the overpayment of second quarter 2001 employment taxes; and the rest from application of parts of the first two installment payments.

## M. The Burst High Tech Bubble, Recession and 9-11 Aftermath as Factors in TechArch's Problems

High tech consulting in general may have peaked in 1999, with the run up to solving the Y2K problem. In any event, the stock market certainly peaked in March, 2000. The technology bubble burst in 2000 and the United States economy slipped into recession. Although the economy long since formally came out of recession, high tech consulting never really recovered.

With the economy in recession and high tech consulting in even worse shape, along came 9-11. It resulted in an immediate loss of business for TechArch, and in a $250,000 bad debt. If just that receivable had been paid, the story might well have turned out differently.

TechArch, through Ms. Rohde's leadership, struggled mightily to survive all of these problems

and managed to do so until ceasing operations in 2003.

The shrinkage in TechArch's business is shown by the enclosed graph showing the levels of its gross payrolls from 2001 and 2002, **Exhibit D-7**, TechArch Payroll Levels. Note that the gross payroll level at the end of 2002 is barely 10% what it was at its peak in early 2001. The struggles have been especially great in the high tech world, which is where TechArch operated. That Ms. Rohde chose to continue to try to maintain TechArch as a viable business speaks very highly of her commitment to having her business meet its federal employment tax obligations.

Ms. Rohde's tenacity and perseverance have included injecting $403,718 in TechArch after it incurred federal employment tax liabilities that would have fully warranted giving it up, and making payments totaling $211,500 on past due employment taxes from the first quarter of 2001, and the second and third quarters of 2002. TechArch has also complied, not always perfectly in the first instance, but ultimately paying all that it owed, for two recent one year periods - the second quarter of 2001 through the first quarter of 2002, and the fourth quarter of 2002 through the third quarter of 2003.

### N. Requested Payment Allocation with Respect to First Quarter 2001 Trust Fund Taxes

Attached **Exhibit D-8**, Payment Allocations for First Quarter 2001 for TFRP Purposes Only, shows how the entire first quarter 2001 TFRP is eliminated under three different sets of resolutions to the issues presented. Other outcomes are also possible depending on the resolution of each issue. The important point is that, even under the conservative, pro-IRS allocations, the TFRP for 200103 is completely eliminated. The Service, of course, has come to a different conclusion caused mainly by the clearly erroneous conclusion that Ms. Rohde was a responsible person throughout the time that employment tax delinquencies arose. Once the Service or the courts rectify that mistake, the conclusion of no first quarter 2001 TFRP inexorably follows and the detailed resolution of issues affects the TFRP determination for the two subsequent quarters

Please note that these requested allocations are for TFRP purposes only. Ms. Rohde claims no right to determine how the Service should allocate these payments for purposes of determining what TechArch owes. She claims, for the reasons set forth in Section III, Grounds for Inapplicability of Trust Fund Recovery Penalty for First Quarter of 2001, that these payment allocations must be made with respect only to determining her exposure to TFRP liability. If these grounds are upheld by the Service or the courts, Ms. Rohde has no liability for first quarter 2001 TFRP.

## III.
## Grounds for Inapplicability of Trust Fund Recovery Penalty for First Quarter 2001

### A. Requirements for TFRP Application

Internal Revenue Code §6672(a) provides in relevant part as follows:

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected or not accounted for and paid over...."

A person described in the foregoing statute generally is called a "responsible person." Clearly, a person cannot be liable for the TFRP unless he or she is a responsible person.

Assuming responsible person status, liability follows only if the failure to collect, truthfully account for and/or pay over the tax is "willful."

Thus, for Ms. Rohde to be held liable for the TFRP with respect to any unpaid trust fund taxes of TechArch employees, she must have been a responsible person and must have willfully failed to collect, truthfully account for and/or pay over the tax.

The timing of a person's accession to responsible person status can be important and, due to the timing of TechArch's failures to pay its federal employment taxes and the question of allocation of subsequent payments on those taxes, is very important in this case.

**B. Susan Rohde Became a Responsible Person on February 10, 2001**

Ms. Rohde's status as sole (or major) shareholder, director, CEO and authorized check signer is consistent with responsible person status, and obviously would often be an indicator thereof. Moreover, from February 10, 2001, on, Ms. Rohde clearly has been a responsible person. None of that means that she was a responsible person prior to February 10, 2001, and examination of the facts and the law conclusively establishes that she was not.

Shareholder status obviously does not make the shareholder a responsible person, for corporations in general, and TechArch and other Minnesota corporations in particular, are managed by a board of directors and officers. Thus, Ms. Rohde's shareholder status does not make her a responsible person.

Director status also does not a responsible person make. A person serving as director has no special power individually, but rather only as part of the board of directors. While director status certainly is consistent with responsible person status, the latter plainly does not flow from the former. Accordingly, Ms. Rohde's status as a TechArch director does not make her a responsible person.

Check signing authority, even if checks are actually signed, does not make the signing officer a

responsible person. See Cabot v. U.S., 77 AFTR 2d 96-1339 (CT Fed. CL 1996), later proceeding 80 AFTR 2d 97-6154 (CT Fed. CL 1997); In Re DeMarco, 83 AFTR 2d 99-527 (Bktcy CT FL 1999). Federal Tax Coordinator 2nd Section V-1706.1 cites 14 different situations in which corporate officers with check signing authority were held not to be responsible persons. There is no point in citing the cases or describing the particular circumstances, as each situation obviously has to be evaluated on its own facts. The point is that Ms. Rohde's status as a check signer, and her rarely signing checks as a ministerial act without any decision making being done with respect to whether that particular payee or someone else should be being paid, does not make her a responsible person.

Not even being the taxpayer's CEO is enough to automatically confer responsible person status on a person. See, e.g., Walls v. U.S., 71A AFTR 2nd 93-4745 (DC CA 1990). While it almost certainly is the norm for the CEO of a small business to be a responsible person under Section 6672, CEO status does not alone confer that distinction. Among the situations in which corporate officers have been held to not be responsible persons are an officer whose primary area of corporate responsibility was sales, U.S. v. Berman, 16 AFTR 2nd 5920 (DC FL 1965); and an officer who wasn't in charge of disbursing funds, Cushman v. Wood, 50 AFTR 2166, 149 F. Supp. 644 (DC AZ 1956).

In sum, notwithstanding Ms. Rohde's status as sole or major shareholder, director, CEO, and person with checking signing authority, she is not thereby rendered a responsible person under Section 6672. There is no choice but to resort to the facts of how TechArch operated to make that determination. Very importantly, the facts demonstrate not only that Ms. Rohde was not in fact participating in the decision making regarding payments and did not make, and was not in fact aware of any problem with failure to make, employment tax deposits, but that her lack of participation and lack of knowledge were reasonable. Thus, Ms. Rohde cannot be saddled with responsible person status on the ground that she was indifferent, negligent or reckless with respect to the exercise of her authority as CEO and authorized check signer.

Ms. Rohde was the driving force behind TechArch. She provided overall leadership. She also was a significant provider of the services that TechArch was selling. Her time was well and responsibly taken up by leading and presiding over TechArch's rapid growth. TechArch's CFO, Mike Deegan, was required by Minnesota Statutes to function as a responsible person under Section 6672 and that is exactly what he did. The facts presented above demonstrate that Ms. Rohde did not become a responsible person until February 10, 2001, if one assumes that her actions were reasonable. That they were reasonable is demonstrated by those same facts.

Ms. Rohde's lack of responsible person status is analogous to that of Ike Slodov in Slodov v. U.S., 436 U.S. 238 (1978). In Slodov, the taxpayer bought stock in the employer corporation on the representation by the sellers that the balances in the corporate checking accounts were sufficient to pay taxes that were due immediately upon taxpayer's acquisition of the employer corporation's stock. The Supreme Court noted that "it is the situation that arises when there has been a change of control of the employer enterprise...that creates the question for our decision."

Here, while Ms. Rohde obviously was the sole shareholder and CEO prior to learning about TechArch's financial problems, there was in a very real sense a change in control in which she became a responsible person and focused on the financial aspects of TechArch's situation on a going forward basis.

The analogy to Slodov is strengthened by the fact that there were misrepresentations in each situation. There, the sellers of corporate stock misrepresented its financial condition to the buyer. Here, TechArch's CFO misrepresented its financial condition to Ms. Rohde, TechArch's EMC and Board, the Rohde Sisters Farm, LLP, and Associated Bank, with the result that the Bank made a major loan to TechArch and Ms. Rohde and Rohde Sisters Farm guaranteed or provided other security for that loan. Slodov, a United States Supreme Court decision, clearly supports the conclusion that Ms. Rohde was not a responsible person until February 10, 2001.

## C. The Appeals Officer Erred in Concluding that Ms. Rohde Was a Responsible Person Prior to February 10, 2001

The Appeals Officer held that Ms. Rohde was a responsible person at all relevant times. That would include at least from November or December of 2000 on. Obviously, if Ms. Rohde was a responsible person at the times of the December 2000 and early 2001 failures to pay over employment taxes, she is potentially subject to the TFRP for those failures unless she did not act willfully in causing the failures, and allocation of later payments to the employment taxes for those periods would reduce that potential exposure. Thus, the conflict between the Service and Ms. Rohde appears to be primarily over the question of when she became a responsible person.

The Appeals Officer stated, at the bottom of page 2 of his report that: "Your liability is based strictly on whether you fit the statutory definition of a responsible person." The definition referenced presumably is that of a person being "required to collect, truthfully account for and pay over any tax." That question simply must be determined on a case by case basis, based on the particular facts and circumstances.

The facts and circumstances of this particular situation laid out in detail above demonstrate that Ms. Rohde did not become a responsible person until February 10, 2001, or at the very earliest January 29, 2001. Four points in particular bear repeating here.

First, there are two relevant statutory definitions here - the definitions of the duties of CEO and CFO in the Minnesota Business Corporations Act, which applies to TechArch. The CFO's duties describe a responsible person under Section 6672. The CEO's duties do not. Certainly there can be more than one responsible person. Certainly the CEO could be a responsible person, and often would be. But that is not what happened with TechArch.

Second, Ms. Rohde did not delegate the CFO's responsible person duties to Mr. Deegan. They were imposed on Mr. Deegan by statute when he became CFO and by TechArch's Board, which was statutorily responsible for corporate governance. There was no attempt here by Ms. Rohde

to wiggle out of responsible person status by delegating its problems and responsibilities away.

Third, the allocation of responsibilities among the CEO and the CFO in TechArch was plainly reasonable under the circumstances. Ms. Rohde had plenty to focus upon as CEO, without getting into the degree of participation in the finances that is essential to responsible person status under Section 6672, and Minnesota's statute plainly makes the CFO responsible. She had no reason to meddle in those details, and therefore her failure to do so cannot be used to impose responsible person status on the theory that she should have been involved.

Fourth, the Appeals Officer is also incorrect as a matter of law in asserting that any particular status or combination of statuses automatically confers responsible person status on an individual. There is no arguing with the Supreme Court's holding in Slodov that a person need only be responsible for one of collecting, accounting for, and paying over withheld taxes. But in this situation, Ms. Rohde was not responsible for any of those functions. Ms. Rohde did have overall executive authority within TechArch, so she surely could have chosen to become involved, but she reasonably did not become involved and so she was not a responsible person until she did become involved. See Section III.B. above, in which we cite three cases holding that a CEO was not, under the particular circumstances of each case, a responsible person. There is no way around the need to examine how TechArch actually operated, and that examination, revealed above, demonstrates that Ms. Rohde was not a responsible person at any relevant time until some time between January 29 and February 10, 2001, and, we contend, rationally based on those facts and circumstances, that the date on which Ms. Rohde's accession to responsible person status occurred was February 10, 2001.

The Appeals Officer's approach to the question of Ms. Rohde's responsible person status was far too mechanistic. He looked at a few statuses and the undeniable reality of overall executive authority and concluded that responsible person status was automatic, apparently comforted by the knowledge that a business can have multiple responsible persons.

The Appeals Officer also cites Ms. Rohde's statements to the Collection Officer that "the buck stops with her." That is a typical statement of any CEO, and does not mean that she had a specific duty to run the finances of the company. The alleged statements that Ms. Rohde authorized payroll checks and the payment of federal tax deposits were either inaccurately recorded or taken out of context. Ms. Rohde was not in fact in charge of TechArch's finances, to her everlasting regret. She did not know what was happening, and that lack of knowledge was reasonable.

The Appeals Officer also cites Ms. Rohde's attorney's statement in a letter of April 3, 2003, at an early stage of these proceedings that Ms. Rohde did not dispute reponsible person status. That too was a mistake of law, for it was made before research was conducted on the issue, at a time when the focus was on establishing a reasonable payment plan, and not on researching the details of determining responsible person status.

Ms. Rohde respectfully submits that if a person who could be a responsible person does not participate in the financial side of the business and actually does not know that problems with employment taxes are arising, and the lack of participation and knowledge is reasonable, that person is not a responsible person, even if she is CEO, a director, a check signer and a shareholder.

**D. Susan Rohde Can Have No TFRP Liability for Trust Fund Taxes Arising Before February 10, 2001, Because She Was Not then a Responsible Person and TechArch Had No Unencumbered Funds When She Became a Responsible Person**

Potential TFRP liability accrues at the time the net wages are paid. Slodov v. U.S., 436 U.S. 238 (1978); Elmore v. U.S., 843 F2d 1128 (8th Cir. 1988). Thus, Ms. Rohde was not initially subject to TFRP exposure for TechArch's failure to deposit the December, 2000, January 2001 and February 9, 2001 trust fund taxes when initially due.

The Slodov/Elmore rule is a practical necessity to enable a person coming into responsible person status after the failure to pay employment taxes has occurred not to automatically become personally liable. Without this, there would be a chilling effect on the willingness of individuals to attempt business turnarounds.

Notwithstanding the foregoing, if the business has unencumbered funds at the time a person becomes a responsible person and that person spends those existing unencumbered funds on purposes other than payment of the trust fund taxes, the person would be responsible under Slodov and Elmore for the use of the unencumbered funds for some purpose other than paying the trust fund taxes.

As is demonstrated at Section II, H. above, TechArch had no unencumbered funds when Ms. Rohde became a responsible person on February 10, 2001.

Rational persons might differ as to exactly when Ms. Rohde became a responsible person, and also as to whether TechArch had any unencumbered funds as of that date. Notwithstanding the conclusion of the Appeals Officer that Ms. Rohde had been a responsible person all along, we respectfully submit that Ms. Rohde clearly was not a responsible person during any relevant time prior to some date in early 2001, which date we respectfully submit could not possibly be any earlier than January 29, 2001, when she first became aware of TechArch's serious financial problems.

Acceeding to responsible person status as of January 29, 2001 would make Ms. Rohde potentially liable for the TFRP in the first instance with respect to the February 9, 2001 payroll. And differences as to whether TechArch had any unencumbered funds as of whatever date between January 29 and February 10 is deemed appropriate could add a bit more to her TFRP exposure. It would nevertheless seem to be very clear that Ms. Rohde should have no exposure in the first instance to TFRP liability for any payroll prior to February 9, 2001 (since the last

preceding payroll was January 26, 2001, which was three days before Ms. Rohde became aware of TechArch's serious problems). Because TechArch had serious employment tax nonpayment problems in the fourth quarter of 2000 and the first two payrolls in January 2001, which clearly precede Ms. Rohde's accession to responsible person status and also any amount that could be considered to be unencumbered funds on the date of such accession, the allocation of subsequent payments by TechArch under Ms. Rohde's direction becomes crucial to determining the extent, if any, of her exposure to the TFRP.

To be clear about this, the use of unencumbered funds that arose after Ms. Rohde became a responsible person to pay other creditors instead of paying the pre-responsible person status trust taxes does not constitute willful failure to pay the trust taxes over to the Service under Section 6672. Slodov, supra; Elmore, supra. This rules out assessing Ms. Rohde for TechArch's failure to pay the fourth quarter 2000, January 2001, and February 9, 2001 trust fund taxes out of unencumbered funds that came into TechArch after February 10, 2001. The payrolls prior to February 10, 2001, were not Ms. Rohde's problem for TFRP purposes. Because TechArch had no unencumbered funds on the precise date upon which Ms. Rohde became a responsible person, Ms. Rohde has no TFRP exposure for the pre-February 10, 2001 payroll trust fund taxes. This makes the allocation of payments actually made to the Service crucial in determining whether Ms. Rohde has any TFRP exposure for the first quarter of 2001. It supports each of the allocations set forth in Paragraphs E-G below.

## E. The Full Net Proceeds of the SBA Loan Must Be Allocated, for TFRP Purposes Only, to TechArch's First Quarter 2001 Employment Taxes

The facts surrounding the attaining of the SBA loan are set forth at Section II.D. above. Ms. Rohde saw that TechArch would need a bridge loan to provide roughly an additional $250,000 to tide TechArch over until the commencement of a pair of expected large contracts late in the first quarter or early in the second quarter of 2001. (In fact, one of those contracts did come to fruition, which is what enabled TechArch to get back on its feet beginning in the second quarter of 2001). The whole purpose of the SBA loan from Ms. Rohde's and the TechArch Board's perspective was to fund first quarter 2001 expenditures, and that is the reason that the loan was taken done. As noted above, TechArch's CFO specifically told Ms. Rohde and the Board that a portion of the funds would be used to cover the remaining unpaid January 12, 2001 payroll period employment taxes.

As shown on **Exhibit D-5**, the $250,000 SBA loan proceeds were deposited on January 24, 2001, one day after debts to TechArch's account in favor of Associated Bank of $45,320.02 to pay off an equipment loan, and of $6,720.02 to pay the Bank's fee for the loan, each of which was a condition to getting the loan and therefore must be subtracted from the proceeds. Therefore, the SBA loan obtained through the CFO's fraudulent conduct and personally guaranteed by Ms. Rohde, should have made $197,959.58 available to TechArch to meet its current and future employment tax obligations, and that amount must therefore be subtracted in determining Ms. Rohde's TFRP exposure.

The wrongful, fraudulent use of the January 2001, loan proceeds by the CFO to pay the past due December 2000, employment taxes, instead of paying the currently accruing January and February and perhaps March taxes must, for purposes of TFRP assessment only, be credited against the first quarter 2001, federal employment taxes, and subsequent payments by TechArch (e.g., the $15,000 per month installment payment agreement payments) must, for purposes of TFRP assessment only, be credited against trust fund taxes for periods after Ms. Rohde became a responsible person; i.e., beginning with the February 23, 2001, payroll. This proposition flows clearly from Kenagy v. U.S., 942 F.2d 459 (8th Cir. 1991). The analogy to Kenagy is to the following point made by the Court therein, which is at page 7 of 8 in the RIA printout from 68 AFTR 2d 91-5342, as follows:

> "The final issue arises with regard to the August and September tax payments. The government is certainly entitled to apply payments to past due taxes first for purposes of its own internal accounting. Based on our decision in Elmore and the Supreme Court's decision in Slodov, however, for purposes of the responsible person assessment, application of current tax payments to past due taxes is limited by the unencumbered funds rule. To the extent current period tax payments are made after becoming a responsible person that exceed unencumbered funds at the date of becoming a responsible person, the government should generally credit the responsible person for purposes of §6672 with the excess payments before computing the assessment, regardless of how the payments are internally applied. To do otherwise would effectively circumvent the unencumbered funds rule. Such a position is not substantially justified as a matter of law.
>
> Because this issue was not considered by the district court, we remand the issue of costs and fees after August 5, 1985, for the limited purpose of considering whether appellant was assessed a penalty without being granted proper credit for payments made after becoming a responsible person on August 5. If so, the district court may award reasonably applicable costs and fees."

In Ms. Rohde's situation, the CFO's payment of the December taxes instead of maintaining the funds for payment of current and future taxes, as clearly had been contemplated and relied upon by Ms. Rohde and other members of her family in guaranteeing the loan in question, was wrongful, and even fraudulent, because the CFO used the proceeds to pay the December taxes, for which he presumably knew he had TFRP exposure and the problem with which he had not disclosed to Ms. Rohde or the Bank. While that is not exactly the same as the Service itself choosing to allocate payments to its own maximum benefit, it is close enough that Slodov, Elmore and Kenagy mandate that the Eighth Circuit, under the facts here, where the CFO's deceit caused loans, guarantees and other liabilities to be incurred that would not otherwise have happened, conclude that, solely for the purposes of the TFRP, Ms. Rohde must be credited with those payments that were made to the Service, but not to pay the currently accruing employment

taxes for which they should have been available.

This allocation is reflected in **Exhibit D-8**.

### F. The Federal Tax Deposit Penalties Paid Must Be Allocated, for TFRP Purposes Only, to TechArch's Employment or Trust Fund Taxes for the Period in which Paid

As indicated in Section I.L. above, TechArch paid federal tax deposit penalties totaling $22,916.82 in 2001. While the payment of these penalties certainly can be allocated however the Service desires for purposes of its internal accounting and TechArch's liability, for purposes of the TFRP, Kenagy, supra, clearly mandates that the payments made after Ms. Rohde became a responsible person on February 10, 2001, be allocated against trust fund tax liabilities accruing after Ms. Rohde became a responsible person. The one payment made before that was part of the loan proceeds and has been allocated against the first quarter employment taxes. These allocations are reflected in **Exhibit D-8**.

### G. The Installment Agreement Payments Must Be Allocated, for TFRP Purposes Only, to TechArch's Trust Fund Taxes for the Period During Which Ms. Rohde Was a Responsible Person, Except That Payments During the Second and Third Quarters of 2002 Must Be Allocated as if They Were Current Employment Tax Deposits

As indicated in Section II.H. above, on September 3, 2001, Ms. Rohde signed on behalf of TechArch an installment payment agreement with the Service negotiated on behalf of the Service by a collection officer which called for monthly payments of $15,000 against TechArch's past due federal unemployment taxes. TechArch went on to make 12 consecutive $15,000 payments for a total of $180,000, and an additional $31,500 of payments in smaller amounts at irregular intervals thereafter, for total payments on this installment payment agreement of $211,500.

The Service has concluded that Ms. Rohde still has TFRP exposure because it chose to apply these payments first against the oldest TechArch employment tax liabilities, which dated back into 2000 and included the federal employment taxes for the first three 2001 payrolls on January 12, January 26 and February 9. The allocations by the Service of the installment agreement payments appear to have been as shown on **Exhibit D-9**, IRS Allocations of Installment Agreement Payments. This allocation by the Service is blatantly inconsistent with Kenagy, supra, and is inconsistent with the unencumbered funds rule established in Slodov and followed in Elmore.

The same rule mandates that other payments be allocated in the same way. **Exhibit D-8** reflects such allocations for TechArch's overpayments of its 2000 federal income tax and second quarter 2001 and first quarter 2002 employment taxes.

Because each of the three payment allocation methodologies deployed in **Exhibit D-8** causes the entire potential first quarter 2001 TFRP to be eliminated by payments made prior to the second

quarter of 2002, the proper treatment of payments after the first quarter of 2002 need not be addressed here, but it is in the refund claims for the second and third quarters of 2002, as to which it is an important issue.

## H. Proper Allocation of the SBA Loan Proceeds, the Federal Tax Deposit Penalties and the Installment Agreement and Other Payments, in Light of the Timing of Ms. Rohde's Accession to Responsible Person Status and TechArch's Lack of Unencumbered Funds at that Point, Completely Eliminates Ms. Rohde's Potential TFRP Liability for First Quarter 2001

The net SBA loan proceeds totaled $197,959.58. They must be credited in their entirety, for TFRP purposes only, to TechArch's first quarter 2001 federal employment taxes because that is the purpose for which the loan was taken down and the use expected of the proceeds by Ms. Rohde, who personally guaranteed the loan and also committed family partnership assets as security. The only reason that the proceeds were not so applied is the deceitful conduct by the CFO.

The federal tax deposit penalties of $22,918.82 actually paid in 2001 must be allocated for TFRP purposes to TechArch's trust fund taxes. The installment agreement payments must be allocated, for TFRP purposes, to TechArch's trust fund taxes for periods during which Ms. Rohde was a responsible person. Overpayments of taxes made during Ms. Rohde's period of responsible person status must also be credited against the trust fund taxes.

Combining $197,959.58 for the SBA loan, the $657.80 overpayment of second quarter 2001 taxes, the $2,331.08 overpayment of 2000 corporate income tax, the $2,626.43 overpayment of first quarter 2002 taxes and $211,500.00 for installment agreement payments yields a total of $415,074.89 in payments that must be allocated to first quarter 2001 TechArch federal employment taxes before Ms. Rohde can be considered liable for anything on the TFRP penalty for that quarter. (No separate reference is made to the penalties, as the payment thereof came from one or more of the foregoing sources).

The total allocations of $415,074.89 exceeds TechArch's first quarter 2001 federal employment tax liability of $276,109.10 by $138,965.79. Even if the allocation of loan proceeds is restricted to the $115,914.72 actually paid to the Service, the allocations would exceed TechArch's first quarter 2001 employment tax liability by $56,000 plus. These figures disregard that most of the payments must be allocated against the trust fund portion of the liability.

There accordingly is no basis whatsoever upon which to hold Ms. Rohde liable for the TFRP for the first quarter of 2001.

The crediting of subsequent TechArch payments against trust fund tax liabilities accruing after Ms. Rohde became a responsible person follows as a matter of course from Slodov and Kenagy. **Exhibit D-8** shows what happens when the Slodov/Elmore/Kenagy mandate is followed. There

is simply no way to avoid the conclusion that Ms. Rohde is not liable for the TFRP for the first quarter of 2001. This is the case even if Ms. Rohde is treated as potentially responsible for the trust taxes from the two January and first February payrolls for which, as indicated in Section III.A. and C. above, she should not be responsible at all.

## I. <u>The TFRP Does Not Apply Because Ms. Rohde Did Not Willfully Fail to Collect, Truthfully Account for or Pay Over the Trust Fund Taxes</u>

To this point, Ms. Rohde's legal position has been founded upon the highly technical rules that apply in determining with precision a responsible person's exposure to the TFRP. Although we do not see any way in which the Service can properly determine that Ms. Rohde has any TFRP exposure whatsoever for 2001-1 under these technical rules, we nevertheless want to point out that TFRP liability turns not only on such arithmetical precision, but also on the question of whether the responsible person "willfully" failed to collect, truthfully account for and pay over the tax. Also, the proper resolution of the technical payment application issues affects whether Ms. Rohde is liable for TFRP in the second and third quarters of 2002, when she definitely was a responsible person.

The willfulness issue does not arise unless the person is a responsible person. If, as we contend, Ms. Rohde became a responsible person on February 10, 2001, that confines the willfulness question to payrolls paid after February 9, 2001.

But concededly, there is uncertainty as to exactly when Ms. Rohde became a responsible person. If a court were to hold that it was prior to February 10, then the willfulness question would enter the picture at an earlier date.

### 1. <u>Why Ms. Rohde Did Not Willfully Violate Her Section 6672 Duties</u>

Ms. Rohde did not know what past employment tax problems there were when she became involved in the details of TechArch's finances. She learned on January 29, 2001, that TechArch was essentially out of money, which was a massive shock because it had just taken down a $250,000 loan that she had assumed would bridge its finances into the performance of a major new contract. Her efforts at that time were forward looking, not backward looking. She was focused on trying to avoid closing TechArch's doors immediately. For example, she did not learn until March 2003 that the CFO had used the loan proceeds largely to pay December 2000 employment tax liabilities that she thought had been paid back in December when they were due.

Ms. Rohde did in fact lead TechArch in a fashion that enabled it to get back on its feet and keep its doors open. TechArch complied with its federal employment tax obligations in a timely manner in the second, third and fourth quarters of 2001, and, with the exception of late deposits on the March payrolls, in the first quarter of 2002. In addition, Ms. Rohde responsibly addressed the problem of failure to make the first quarter 2001 employment tax payments by entering into an installment payment agreement with the Service and making 12 consecutive timely payments

of $15,000 per month, for a total of $180,000. Add the overpayments amounting to $5,615.31 that occurred on Ms. Rohde's watch, and TechArch's payments before it defaulted on the installment payment agreement total $185,615.31. TechArch's post- February 9, 2001, first quarter 2001 employment tax liability was approximately $131,219.66. Add in the first nine days of February and the total for the remainder of the quarter was $184,942.84. Where is the willful failure here?

In addition to this, Ms. Rohde and her family made multiple infusions of capital into TechArch. TechArch is a corporation with limited liability for its shareholders. Shareholders are not required, except in the case of officer liability for trust fund taxes or personal guaranties of other debts, to invest in corporations to enable them to meet their obligations. Notwithstanding this, Ms. Rohde has personally and by persuading her family members committed some $403,718 to TechArch during the tumultuous aftermath of Deegan's wrongdoing and TechArch's continuing economic slide. This unrequired commitment of hundreds of thousands of dollars of personal resources to TechArch to enable it to continue to operate cannot be overlooked in the facts and circumstances surrounding the questions at issue here.

The course of conduct with respect to TechArch's first quarter 2001 employment tax problems described above simply does not equate with willful failure to collect, truthfully account for or pay over the trust fund taxes owed by TechArch with respect to its first quarter 2001 operations. Therefore, Ms. Rohde is not liable for the TFRP for the first quarter of 2001, without regard to the technicalities of payment allocation.

2. The Appeals Officer Erred in Concluding that Ms. Rohde Had Willfully Violated Her Section 6672 Duties with Respect to All Relevant Unpaid Trust Fund Taxes

The Appeals Officer stated, quoting a case, that "a responsible person acts willfully within the meaning of Section 6672 whenever he 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes.'"

The Appeals Officer went on to state that : "All that need be shown to establish willfulness is that the person in question either knew or had reason to know the withheld taxes were not or may not be paid and allowed other obligations to be paid in preference to the taxes."

Under the willfulness standard cited by the Appeals Officer, Ms. Rohde cannot possibly have acted willfully with respect to TechArch's failures through the end of January, 2001, because she had no knowledge of them, and her lack of knowledge was reasonable. The one piece of awareness she had was that a portion of the taxes for the January 12 payroll was to be covered by the loan. She was told that it would be, she thought it had been, and her reliance on the CFO was reasonable. Accordingly, Ms. Rohde cannot possibly have willfully failed to pay over any employment taxes prior to January 29, 2001.

If our contention that Ms. Rohde did not become a responsible person until February 10, 2001, is sustained, then the TFRP does not apply with respect to the trust fund taxes that arose during the first nine days of February either. If that contention is not sustained, then the willfulness issue arises for those trust fund taxes, and it certainly arises for the taxes from February 10 through March 31, which were not timely paid. Our contention with respect to willfulness on the remainder of the first quarter 2001 trust fund taxes is that under the totality of circumstances here present, of which the most important are the CFO's deception; Ms. Rohde's commitment of personal and family assets to secure the bank loan of January 24, 2001; her infusions of capital into TechArch; her initial success at getting TechArch back on track; and her taking the initiative in causing TechArch to enter into an installment payment agreement by the end of August, 2001, Ms. Rohde did not willfully fail to collect, truthfully account for or pay over trust fund taxes.

Even if Ms. Rohde is held to have willfully failed to pay over the early February trust fund taxes, the total employment taxes for February 1-9 were only $53,423.18. Exhibit D-8 makes perfectly clear that those taxes were fully paid for TFRP purposes, with many dollars to spare, so no TFRP liability for Ms. Rohde results from them. The same is true for the remainder of the first quarter 2001 employment taxes. The technical question of whether Ms. Rohde willfully failed to pay over trust fund taxes after she became a responsible person has no bearing on her exposure to TFRP liability for the first quarter of 2001 for the simple reason that her willfull efforts to have TechArch meet its employment tax obligations in the form of entering into and making payments on an installment payment agreement bore sufficient fruit that she plainly has no TFRP liability for that quarter. The question really is how much of the installment payments should be treated for TFRP purposes as being needed to extinguish her TFRP exposure for 200103, and its implications are not felt until the later periods of 200206 and 200209.

3. <u>The Supreme Court's Views Expressed in Slodov Should Be Taken into Account in Deciding the Willfulness Issue</u>

A lack of willfulness on Ms. Rohde's part in connection with her Section 6672 duties with respect to TechArch's first quarter 2001 trust fund taxes is consistent with the Eighth Circuit's position that "reasonable cause is no part of the definition of willfulness." <u>Olsen v. U.S.</u>, 952 F2d 236 (8th Cir. 1991). We respectfully submit that reasonable cause need not be part of the definition of willfulness for the conclusion to be reached that there was no willful failure to perform a duty by Ms. Rohde with respect to TechArch's first quarter 2001 federal employment taxes.

As evidence of the reasonableness of our position on willfulness, we close with the views of the United States Supreme Court in <u>Slodov</u>. The Supreme Court noted in <u>Slodov</u> that the government has an interest in encouraging a corporation with past due federal employment taxes to continue operating so long as current taxes are being paid. That is exactly what Ms. Rohde tried to have TechArch do, and she succeeded from April 2001 through March 2002, with the exception of a single late deposit. The Court, in dealing with Section 6672, observed:

> "[T]he Government understandably, as it did here, does not discourage the corporation from continuing to operate so long as current taxes are paid. As soon as the corporation embarks upon that course, however, the "responsible person" is potentially liable to heavy civil and criminal penalties not for doing anything which compromised the Government's collection efforts, but for doing what the Government regards as maximizing its chances for recovery. As construed by the Government, §6672 would merely discourage changes of ownership and management of financially troubled corporations and the infusion of equity and debt funding which might accompany it without encouraging employer compliance with tax obligations or facilitating collection of back taxes. Thus, recovery of employer taxes would likely be limited to the situation in which the prospective purchaser or management official is ignorant of §6672.
>
> As noted in the previous section, §6672 as construed by the Government would, in effect, make the responsible person assuming control of a business a guarantor for payment of the delinquent taxes simply by undertaking to continue operation of the business. That construction is precluded by the history and context of §6672 and cognate provisions of the Code.
>
> Section 6672 cannot be read as imposing upon the responsible person an absolute duty to "pay over" amounts which should have been collected and withheld. The fact that the provision imposes a "penalty" and is violated only by a "willful failure" is itself strong evidence that it was not intended to impose liability without personal fault. Congress, moreover, has not made corporate officers personally liable for the corporation's tax obligations generally, and §6672 therefore should be construed in a way which respects that policy choice. The Government's concession - that §6672 does not impose a duty on the responsible officer to use personal funds or even to liquidate corporate assets to satisfy the tax obligations - recognizes that the "pay over" requirement does not impose an absolute duty on the responsible person to pay back taxes.
>
> Section 6672 cannot be read as imposing upon the responsible person an absolute duty to "pay over" amounts which should have been collected and withheld. The fact that the provision imposes a "penalty" and is violated only by a "willful failure" is itself strong evidence that it was not intended to impose liability without personal fault."

42 AFTR 2d 78-5011 text at notes 15-17.

## IV.
## Conclusion

Susan Rohde became a responsible person on February 10, 2001. TechArch had no

unencumbered funds at that time.

Even if she became a responsible person slightly earlier and TechArch had the maximum arguable amount of unencumbered funds at that time, Ms. Rohde can have no liability whatsoever for first quarter 2001 TFRP because the payment application rules of Slodov, Elmore, and Kenagy and the fraudulent conduct of the CFO mandate allocations of payments and loan proceeds to first quarter 2001 employment taxes for purposes of TFRP determination only in amounts far more than sufficient to pay those taxes. Accordingly, Ms. Rohde cannot possibly have any TFRP for the first quarter of 2001.

Ms. Rohde respectfully submits that this conclusion is not a close question. Moreover, there is no need to do a detailed accounting to determine the liability issue for the first quarter of 2001 because Ms. Rohde did not willfully fail to collect and pay over trust fund taxes.

The precise outcome of each of Ms. Rohde's contentions regarding application of payments turns out to have more bearing on the TFRP issue for the second and third quarters of 2002 than it does on the first quarter of 2001.

Doc. #: 317392

**Exhibits Attached to Exhibit D**

| | |
|---|---|
| Exhibit D-1 | IRS Position on Details of Unpaid Trust Fund Taxes |
| Exhibit D-2 | Deegan Invoice Copies Showing Attendance at EMC and Board Meetings |
| Exhibit D-3 | December 12, 2000, Representations to Associated Bank in Support of TechArch's Application for SBA Loan |
| Exhibit D-4 | No Problems E-Mail |
| Exhibit D-5 | TechArch's First Quarter 2001 Check Register |
| Exhibit D-6 | Rohde Loans/Investments |
| Exhibit D-7 | TechArch Payroll Levels |
| Exhibit D-8 | Payment Allocations for First Quarter 2001 for TFRP Purposes Only |
| Exhibit D-9 | IRS Allocations of Installment Agreement Payments |

**Exhibit D-1**

IRS Position on Details of Unpaid Trust Fund Taxes

St. Paul Office of Appeals
380 Jackson St., Suite 600
St. Paul, MN 55101-2906
Tele: (651) 290-3867, ext. 316
Fax: (651) 290-3080

# facsimile transmittal

| | | | |
|---|---|---|---|
| To: | JOHN JAMES | Fax: | 612-339-8064 |
| From: | Dale R. Veer | Date: | 5/18/2005 |
| Re: | ROHDE / TECHARCH | Pages: | 4, including cover |
| CC: | | | |

Mr. James:

Per the message I left on your voice mail, attached are the following documents that should explain Appeals' reduction in the total TFRP liability from $254,000 to $210,000.

Let me know if you need anything further.

Dale Veer
St. Paul Appeals

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

St. Paul Office of Appeals
380 Jackson St., Suite 600
St. Paul, MN 55101-2906
Tele: (651) 290-3867, ext. 316
Fax: (651) 290-3080

INTERNAL REVENUE SERVICE

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | JOHN JAMES | **Fax:** | 612-339-8064 |
| **From:** | Dale R. Veer | **Date:** | 12-16-2003 |
| **Re:** | ROHDE / TECHARCH | **Pages:** | 3, including cover |
| **CC:** | | | |

Mr. James:

Per our conversation yesterday afternoon, here is the latest trust fund penalty computation adjusted to reflect:

1. The express designation of the two $4,500 payments to the 200209 period,
2. The implied designation of the Federal Tax Deposit made for the 200206 period, and
3. Application of all three $7,500 payments to the 200103 period (which ended up all being applied to trust fund taxes only for TFRP computation purposes)

I've also enclosed the relevant IRM section, which also references the latest Revenue Procedure (2002-26) for application of payments in this case.

Please forward the Jan. 12, 2001 payroll information **by December 23, 2003**, to enable me to reduce the 200103 TFRP amount in the amount of the employer's portion of FICA for that specific payroll.

As I stated, our office will be sustaining the Revenue Officer's decisions to a) deny Techarch's penalty abatement request, b) assess the TFRP against Susan Rohde for periods 200103, 200206, and 200209 in the properly adjusted amounts, and c) the proposed collection action under CDP.

Please contact me with any questions or concerns.

Dale Veer
St. Paul Appeals

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

41-1841273 ASED 4/15/2005 Trust Fund Recovery Penalty Data Thur Nov. 6, 2003
TECHARCH, INC.

| Period | Payment Data | Tax Only | FICA Employer | FICA Employee | Income Tax Withheld | **Trust Fund** | Late Payment Penalty | Late Deposit Penalty | Interest | TOTAL BALANCE DUE |
|---|---|---|---|---|---|---|---|---|---|---|
| | Amount | 276109.10 | 61480.56 | 61480.56 | 153147.98 | **214628.54** | 42606.18 | 41416.36 | 38999.03 | 399130.67 |
| **200103** | Paid | 157277.36 | 61480.56 | 61480.56 | 34316.24 | **95796.80** | 0.00 | 41416.36 | 0.00 | 198693.72 |
| | Balance | 118831.74 | 0.00 | 0.00 | 118831.74 | **118831.74** | 42606.18 | 0.00 | 38999.03 | **200436.95** |
| | Amount | 128614.61 | 30150.30 | 30150.31 | 68314.00 | **98464.31** | 14218.55 | 15962.69 | 10610.19 | 169406.04 |
| **200206** | Paid | 34576.83 | 30150.30 | 4426.53 | 0.00 | **4426.53** | 0.00 | 0.00 | 0.00 | 34576.83 |
| | Balance | 94037.78 | 0.00 | 25723.78 | 68314.00 | **94037.78** | 14218.55 | 15962.69 | 10610.19 | **134829.21** |
| | Amount | 53857.90 | 12516.45 | 12516.45 | 28825.00 | **41341.45** | 4612.57 | 7703.65 | 2773.90 | 68948.02 |
| **200209** | Paid | 16500.00 | 12516.45 | 3983.55 | 0.00 | **3983.55** | 0.00 | 0.00 | 0.00 | 16500.00 |
| | Balance | 37357.90 | 0.00 | 8532.90 | 28825.00 | **37357.90** | 4612.57 | 7703.65 | 2773.90 | **52448.02** |
| | Amount | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** | 0.00 | 905.76 | 7.32 | 24295.14 |
| **200303** | Paid | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** | 0.00 | 0.00 | 0 | 23382.06 |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** | 0.00 | 905.76 | 7.32 | **913.08** |
| | Amount | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** | 0.00 | 281.48 | 2.55 | 19592.83 |
| **200306** | Paid | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** | 0.00 | 0.00 | 0.00 | 19308.80 |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** | 0.00 | 281.48 | 2.55 | **284.03** |
| **Balance Totals** | | 250227.42 | 0.00 | 34256.68 | 215970.74 | **250227.42** | 61437.30 | 24853.58 | 52392.99 | **388911.29** |

:N 41-1841273 ASED 4/15/2005 Trust Fund Recovery Penalty Data Mon Dec. 15
TECHARCH, INC.

| eriod | Payment Data | Tax Only | FICA Employer | FICA Employee | Income Tax Withheld | **Trust Fund** |
|---|---|---|---|---|---|---|
| | Amount | 276109.10 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| 200103 | Paid | 179777.36 | 61480.56 | 61480.56 | 56816.24 | **118296.80** |
| | Balance | 96331.74 | 0.00 | 0.00 | 96331.74 | **96331.74** |
| | Amount | 139935.42 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| 200203 | Paid | 139935.42 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| | Amount | 128614.61 | 30150.30 | 30150.31 | 68314.00 | **98464.31** |
| 200206 | Paid | 22203.26 | 5208.13 | 5208.13 | 11787.00 | **16995.13** |
| | Balance | 106411.35 | 24942.17 | 24942.18 | 56527.00 | **81469.18** |
| | Amount | 53857.90 | 12516.45 | 12516.45 | 28825.00 | **41341.45** |
| 200209 | Paid | 9000.00 | 0.00 | 9000.00 | 0.00 | **9000.00** |
| | Balance | 44857.90 | 12516.45 | 3516.45 | 28825.00 | **32341.45** |
| | Amount | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** |
| 200303 | Paid | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| | Amount | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** |
| 200306 | Paid | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| **3alance Totals** | | 247600.99 | 37458.62 | 28458.63 | 181683.74 | **210142.37** |

ıe overall Tax Only Balance Total is $2,626.43 less than the previous RP computation because this amount was transferred from the 200203 ›eriod to the 200103 period. The 200203 period was not listed on the prior RP computation.)



RECEIVED TIME MAY. 18. 11:11AM

**EXHIBIT D-2**

**Deegan Invoice Copies Showing Attendance
at EMC and Board Meetings**

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (612) 920-6186
FAX: (612) 920-5428

Invoice submitted to:
TECHARCH, INC.
1944 EAST RIVER TERRACE
MINNEAPOLIS MN 55414

December 28, 1999

Invoice #216343

Professional services

| | |
|---|---|
| - For research and response to IRS notices. | |
| - Review and response to IRS notices. | |
| - EMC meeting. | |
| - Stock plan. | |
| - Office space tour. | |
| - For EMC meeting. | NO CHARGE |
| - Budgets | |
| - EMC meeting. | |
| - Budgets | |
| - Board meeting. | |
| - EMC meeting. | NO CHARGE |
| - Budgets | |
| - For meeting with Sue Rohde. | NO CHARGE |
| | Amount |
| For professional services rendered | $4,287.50 |
| Previous balance | $4,250.00 |
| 12/10/99- Payment - thank you | ($4,250.00) |
| Balance due | $4,287.50 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
1944 EAST RIVER TERRACE
MINNEAPOLIS MN 55414

January 28, 2000

Invoice #216665

Professional services

| | |
|---|---|
| - For review of business valuation information. | |
| - Budgets. | |
| - Dinner meeting. | |
| - EMC meeting. | NO CHARGE |
| - Budgets | |
| - EMC Meeting. | |
| - Stock plan. | |
| - For meeting with Sue Rohde. | |
| - Business valuation. | NO CHARGE |
| - Final budget. | |
| - Board meeting. | |
| - For meeting with Sue Rohde regarding new office space. | NO CHARGE |
| - For preparation of your 1999 W-2's. | |
| - Lunch interview with Harrison and Zan Marquez. | |
| - EMC meeting. | NO CHARGE |
| - Board meeting. | |

| | Amount |
|---|---|
| For professional services rendered | $2,440.00 |
| Previous balance | $4,287.50 |
| 1/3/00- Payment - thank you | ($4,287.50) |
| Balance due | $2,440.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00040

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
1944 EAST RIVER TERRACE
MINNEAPOLIS MN 55414

February 28, 2000

Invoice #216948

Professional services

- EMC meeting.
- Employee stock plan meeting.
- For lunch meeting regarding Ian Alliot. NO CHARGE
- For preparation of your 4th quarter payroll and W-2's.
- For preparation of your 1999 year-end accounting.
- For meeting with Sue and Kenn regarding Ian Alliott, Inc. NO CHARGE
- Stock plan.
- Stock plan meeting.
- For preparation of your 1999 Form 1099's.
- EMC meeting.
- Comp plan meeting.
- For preparation of your 1999 year-end accounting.
- Board meeting.
- For meeting with Sue Rohde.
- For preparation of your 1999 year-end accounting.
- For meeting with Sue and Matt Geiser.

| | Amount |
|---|---|
| For professional services rendered | $2,500.00 |
| Previous balance | $2,440.00 |
| 2/8/00- Payment - thank you | ($2,440.00) |
| Balance due | $2,500.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00043

**WEBER & DEEGAN, LTD.**
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
1944 EAST RIVER TERRACE
MINNEAPOLIS MN 55414

March 17, 2000

Invoice #217397

Professional services

- For preparation of your 1999 federal and state corporate income tax returns.
- For preparation of business valuation.
- Business valuation.
- For preparation of your January 31, 2000 financial statements.
- For meeting with Dennis Deutsch.
- For preparation of budget and financial statement information.
- Board meeting.
- For meeting with Becky and Paul Overson. NO CHARGE
- Comp plan meeting.
- Financial statements.
- EMC meeting.
- Comp plan meeting.
- For meeting with the bank.
- For meeting with Farm Team and Investors. NO CHARGE
- "A Corp" projections.
- Comp plan projections.

| | Amount |
|---|---|
| For professional services rendered | $3,405.00 |
| Previous balance | $2,500.00 |
| 3/9/00- Payment - thank you | ($2,500.00) |
| Balance due | $3,405.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00046

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
1944 EAST RIVER TERRACE
MINNEAPOLIS MN 55414

May 3, 2000

Invoice #218373

Professional services

| | |
|---|---|
| - EMC meeting. | |
| - For meeting with Sue Hinrichs. | NO CHARGE |
| - EMC meeting. | |
| - For meeting with Sue & Brian regarding Ian Alliot. | |
| - Projections. | |
| - EMC Meeting | |
| - For meeting with Sue and Brian regarding Ian Alliot. | |
| - Budgets and projections | |
| - Ian Alliott projections | |
| - For meeting with Sue and Alliance Bank. | NO CHARGE |
| - Ian Alliott acquisition. | |
| - EMC meeting | |
| - Ian Alliott meeting | |
| - accounting | |
| - Hickstein redemption | |
| - Ian Alliot projections | |
| - Projections for the bank. | |
| - Board meeting | NO CHARGE |
| - Monthly accounting. | |
| | Amount |
| For professional services rendered | $3,080.00 |
| Balance due | $3,080.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
1944 EAST RIVER TERRACE
MINNEAPOLIS MN 55414

May 30, 2000

Invoice #218861

Professional services

- EMC meeting
- Accounting
- For meeting with attorney regarding acquisitions.
- For meeting with Sue Rohde.
- EMC Meeting
- Accounting
- For meeting regarding incentive pay.
- For meeting with Harrison & Zan. — NO CHARGE
- For meeting with Sue Rohde. — NO CHARGE
- EMC meeting.
- Accounting & projections.
- For meeting with Kenn regarding sales compensation.
- For meeting with Rahn Group.
- For meeting with Eric Britt (Alliance Bank).
- For meeting with attorney.
- For meeting regarding monthly benefits.
- For meeting regarding financial planning.
- EMC meeting.
- For preparation of accounting and projections.

| | Amount |
|---|---|
| For professional services rendered | $3,950.00 |
| Previous balance | $3,080.00 |
| Balance due | $7,030.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00052



6800 FRANCE AVENUE SOUTH • SUITE 750 • EDINA, MN 55435

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL, MN 55101

June 29, 2000

Invoice #219141

Professional services

- -Accounting.
- -EMC meeting.
- -For meeting with attorney regarding stock sale.
- -Accounting.
- -For meeting with Jill Taylor.
- -For review of letter regarding Hickstein settlement.
- -For preparation of Ian Alliott commission information.
- -Ian Alliott transition meeting.
- -For meeting with Stan Baratz.
- -Board meeting.
- -For meeting with Jason Walker & Mitch Cox.

| | AMOUNT |
|---|---|
| For professional services rendered | $6,800.00 |
| Previous balance | $7,030.00 |
| Balance due | $13,830.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00053

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

June 29, 2000

Invoice #219141

Professional services

- Accounting.
- EMC meeting.
- For meeting with attorney regarding stock sale.
- Accounting
- For meeting with Jill Taylor.
- For review of letter regarding Hickstein settlement.
- For preparation of Ian Alliott commission information.
- Ian Alliott transition meeting.
- For meeting with Stan Baratz.
- Board meeting.
- For meeting with Jason Walker & Mitch Cox.

| | Amount |
|---|---|
| For professional services rendered | $4,400.00 |
| Previous balance | $7,030.00 |
| Balance due | $11,430.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00054

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

July 27, 2000

Invoice #219438

Professional services

- Accounting
- EMC Meeting
- Employee meeting.
- Accounting.
- Accounting.
- For meeting with Steve Hetland and Janna Severson.
- Accounting.
- EMC meeting.
- For preparation of projected financial statements and equity offering.

| | Amount |
|---|---|
| For professional services rendered | $5,925.00 |
| Previous balance | $11,430.00 |
| 7/18/00- Payment - thank you | ($3,080.00) |
| Balance due | $14,275.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00057

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

August 30, 2000

Invoice #219723

Professional services

- Accounting
- For preparation of projected financial statements and equity offering.
- For preparation of your 2nd quarter payroll tax returns.
- Accounting
- Accounting
- Accounting.
- Ian Alliott meeting.
- Board meeting.

NO CHARGE

| | Amount |
|---|---|
| For professional services rendered | $9,035.00 |
| Interest on overdue balance | $43.22 |
| Total amount of this bill | $9,078.22 |
| Previous balance | $16,811.36 |
| 8/8/00- Credit | ($136.36) |
| 8/8/00- Payment - thank you | ($6,800.00) |
| Total payments | ($6,936.36) |
| Balance due | $18,953.22 |
| | 43.22 |
| | 18 910.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00058

WEBER & DEEGAN, LTD.
CERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

October 2, 2000

Invoice #219980

Professional services

- Accounting.
- Accounting.
- Accounting
- Accounting.
- EMC Meeting.
- Accounting
- For meeting with Rick Van Dyke. NO CHARGE
- Accounting.

New

| | Amount |
|---|---|
| For professional services rendered | $11,385.00 |
| Interest on overdue balance | $92.47 |
| Total amount of this bill | $11,477.47 |
| Previous balance | $18,953.22 |
| 9/12/00- Payment - thank you | ($4,540.00) |
| Balance due | $25,890.69 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

43.22 + 92.47 - Interest ( 135.69)
10/2 - Pmt (14960.00)

10/4/00 BAL DUE 10795.00

TA 00061

..ER & DEEGAN, LTD.
..ERTIFIED PUBLIC ACCOUNTANTS

PHONE: (952) 920-6186
FAX: (952) 920-5428

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

November 29, 2000

Invoice #220553

Professional services

- Accounting.
- Board meeting.
- Duluth trip.
- Accounting NO CHARGE
- Accounting

| | Amount |
|---|---|
| For professional services rendered | $7,590.00 |
| Previous balance | $15,800.69 |
| 11/29/00- Payment - thank you | ($15,800.69) |
| Balance due | $7,590.00 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00066

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

February 27, 2001

Invoice # 221336

Professional Services

CFO and financial statements.

Review 4th quarter payroll tax reports.

Review Quickbooks payroll and W-2 set-up with Kris.

Financial statement work.

Duluth and MN Power meeting.

CFO and financial statements.

CFO and financial statements.

Financial statement work.

Duluth applications and projections.

EMC Meeting

CFO work

Travel

Duluth meeting.

| | Amount |
|---|---|
| For professional services rendered | $6,333.00 |
| Previous balance | $4,253.75 |

TA 00071

TECHARCH, INC.



| | Amount |
|---|---|
| Balance due | $10,586.75 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00072

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
235 EAST SIXTH STREET
SUITE 300
ST. PAUL MN 55101

March 19, 2001

Invoice # 221554

Professional Services

CFO work
For preparation of projections for bank meeting.
EMC meeting
For preparation of your January 31, 2001 bank rec.
EMC meeting.
CFO work
For preparation of January financial statements.
EMC meeting
Financial statements.

| | Amount |
|---|---|
| For professional services rendered | $2,747.50 |
| Previous balance | $10,586.75 |
| Balance due | $13,334.25 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00073

TECHARCH, INC. Page 2

| | Amount |
|---|---|
| Balance due | $10,586.75 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00074

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

April 02, 2001

Invoice # 221804

Professional Services

For preparation of 2000 Form 1099's.
EMC meeting
For preparation of February 2001 financial statements.

| | Amount |
|---|---|
| For professional services rendered | $422.50 |
| Previous balance | $13,334.25 |
| Balance due | $13,756.75 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00075

April 23, 2001

Susan Rohde
Techarch, Inc.
430 First Avenue North, Suite 416
Minneapolis, MN 55401-1743

Dear Susan,

As we discussed in the EMC meeting today, I think it is in the best interest of Techarch if I resign as CFO. A company of this size simply does not need a full-time or even half-time CFO. Therefore, to help trim overhead expenses, I resign my position as CFO effective immediately. I will stay in touch in the coming weeks to help with any transitional needs.

I would very much like to continue my relationship with Techarch in the capacity of CPA and financial advisor. I would also like to continue in the role of board member of Techarch. My desire is to continue in these advisory roles to help Techarch achieve the success you have always envisioned.

Thank you for this opportunity. While stressful at times it has been a great learning experience.

Best regards,

Mike Deegan



TA 00118

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

May 01, 2001

Invoice # 222107

Professional Services

For meeting with Nancy Vaccaro.
Loan deferral information for Jeff Hickstein.
Revise Quickbooks 401(k) withholding/match.
For preparation of March 2001 financial statements.
EMC meeting.
For meeting with Steve Hetland regarding payroll taxes.
For meeting with Nancy, Jill and Brian.
Review Duluth projection for Denis.
Financial statements for Feb/Mar 2001
Meeting with Steve Hetland regarding IRS.
EMC meeting.
Accounting.
Payroll

| | Amount |
|---|---|
| For professional services rendered | $1,985.00 |
| Interest on overdue balance | $381.36 |
| Total amount of this bill | $2,366.36 |
| Previous balance | $13,756.75 |
| Balance due | $16,123.11 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00076

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

May 30, 2001

Invoice # 222547

Professional Services

For preparation of 1st quarter payroll tax returns.
Accounting.
For preparation of Jan-Mar. financial statements.
Accounting.
For meeting with Liesl and accounting.
For meeting with Dennis Deutsch.
April financials.

| | Amount |
|---|---|
| For professional services rendered | $2,455.00 |
| Interest on overdue balance | $248.96 |
| Total amount of this bill | $2,703.96 |
| Previous balance | $16,123.11 |
| Balance due | $18,827.07 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00077

VEBER & DEEGAN, LTD.
300 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
ECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

une 27, 2001

nvoice # 222761

Professional Services

Summarize 3rd and 4th quarter payroll tax deposits regarding notice.
For meeting with Liesl.
For preparation of April 30, 2001 financial statements.
For preparation of Kenn Beckwith payout information.
Calculate 2000 IRS penalties.
For preparation of information for Jerry Johnson regarding 401(k) plan.
For preparation of information regarding 401(k) plan for Jerry Johnson.
For 2001 tax planning.
For meeting with Sue Rohde.
Review IRS issues regarding Form 941. NO CHARGE
Accounting
IRS penalty issues.
For preparation of workers compensation insurance audit information.
May financials.

| | Amount |
|---|---|
| For professional services rendered | $4,548.75 |
| Interest on overdue balance | $202.04 |
| Total amount of this bill | $4,750.79 |
| Previous balance | $18,827.07 |
| Balance due | $23,577.86 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00078

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

July 31, 2001

Invoice #223023

Professional Services

| | |
|---|---|
| Accounting<br>May financials.<br>Review Brad Sohns pay for unemployment.<br>June 30, 2000 financials. | NO CHARGE |
| For preparation of June financial statements.<br>For meeting with Denis and Brian.<br>Review IRS payments.<br>Stock valuation at June 30, 2001. | NO CHARGE |
| | Amount |
| For professional services rendered | ~~$2,187.50~~ |
| Interest on overdue balance | $411.92 |
| Total amount of this bill | $2,599.42 |
| Previous balance | $23,577.86 |
| Balance due | $26,177.28 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00079

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

August 29, 2001

Invoice #223254

Professional Services

| | |
|---|---|
| tax prep<br>Accounting.<br>For preparation of 2000 federal and state corporate income tax returns.<br>For preparation of 2000 federal and state income tax returns.<br>For preparation of 2nd quarter Form 941. | NO CHARGE |
| For preparation of accounting and depreciation schedules.<br>IRS abatement discussions with Steve Hetland.<br>Information for IRS and bank. | NO CHARGE |
| Review stock valuation issues.<br>For preparation of 2nd quarter payroll tax returns. | NO CHARGE |
| Accounting.<br>For preparation of 2000 federal and state corporate income tax returns.<br>For processing 2000 federal and state corporate income tax returns. | NO CHARGE |

| | | Amount |
|---|---|---|
| | For professional services rendered | ~~$1,605.00~~ |
| | Interest on overdue balance | $130.96 |
| | Total amount of this bill | $1,735.96 |
| | Previous balance | $26,177.28 |
| 8/29/01 | Payment - thank you | ($2,000.00) |
| 8/29/01 | Payment - thank you | ($2,599.42) |
| | Total payments and adjustments | ($4,599.42) |
| | Balance due | $23,313.82 |



TA 00084

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

September 26, 2001

Invoice #223444

Professional Services

| | |
|---|---|
| Bank rec. | |
| For meeting with Liesl and accounting for May/June 2001. | NO CHARGE |
| For meeting with Liesl & Jill to update Quickbooks. | NO CHARGE |
| July financials. | NO CHARGE |
| Review David Peterson expense reserve issue. | |
| August financial information. | |

| | Amount |
|---|---|
| For professional services rendered | $1,540.00 |
| Interest on overdue balance | $159.12 |
| Total amount of this bill | $1,699.12 |
| Previous balance | $23,313.82 |
| Balance due | $25,012.94 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00087

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

October 30, 2001

Invoice #223666

Professional Services

Accounting.
For preparation of September financials.
Lunch meeting with Sue Rohde.
For preparation of 3rd quarter payroll tax returns. NO CHARGE

| | | Amount |
|---|---|---|
| | For professional services rendered | $860.00 |
| | Interest on overdue balance | $182.36 |
| | Total amount of this bill | $1,042.36 |
| | Previous balance | $25,012.94 |
| 10/1/01 | Payment - thank you | ($1,735.96) |
| 10/1/01 | Payment - thank you | ($2,000.00) |
| 10/29/01 | Payment - thank you | ($1,699.12) |
| | Total payments and adjustments | ($5,435.08) |
| | Balance due | $20,620.22 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00090

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

November 28, 2001

Invoice #223851

Professional Services

For preparation of 3rd quarter payroll.
October financials.

| | Amount |
|---|---|
| For professional services rendered | ~~$253.75~~ |
| Interest on overdue balance | $212.07 |
| Total amount of this bill | $465.82 |
| Previous balance | $20,620.22 |
| Balance due | $21,086.04 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00091

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

December 31, 2001

Invoice #224047

Professional Services

For preparation of October financials.

| | Amount |
|---|---|
| For professional services rendered | $220.00 |
| Interest on overdue balance | $276.92 |
| Total amount of this bill | $496.92 |
| Previous balance | $21,086.04 |
| Balance due | $21,582.96 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00092

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

January 31, 2002

Invoice #224296

| | Amount |
|---|---|
| Interest on overdue balance | $265.45 |
| Total amount of this bill | $265.45 |
| Previous balance | $21,582.96 |
| Balance due | $21,848.41 |

PAST DUE

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00093

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

February 27, 2002

Invoice #224498

Professional Services

For preparation of 4th quarter payroll tax returns and 2001 W-2's.

| | Amount |
|---|---|
| For professional services rendered | $337.50 |
| Interest on overdue balance | $261.90 |
| Total amount of this bill | $599.40 |
| Previous balance | $21,848.41 |
| Balance due | $22,447.81 |

PAST DUE

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00094

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

March 15, 2002

Invoice #224727

PAST DUE

| | Amount |
|---|---|
| Interest on overdue balance | $156.72 |
| Total amount of this bill | $156.72 |
| Previous balance | $22,447.81 |
| Balance due | $22,604.53 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00095

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

April 01, 2002

Invoice #224964

| | Amount |
|---|---|
| Interest on overdue balance | $166.75 |
| Total amount of this bill | $166.75 |
| Previous balance | $22,604.53 |
| Balance due | $22,771.28 |

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00096

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

May 02, 2002

Invoice #225394

| | Amount |
|---|---|
| Interest on overdue balance | $304.73 |
| Total amount of this bill | $304.73 |
| Previous balance | $22,771.28 |
| Balance due | $23,076.01 |

PAST DUE

TERMS: NET 30 DAYS
LATE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00097

WEBER & DEEGAN, LTD.
6800 France Avenue South, Suite 750
Edina, MN 55435
(952) 920-6186

Invoice submitted to:
TECHARCH, INC.
430 - 1ST AVENUE NORTH
SUITE 416
MINNEAPOLIS MN 55401

May 29, 2002

Invoice #225850

Professional Services

For review of payroll notice and response.

| | Amount |
|---|---|
| For professional services rendered | $22.50 |
| Interest on overdue balance | $269.32 |
| Total amount of this bill | $291.82 |
| Previous balance | $23,076.01 |
| Balance due | $23,367.83 |

PAST DUE

TERMS: NET 30 DAYS
\TE PAYMENTS WILL BE ASSESSED A 1.5% MONTHLY FINANCE CHARGE

TA 00098

**EXHIBIT D-3**

**December 12, 2000 Representations to Associated Bank in Support of TechArch's Application for SBA Loan**

TECHARCH consulting group

December 12, 2000

Gerald Anderson
Associated Bank
7760 France Avenue South
Suite 125
Bloomington, MN 55435

Dear Gerald,

Enclosed is a revised 2001 projection for Techarch, Inc. I have made the following significant changes to the projections:

1. Reduced the Management consulting income from $3.4 million to $2.4 million. This is based on a conversation with Brian Lassiter, the manager of the management consulting work.
2. Adjusted the Management Consulting cost of sales to 58%.
3. Lowered the salaries and wages under operating expenses. This is based on actual salaries (current and projected new hires) to administrative personnel only. Some of our staff that I have been classifying as operating expense has already moved to billable resources and are now included in the cost of sales figures.

I have also provided you a list of the 2000 expenses that will not be repeated for 2001 and a list of the Long-term debt that I have included in the projections.

The projections now show sales of just under $9 million. With the management consulting business generating $2.4 million, this leaves $6.6 million for our technology business. Our year 2000 technology income should be around $5.3 million. This would then be about a 25% increase in technology revenue for 2001 over 2000. We believe we have the management and sales staff in place to easily produce this increase.

I will fax you a current receivable aging tomorrow.

Please let me know if you need anything else. I would very much like to have this resolved before Christmas. I look forward to your recommendations.

Best regards,

Mike

Mike Deegan, CFO
Techarch, Inc.

TA 00140

corporate 651.298.8333 fax 651.221.9170
235 east sixth street, suite 300 st. paul, minnesota 55101
www.techarchgroup.com

# TECHARCH, INC.

## 2000 Non recurring expenses

| | | |
|---|---|---|
| Legal-Stock repurchase | | 25,000.00 |
| Legal-Ian Alliott acquisition | | 30,000.00 |
| HR | | 29,512.50 |
| Harrison vs Jill | (90,000 salary vs 44,000) | 46,000.00 |
| Broker expenses | | 11,440.00 |
| Total | | 141,952.50 |

## Loans

| | | |
|---|---|---|
| Equipment loan | 45,000.00 | |
| Jeff Hickstein | 800,228.08 | 8% loan over 8 yrs ending 8-25-07, $12,960.08/mo |
| Ian Alliott | 120,418.18 | 8% loan over 4 yrs ending 9-25-04, $3,166.81/mo |
| SBA Loan | 500,000.00 | |
| Noncompete payable | 550,833.00 | No interest, $12,291.66/mo |
| Total | 2,016,479.26 | as of 12/31/00 |
| Total-per projection | 2,016,479.00 | |
| Difference | 0.26 | |

TA 00141

TA 00142

| | Jan-01 | Feb-01 | Mar-01 | Apr-01 | May-01 | Jun-01 | Jul-01 | Aug-01 | Sep-01 | Oct-01 | Nov-01 | Dec-01 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TECHNOLOGY CONSULTING** | | | | | | | | | | | | | |
| avg rate / hrs/mo | | | | | | | | | | | | | |
| Hourly 120.56 / 140 | | | | | | | | | | | | | |
| People-beginning of month | 9 | 9 | 9 | 8 | 8 | 8 | 8 | 7 | 7 | 7 | 7 | 7 | |
| Additions | | | | | | | | | | | | | 0 |
| Deletions (turnover) | | | 1 | | | | 1 | | | | | 1 | 3 |
| People-end of month | 9 | 9 | 8 | 8 | 8 | 8 | 7 | 7 | 7 | 7 | 7 | 6 | |
| avg rate / hrs/mo | | | | | | | | | | | | | |
| Salaried 127.43 / 130 | | | | | | | | | | | | | |
| People-beginning of month | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | |
| Additions | 1 | 1 | 2 | 1 | 1 | 2 | 1 | 1 | 2 | 1 | 1 | 1 | 15 |
| Deletions (turnover) | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 4 |
| People-end of month | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 23 | |
| avg rate / hrs/mo | | | | | | | | | | | | | |
| Subs 108.75 / 150 | | | | | | | | | | | | | |
| People-beginning of month | 4 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 10 | 10 | 11 | |
| Additions | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 12 |
| Deletions (turnover) | 0 | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 0 | 1 | 0 | 1 | 5 |
| People-end of month | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 10 | 10 | 11 | 11 | |
| Total consultants-technology | 22 | 23 | 23 | 24 | 25 | 26 | 26 | 27 | 28 | 29 | 30 | 29 | |
| Hourly billing | 151,900.00 | 151,900.00 | 151,900.00 | 135,022.00 | 135,022.00 | 135,022.00 | 135,022.00 | 118,144.00 | 118,144.00 | 118,144.00 | 118,144.00 | 118,144.00 | 1,586,508.00 |
| Salaried billing | 198,789.00 | 215,354.00 | 231,920.00 | 248,486.00 | 265,051.00 | 281,617.00 | 298,183.00 | 314,749.00 | 331,314.00 | 347,880.00 | 364,446.00 | 381,011.00 | 3,478,800.00 |
| Subcontractor | 65,250.00 | 81,563.00 | 97,875.00 | 97,875.00 | 114,188.00 | 114,188.00 | 130,500.00 | 130,500.00 | 146,813.00 | 163,125.00 | 163,125.00 | 179,438.00 | 1,484,440.00 |
| Total billing-Technology | 415,939.00 | 448,817.00 | 481,695.00 | 481,383.00 | 514,261.00 | 530,827.00 | 563,705.00 | 563,393.00 | 596,271.00 | 629,149.00 | 645,715.00 | 678,593.00 | 6,549,748.00 |

| | Jan-01 | Feb-01 | Mar-01 | Apr-01 | May-01 | Jun-01 | Jul-01 | Aug-01 | Sep-01 | Oct-01 | Nov-01 | Dec-01 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MANAGEMENT CONSULTING** | | | | | | | | | | | | | |
| avg rate / hrs/mo | | | | | | | | | | | | | |
| Ian Alliott 337.39 / 129.2 | | | | | | | | | | | | | |
| People-beginning of month | 1 | 2 | 2 | 3 | 4 | 5 | 5 | 6 | 7 | 7 | 7 | 7 | |
| Additions | 1 | | 1 | 1 | 1 | | 1 | 1 | | | | | 6 |
| Deletions (turnover) | | | | | | | | | | | | | 0 |
| People-end of month | 2 | 2 | 3 | 4 | 5 | 5 | 6 | 7 | 7 | 7 | 7 | 7 | |
| Total billing-mgmt consulting | 43,591.00 | 87,182.00 | 87,182.00 | 130,772.00 | 174,363.00 | 217,954.00 | 217,954.00 | 261,545.00 | 305,136.00 | 305,136.00 | 305,136.00 | 305,136.00 | 2,441,087.00 |
| Total Billing-ALL | 459,530.00 | 535,999.00 | 568,877.00 | 612,155.00 | 688,624.00 | 748,781.00 | 781,659.00 | 824,938.00 | 901,407.00 | 934,285.00 | 950,851.00 | 983,729.00 | 8,990,835.00 |

TECHARCH PROJECTION 2001 v2
Billing
Page 1

TA 00143

# TECHARCH, INC.

# 2001 FINANCIAL PROJECTIONS

TECHARCH PROJECTION 2001 v2
12/12/00

TA 00144

TECHARCH, INC.
2001 PROJECTION
SIGNIFICANT ASSUMPTIONS

1 SBA Loan closes in December 2000 for $500,000.
2 SBA Loan fee of 3.5% or 17,500.
3 Terms of SBA Loan are 10.5% over 7 years.
4 SBA Loan pays off $250,000 line of credit.
5 Other long term debt is:
    a Note payable-former shareholder
    b Note payable-Ian Alliott (acquisition)
6 Duluth Softcenter concept is not included in these projections.
7 For this purpose, Management Consulting income is calculated using hourly rates and billable hours. In reality, the Management Consulting projects are bid at a total project cost, not subject to hourly rates. Our projections indicate that we can achieve approximately $3,400,000 in 2001 sales for Management Consulting through our Ian Alliott division.

TA 00145

TEC[illegible], INC.
PROJECTED BALANCE SHEETS
YEAR 2001

| | 12/31/00 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| months sales in a/r | | 1.61 | 1.46 | 1.44 | 1.41 | 1.31 | 1.26 | 1.25 | 1.24 | 1.18 | 1.18 | 1.20 | 1.20 |
| ASSETS — a/r % of annual sales | | 13.42% | 12.13% | 12.01% | 11.71% | 10.89% | 10.46% | 10.45% | 10.30% | 9.80% | 9.81% | 9.99% | 10.00% |
| CURRENT ASSETS | | | | | | | | | | | | | |
| Cash | 282,500 | $ 220,060 | 175,259 | 134,366 | 129,118 | 141,676 | 170,155 | 153,870 | 152,548 | 173,084 | 224,988 | 279,469 | 338,464 |
| Accounts receivable | 700,000 | 740,000 | 780,000 | 820,000 | 860,000 | 900,000 | 940,000 | 980,000 | 1,020,000 | 1,060,000 | 1,100,000 | 1,140,000 | 1,180,000 |
| Work in progress | 100,000 | 103,000 | 106,000 | 109,000 | 112,000 | 115,000 | 118,000 | 121,000 | 124,000 | 127,000 | 130,000 | 133,000 | 136,000 |
| Prepaid expenses | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| TOTAL CURRENT ASSETS | 1,117,500 | 1,098,060 | 1,096,259 | 1,098,366 | 1,136,118 | 1,191,676 | 1,263,155 | 1,289,870 | 1,331,548 | 1,395,084 | 1,489,988 | 1,587,469 | 1,689,464 |
| PROPERTY AND EQUIPMENT | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 |
| Less: accumulated depreciation | (35,000) | (36,500) | (38,000) | (39,500) | (41,000) | (42,500) | (44,000) | (45,500) | (47,000) | (48,500) | (50,000) | (51,500) | (53,000) |
| NET PROPERTY AND EQUIPMENT | 140,000 | 138,500 | 137,000 | 135,500 | 134,000 | 132,500 | 131,000 | 129,500 | 128,000 | 126,500 | 125,000 | 123,500 | 122,000 |
| OTHER ASSETS | 668,333 | 664,483 | 660,633 | 656,783 | 652,933 | 649,083 | 645,233 | 641,383 | 637,533 | 633,683 | 629,833 | 625,983 | 622,133 |
| TOTAL ASSETS | 1,925,833 | $ 1,901,043 | 1,893,892 | 1,890,649 | 1,923,051 | 1,973,259 | 2,039,388 | 2,060,753 | 2,097,081 | 2,155,267 | 2,244,821 | 2,336,952 | 2,433,597 |
| LIABILITIES AND STOCKHOLDERS' EQUITY | | | | | | | | | | | | | |
| CURRENT LIABILITIES | | | | | | | | | | | | | |
| Note payable - line of credit | - | $ - | - | - | 25,000 | 50,000 | 75,000 | 50,000 | 25,000 | - | - | - | - |
| Accounts payable | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| Accrued wages | 200,000 | 232,000 | 264,000 | 296,000 | 328,000 | 360,000 | 392,000 | 424,000 | 456,000 | 488,000 | 520,000 | 552,000 | 584,000 |
| Accrued expenses | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 | 177,396 |
| Deferred income tax | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL CURRENT LIABILITIES | 577,396 | 609,396 | 641,396 | 673,396 | 730,396 | 787,396 | 844,396 | 851,396 | 858,396 | 865,396 | 897,396 | 929,396 | 961,396 |
| NONCOMPETE PAYABLE | 550,833 | 538,542 | 526,251 | 513,960 | 501,669 | 489,378 | 477,087 | 464,796 | 452,505 | 440,214 | 427,923 | 415,632 | 403,341 |
| LONG-TERM DEBT | 1,465,646 | 1,451,146 | 1,436,646 | 1,422,146 | 1,407,646 | 1,393,146 | 1,378,646 | 1,364,146 | 1,349,646 | 1,335,146 | 1,320,646 | 1,306,146 | 1,291,646 |
| TOTAL LIABILITIES | 2,593,875 | 2,599,084 | 2,604,293 | 2,609,502 | 2,639,711 | 2,669,920 | 2,700,129 | 2,680,338 | 2,660,547 | 2,640,756 | 2,645,965 | 2,651,174 | 2,656,383 |
| STOCKHOLDERS' EQUITY | | | | | | | | | | | | | |
| Common stock/paid in capital | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 | 150,100 |
| Repurchase of stock | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) | (843,142) |
| Retained earnings | 25,000 | (4,999) | (17,359) | (25,811) | (23,618) | (3,619) | 32,301 | 73,457 | 129,576 | 207,553 | 291,898 | 378,820 | 470,256 |
| TOTAL STOCKHOLDERS' EQUITY | (668,042) | (698,041) | (710,401) | (718,853) | (716,660) | (696,661) | (660,741) | (619,585) | (563,466) | (485,489) | (401,144) | (314,222) | (222,786) |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY | 1,925,833 | $ 1,901,043 | 1,893,892 | 1,890,649 | 1,923,051 | 1,973,259 | 2,039,388 | 2,060,753 | 2,097,081 | 2,155,267 | 2,244,821 | 2,336,952 | 2,433,597 |

TECH... , INC
PROJECTED STATEMENTS OF INCOME AND RETAINED EARNINGS
YEAR 2001

| | % of sales | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SALES | | | | | | | | | | | | | | |
| Technology-hourly | | 151,900 | 151,900 | 151,900 | 135,022 | 135,022 | 135,022 | 135,022 | 118,144 | 118,144 | 118,144 | 118,144 | 118,144 | 1,586,508 |
| Technology-salaried | | 198,789 | 215,354 | 231,920 | 248,486 | 265,051 | 281,617 | 298,183 | 314,749 | 331,314 | 347,880 | 364,446 | 381,011 | 3,478,800 |
| Technology-subcontractors | | 65,250 | 81,563 | 97,875 | 97,875 | 114,188 | 114,188 | 130,500 | 130,500 | 146,813 | 163,125 | 163,125 | 179,438 | 1,484,440 |
| Management consulting | | 43,591 | 87,182 | 87,182 | 130,772 | 174,363 | 217,954 | 217,954 | 261,545 | 305,136 | 305,136 | 305,136 | 305,136 | 2,441,087 |
| TOTAL SALES | | 459,530 | 535,999 | 568,877 | 612,155 | 688,624 | 748,781 | 781,659 | 824,938 | 901,407 | 934,285 | 950,851 | 983,729 | 8,990,835 |
| COST OF SALES | | | | | | | | | | | | | | |
| Technology-hourly | 71% | 107,849 | 107,849 | 107,849 | 95,866 | 95,866 | 95,866 | 95,866 | 83,882 | 83,882 | 83,882 | 83,882 | 83,882 | 1,126,421 |
| Technology-salaried | 65% | 129,213 | 139,980 | 150,748 | 161,516 | 172,283 | 183,051 | 193,819 | 204,587 | 215,354 | 226,122 | 236,890 | 247,657 | 2,261,220 |
| Technology-subcontractors | 78% | 50,895 | 63,619 | 76,343 | 76,343 | 89,067 | 89,067 | 101,790 | 101,790 | 114,514 | 127,238 | 127,238 | 139,962 | 1,157,866 |
| Management consulting | 58% | 25,283 | 50,566 | 50,566 | 75,848 | 101,131 | 126,413 | 126,413 | 151,696 | 176,979 | 176,979 | 176,979 | 176,979 | 1,415,832 |
| Sales commissions/mktg expenses | 8% | 36,762 | 42,880 | 45,510 | 48,972 | 55,090 | 59,902 | 62,533 | 65,995 | 72,113 | 74,743 | 76,068 | 78,698 | 719,266 |
| Payroll taxes | | 21,906 | 23,257 | 24,329 | 21,445 | 22,627 | 23,717 | 17,611 | 17,723 | 14,854 | 13,466 | 13,889 | 14,358 | 229,182 |
| 401k contributions | | 19,168 | 20,350 | 21,287 | 21,445 | 22,627 | 23,717 | 24,655 | 24,812 | 25,994 | 26,932 | 27,779 | 28,717 | 287,484 |
| TOTAL COST OF SALES | | 391,076 | 448,500 | 476,632 | 501,435 | 558,690 | 601,734 | 622,687 | 650,486 | 703,690 | 729,362 | 742,725 | 770,253 | 7,197,271 |
| GROSS PROFIT | | 68,454 | 87,499 | 92,245 | 110,720 | 129,934 | 147,047 | 158,972 | 174,452 | 197,717 | 204,923 | 208,126 | 213,476 | 1,793,564 |
| | *% of sales* | *14.90%* | *16.32%* | *16.22%* | *18.09%* | *18.87%* | *19.64%* | *20.34%* | *21.15%* | *21.93%* | *21.93%* | *21.89%* | *21.70%* | *19.95%* |
| OPERATING EXPENSES | | 88,753 | 90,159 | 90,997 | 98,828 | 100,234 | 101,428 | 108,115 | 108,634 | 110,040 | 110,878 | 111,503 | 112,341 | 1,231,909 |
| | | | | | | | | | | | | | | 13.70% |
| OPERATING INCOME | | (20,299) | (2,660) | 1,248 | 11,893 | 29,700 | 45,620 | 50,856 | 65,819 | 87,677 | 94,045 | 96,623 | 101,135 | 561,656 |
| | | | | | | | | | | | | | | 6.25% |
| OTHER INCOME (EXPENSE) | | | | | | | | | | | | | | |
| Interest income | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest expense | | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (116,400) |
| TOTAL OTHER INCOME (EXPENSE) | | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (9,700) | (116,400) |
| NET INCOME | | (29,999) | (12,360) | (8,452) | 2,193 | 20,000 | 35,920 | 41,156 | 56,119 | 77,977 | 84,345 | 86,923 | 91,435 | 445,256 |
| RETAINED EARNINGS, BEG | | 25,000 | (4,999) | (17,359) | (25,811) | (23,618) | (3,619) | 32,301 | 73,457 | 129,576 | 207,553 | 291,898 | 378,820 | 25,000 |
| RETAINED EARNINGS, END | | (4,999) | (17,359) | (25,811) | (23,618) | (3,619) | 32,301 | 73,457 | 129,576 | 207,553 | 291,898 | 378,820 | 470,256 | 470,256 |

TECHARCH, INC.
PROJECTED STATEMENTS OF CASH FLOWS
YEAR 2001



| | | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES | | | | | | | | | | | | | |
| Net income | $ | (29,999) | (12,360) | (8,452) | 2,193 | 20,000 | 35,920 | 41,156 | 56,119 | 77,977 | 84,345 | 86,923 | 91,435 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | | | | | | | | | | | | |
| Amortization | | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 |
| Depreciation | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| (Increase) decrease in: | | | | | | | | | | | | | |
| Accounts receivable | | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) |
| Inventory | | | | | | | | | | | | | |
| Prepaid expenses | | | | | | | | | | | | | |
| Work in process | | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) |
| Increase (decrease) in: | | | | | | | | | | | | | |
| Accounts payable | | | | | | | | | | | | | |
| Wages payable | | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 |
| Accrued payroll taxes | | | | | | | | | | | | | |
| Accrued expenses | | - | - | - | - | - | - | - | - | - | - | - | - |
| NET CASH FLOWS FROM OPERATIONS | | (35,649) | (18,010) | (14,102) | (3,457) | 14,350 | 30,270 | 35,506 | 50,469 | 72,327 | 78,695 | 81,273 | 85,785 |
| CASH FLOWS FROM INVESTING ACTIVITIES | | | | | | | | | | | | | |
| Purchase of equipment | | - | - | - | - | - | - | - | - | - | - | - | - |
| | | - | - | - | - | - | - | - | - | - | - | - | - |
| NET CASH FLOWS FROM INVESTING | | - | - | - | - | - | - | - | - | - | - | - | - |
| CASH FLOWS FROM FINANCING ACTIVITIES | | | | | | | | | | | | | |
| Proceeds from debt-Line of credit | | - | - | - | 25,000 | 25,000 | 25,000 | - | - | - | - | - | - |
| Repayment of debt-Line of credit | | - | - | - | - | - | - | (25,000) | (25,000) | (25,000) | - | - | - |
| Proceeds from debt-Long Term | | - | - | - | - | - | - | - | - | - | - | - | - |
| Repayment of debt-Long Term | | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) | (14,500) |
| Payment of noncompete | | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) | (12,291) |
| NET CASH FLOWS FROM FINANCING | | (26,791) | (26,791) | (26,791) | (1,791) | (1,791) | (1,791) | (51,791) | (51,791) | (51,791) | (26,791) | (26,791) | (26,791) |
| NET INCREASE (DECREASE) IN CASH | | (62,440) | (44,801) | (40,893) | (5,248) | 12,559 | 28,479 | (16,285) | (1,322) | 20,536 | 51,904 | 54,482 | 58,994 |
| CASH - BEGINNING | | 282,500 | 220,060 | 175,259 | 134,366 | 129,118 | 141,676 | 170,155 | 153,870 | 152,548 | 173,084 | 224,988 | 279,469 |
| CASH - ENDING | $ | 220,060 | 175,259 | 134,366 | 129,118 | 141,676 | 170,155 | 153,870 | 152,548 | 173,084 | 224,988 | 279,469 | 338,464 |

TA 00148

PR[illegible]TED S[illegible]DULE[illegible] OPER[illegible] EXP[illegible]S
YEAR 2001

| | % of sales | % of p/r | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPERATING EXPENSES | | | | | | | | | | | | | | | | |
| Salaries and wages | | | 26,583 | 26,583 | 26,583 | 32,833 | 32,833 | 32,833 | 37,833 | 37,833 | 37,833 | 37,833 | 37,833 | 37,833 | 405,246 | 4.51% |
| Payroll taxes | | 8.00% | 2,127 | 2,127 | 2,127 | 2,627 | 2,627 | 2,627 | 3,027 | 3,027 | 3,027 | 3,027 | 3,027 | 3,027 | 32,420 | 0.36% |
| 401k contributions | | 9.00% | 2,392 | 2,392 | 2,392 | 2,955 | 2,955 | 2,955 | 3,405 | 3,405 | 3,405 | 3,405 | 3,405 | 3,405 | 36,472 | 0.41% |
| Employee benefits | | 3.80% | 10,405 | 11,047 | 11,556 | 11,641 | 12,283 | 12,875 | 13,384 | 13,470 | 14,111 | 14,620 | 15,080 | 15,589 | 156,062 | 1.74% |
| Education | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 0.13% |
| Marketing expenses | 1.00% | | 4,595 | 5,360 | 5,689 | 6,122 | 6,886 | 7,488 | 7,817 | 8,249 | 9,014 | 9,343 | 9,509 | 9,837 | 89,908 | 1.00% |
| Other administrative | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 0.13% |
| Miscellaneous | | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 0.07% |
| Automobile expense | | | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 | 0.11% |
| Computer expenses | | | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 31,200 | 0.35% |
| Dues and subscriptions | | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 0.08% |
| Insurance | | | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 33,600 | 0.37% |
| Office | | | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 28,800 | 0.32% |
| Legal | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.67% |
| Accounting | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.67% |
| Rent | | | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 | 1.20% |
| Telephone | | | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 28,800 | 0.32% |
| Travel | | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 | 0.47% |
| Meals and entertainment | | | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 | 0.09% |
| Amortization | | | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 46,200 | 0.51% |
| Depreciation | | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 | 0.20% |
| TOTAL OPERATING EXPENSES | | | 88,753 | 90,159 | 90,997 | 98,828 | 100,234 | 101,428 | 108,115 | 108,634 | 110,040 | 110,878 | 111,503 | 112,341 | 1,231,909 | 13.70% |

**EXHIBIT D-4**

**No Problems E-Mail**

From: "Mike Deegan" <mike.deegan@techarchgroup.com>
To: "Brian Lassiter" <blassiter@ianalliott.com>, "Kenn Beckwith" <kenn.beckwith@techarchgroup.com>, "Sue Rohde" <msrohde@techarchgroup.com>
Date: Wed, Dec 20, 2000 10:08 AM
Subject: SBA Loan update

Greetings fellow EMC members,

I have been working with Gerald Anderson of Associated Bank to revise our debt with them. Gerald and I have outlined the following as what he thinks he can get done at the bank:

SBA Loan: $350,000
New line of credit $150,000 (down from $250,000)

We would close on the loan before year end, with funds being disbursed in the first week of the new year.

The SBA loan would require between $100,000 and $150,000 of collateral from Sue. Is this reasonable/possible Sue?

This gives us another $250,000 of capital with which to operate. I have attached my projections (version 3) with the new loan amounts. I believe that my projections, at least for the first quarter of 2001, are conservative.

I would be interested to know how sales are shaping up for 2001. Brian and Kenn, any news for me?

Sorry I couldn't be at the meeting yesterday. I will try to get you a financial update by end of day today.

Thanks, Mike

**EXHIBIT D-5**

**TechArch's First Quarter 2001 Check Register**

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 1/2/2001 | | | -split- | Deposit | | 23,339.28 | 85,319.92 |
| 1/2/2001 | | | -split- | Deposit | | 9,960.00 | 95,279.92 |
| 1/2/2001 | 3331 | Ambassador Press, Inc. | 2000 · Accounts Payable | | 8,230.33 | | 87,049.59 |
| 1/2/2001 | 3332 | D. Brian's Deli & Catering | 2000 · Accounts Payable | | 69.46 | | 86,980.13 |
| 1/2/2001 | 3333 | Meyer, Nathan | 2100 · Payroll Liabilities:2130 · Oth | Health Care Reimbursem | 356.35 | | 86,623.78 |
| 1/2/2001 | 3334 | Weber & Deegan | 2000 · Accounts Payable | | 7,590.00 | | 79,033.78 |
| 1/3/2001 | | | 1499 · Undeposited Funds | Deposit | | 52,902.79 | 131,936.57 |
| 1/3/2001 | DD | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Pay | 2725109 | 15,559.00 | | 116,377.57 |
| 1/3/2001 | 3335 | Blue Cross Blue Shield | 2000 · Accounts Payable | | 8,610.00 | | 107,767.57 |
| 1/3/2001 | 3336 | St. Paul Fire & Marine Insurance C | 6290 · Rent | January Rent | 6,067.65 | | 101,699.92 |
| 1/3/2001 | 3337 | American Express Corporate Servi | 2000 · Accounts Payable | | 3,388.88 | | 98,311.04 |
| 1/3/2001 | 3338 | AT&T | 2000 · Accounts Payable | | 389.32 | | 97,921.72 |
| 1/3/2001 | 3339 | Martin Benefit Administrators | 2000 · Accounts Payable | | 130.65 | | 97,791.07 |
| 1/3/2001 | 3340 | Berry Coffee Company | 2000 · Accounts Payable | | 52.39 | | 97,738.68 |
| 1/3/2001 | 3341 | Ciber | 2000 · Accounts Payable | | 24,570.00 | | 73,168.68 |
| 1/3/2001 | 3342 | Conseco Finance Vendor Services | 2000 · Accounts Payable | | 146.02 | | 73,022.66 |
| 1/3/2001 | 3343 | Deluxe Business Forms and Suppl | 2000 · Accounts Payable | | 52.25 | | 72,970.41 |
| 1/3/2001 | 3344 | DFS Acceptance | 2000 · Accounts Payable | | 271.48 | | 72,698.93 |
| 1/3/2001 | 3345 | Insty Prints | 2000 · Accounts Payable | | 275.12 | | 72,423.81 |
| 1/3/2001 | 3346 | Office Depot | 2000 · Accounts Payable | | 139.09 | | 72,284.72 |
| 1/3/2001 | 3347 | Peter Hines | 2000 · Accounts Payable | | 16,345.81 | | 55,938.91 |
| 1/3/2001 | 3348 | Spangler Design Team | 2000 · Accounts Payable | | 4,462.84 | | 51,476.07 |
| 1/3/2001 | 3349 | Universal Capital Funding | 2000 · Accounts Payable | | 375 | | 51,101.07 |
| 1/5/2001 | 3350 | Teakwood Associates | 6240 · Miscellaneous | | 3,750.00 | | 47,351.07 |
| 1/9/2001 | | | -split- | Deposit | | 67,547.50 | 114,898.57 |
| 1/10/2001 | 3353 | Office Depot | 6550 · Office Supplies | | 242.4 | | 114,656.17 |
| 1/10/2001 | 3354 | 430 Kickernick Assoc. Ltd. Ptnshp. | 6290 · Rent | | 3,272.80 | | 111,383.37 |
| 1/10/2001 | 3355 | Red Design Organization | 6260 · Printing and Reproduction | | 2,204.00 | | 109,179.37 |
| 1/11/2001 | | | -split- | Deposit | | 24,131.88 | 133,311.25 |
| 1/12/2001 | DD | Deutsch, Denis J | 6350 · Travel | | 283.4 | | 133,027.85 |
| 1/12/2001 | DD | Taylor, Jill K | 6245 · Office expense | | 197.9 | | 132,829.95 |
| 1/12/2001 | DD | Wiborg, Liesl K. | 6245 · Office expense | | 167.44 | | 132,662.51 |
| 1/12/2001 | DD | Billington, Kathleen M | 6350 · Travel | | 2,029.40 | | 130,633.11 |
| 1/12/2001 | DD | Scott, Mark | 6245 · Office expense | | 95.75 | | 130,537.36 |
| 1/12/2001 | DD | Clark, Brian A | 6245 · Office expense | | 852.45 | | 129,684.91 |
| 1/12/2001 | DD | Hockin, Robert | 6245 · Office expense | | 65.37 | | 129,619.54 |
| 1/12/2001 | DD | Johnson, Richard L. | 6110 · Automobile Expense | | 100 | | 129,519.54 |
| 1/12/2001 | | Mishra, Lingaraj | -split- | | 3,155.56 | | 126,363.98 |
| 1/12/2001 | | Rohde, Susan M. | -split- | | 3,327.02 | | 123,036.96 |
| 1/12/2001 | | Beckwith, Kenn C. | -split- | | 4,252.43 | | 118,784.53 |
| 1/12/2001 | | Casper, Paul A | -split- | | 3,397.63 | | 115,386.90 |
| 1/12/2001 | | Marlin, Mark A. | -split- | | 2,245.66 | | 113,141.24 |
| 1/12/2001 | | Porter, Jill M | -split- | | 1,999.61 | | 111,141.63 |
| 1/12/2001 | | Krengel, Steven E | -split- | | 4,456.50 | | 106,685.13 |
| 1/12/2001 | | Lyng, Robert C. | -split- | | 3,560.18 | | 103,124.95 |
| 1/12/2001 | | Padgett, David W | -split- | | 4,948.49 | | 98,176.46 |
| 1/12/2001 | | Peterson, David D. | -split- | | 3,641.41 | | 94,535.05 |
| 1/12/2001 | | Sohns, Brad | -split- | | 4,608.72 | | 89,926.33 |
| 1/12/2001 | | Ubl, Michele | -split- | | 2,711.09 | | 87,215.24 |

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

# 01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance | |
|---|---|---|---|---|---|---|---|---|
| 1/12/2001 | | Logajan, George M. | -split- | | 3,284.86 | | 83,930.38 | |
| 1/12/2001 | | Stratton, Tammy J.V. | -split- | | 2,164.14 | | 81,766.24 | |
| 1/12/2001 | | Billington, Kathleen M | -split- | | 1,575.97 | | 80,190.27 | |
| 1/12/2001 | | Castro, Anne | -split- | | 1,035.96 | | 79,154.31 | |
| 1/12/2001 | | Clark, Brian A | -split- | | 1,420.74 | | 77,733.57 | |
| 1/12/2001 | | Deutsch, Denis J | -split- | | 3,119.69 | | 74,613.88 | |
| 1/12/2001 | | Hockin, Robert | -split- | | 2,411.07 | | 72,202.81 | |
| 1/12/2001 | | Johnson, Richard L. | -split- | | 2,015.84 | | 70,186.97 | |
| 1/12/2001 | | Kavie, Andrew J | -split- | | 1,437.85 | | 68,749.12 | |
| 1/12/2001 | | Kellerman, Ron | -split- | | 1,126.35 | | 67,622.77 | |
| 1/12/2001 | | Lassiter, Brian | -split- | | 2,513.17 | | 65,109.60 | |
| 1/12/2001 | | Lund, Eric J. | -split- | | 3,025.61 | | 62,083.99 | |
| 1/12/2001 | | Menzel, Kelvin J | -split- | | 2,836.72 | | 59,247.27 | |
| 1/12/2001 | | Meyer, Nathan | -split- | | 2,448.46 | | 56,798.81 | |
| 1/12/2001 | | Savage, Carol | -split- | | 1,945.02 | | 54,853.79 | |
| 1/12/2001 | | Scott, Mark | -split- | | 1,578.14 | | 53,275.65 | |
| 1/12/2001 | | Smith, Gordon | -split- | | 2,606.26 | | 50,669.39 | |
| 1/12/2001 | | Taylor, Jill K | -split- | | 1,361.02 | | 49,308.37 | |
| 1/12/2001 | | Vaccaro, Nancy G. | -split- | | 1,193.08 | | 48,115.29 | |
| 1/12/2001 | | Webster, Leon C. | -split- | | 3,085.42 | | 45,029.87 | |
| 1/12/2001 | | Wiborg, Liesl K. | -split- | | 1,941.74 | | 43,088.13 | |
| 1/15/2001 | 3356 | Hickstein, Jeffrey A. | 2510 · Note Payable-Hickstein | | 12,960.08 | | 30,128.05 | |
| 1/16/2001 | 1 | | 7200 · Interest Expense | | 2,222.21 | | 27,905.84 | |
| 1/17/2001 | | | -split- | Deposit | | 29,430.00 | 57,335.84 | |
| 1/18/2001 | | | 1499 · Undeposited Funds | Deposit | | 5,290.00 | 62,625.84 | |
| 1/19/2001 | DD | Aetna Retirement Services | -split- | | 17,008.55 | | 45,617.29 | |
| 1/19/2001 | 3357 | Ciber | 2000 · Accounts Payable | | 4,992.00 | | 40,625.29 | |
| 1/19/2001 | 3358 | D.J. Finn & Assoc. | 2000 · Accounts Payable | | 4,900.00 | | 35,725.29 | |
| 1/19/2001 | 3359 | DFS Acceptance | 2000 · Accounts Payable | | 104.11 | | 35,621.18 | |
| 1/19/2001 | 3360 | Philadelphia Insurance Companies | 2000 · Accounts Payable | | 1,583.33 | | 34,037.85 | |
| 1/19/2001 | 3361 | PR Newswire | 2000 · Accounts Payable | | 650 | | 33,387.85 | |
| 1/19/2001 | 3362 | Qwest | 2000 · Accounts Payable | | 148.23 | | 33,239.62 | |
| 1/19/2001 | 3363 | SDK Software, Inc. | 2000 · Accounts Payable | | 15,972.00 | | 17,267.62 | |
| 1/19/2001 | 3364 | Winstar | 2000 · Accounts Payable | | 1,665.45 | | 15,602.17 | |
| 1/22/2001 | | | -split- | Deposit | | 60,847.50 | 76,449.67 | |
| 1/22/2001 | 3365 | Castro, Anne | 2100 · Payroll Liabilities:2130 · Other:2132 · Flexible Benefit P | | 535.09 | | 75,914.58 | |
| 1/22/2001 | 3366 | Meyer, Nathan | 2100 · Payroll Liabilities:2130 · Other:2132 · Flexible Benefit P | | 28.27 | | 75,886.31 | |
| 1/22/2001 | 3367 | Real World Training | 6080 · Education | | 164 | | 75,722.31 | |
| 1/22/2001 | 3368 | Employers Association Inc. | 6080 · Education | | 610 | | 75,112.31 | |
| 1/22/2001 | 3369 | MN Child Support Payment Ctr | 2100 · Payroll Liabilities:2130 · Other:2138 · Child Support | | 2,465.26 | | 72,647.05 | |
| 1/23/2001 | | | -split- | Deposit | | 10,147.50 | 82,794.55 | |
| 1/23/2001 | 999999 | Associated Bank | 2500 · Note Payable-Equipment | | 45,320.02 | | 37,474.53 | Condifition of the SBA Loan |
| 1/23/2001 | 999999 | Associated Bank | 1800 · Intangibles | | 6,720.00 | | 30,754.53 | was payoff of Equipment Note) |
| 1/24/2001 | | | 1800 · Intangibles | Deposit | | 250,000.00 | 280,754.53 | SBA Loan Proceeds |
| 1/24/2001 | | | 1499 · Undeposited Funds | Deposit | | 9,334.50 | 290,089.03 | |
| 1/24/2001 | 3370 | Weber & Deegan | 2000 · Accounts Payable | | 9,467.50 | | 280,621.53 | |
| 1/24/2001 | 999999 | Aetna Retirement Services | -split- | | 17,711.18 | | 262,910.35 | |
| 1/24/2001 | 999999 | Aetna Retirement Services | -split- | | 17,221.75 | | 245,688.60 | |
| 1/24/2001 | 999999 | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Payroll Taxes:2123 · MN Withh | | 7,916.00 | | 237,772.60 | |

Confidential 10/15/2003

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 1/24/2001 | 999999 | Associated Bank | -split- (Dec. 2000 Payroll Taxes) | | 115,914.72 | | 121,857.88 |
| 1/25/2001 | | | -split- | Deposit | | 23,345.00 | 145,202.88 |
| 1/25/2001 | DD | Ian Alliott Consulting, Inc. | 2520 · Note Payable-Ian Alliott | | 3,166.81 | | 142,036.07 |
| 1/25/2001 | DD | Ian Colville | 2530 · Noncompete Payable | | 6,145.83 | | 135,890.24 |
| 1/25/2001 | DD | Jason Walker | 2530 · Noncompete Payable | | 6,145.83 | | 129,744.41 |
| 1/25/2001 | DD | Savage, Carol | 6245 · Office expense | | 407.5 | | 129,336.91 |
| 1/26/2001 | DD | Castro, Anne | 6245 · Office expense | | 160 | | 129,176.91 |
| 1/26/2001 | DD | Deutsch, Denis J | 6350 · Travel | | 1,377.61 | | 127,799.30 |
| 1/26/2001 | DD | Meyer, Nathan | 6245 · Office expense | | 511.41 | | 127,287.89 |
| 1/26/2001 | DD | Vaccaro, Nancy G. | 6245 · Office expense | | 928.95 | | 126,358.94 |
| 1/26/2001 | DD | Lassiter, Brian | 6245 · Office expense | | 1,498.66 | | 124,860.28 |
| 1/26/2001 | DD | Wiborg, Liesl K. | 6245 · Office expense | | 275.38 | | 124,584.90 |
| 1/26/2001 | DD | Billington, Kathleen M | 6245 · Office expense | | 223.84 | | 124,361.06 |
| 1/26/2001 | DD | Scott, Mark | 6245 · Office expense | | 35 | | 124,326.06 |
| 1/26/2001 | DD | Savage, Carol | 6245 · Office expense | | 407.5 | | 123,918.56 |
| 1/26/2001 | DD | Hockin, Robert | 6245 · Office expense | | 123.32 | | 123,795.24 |
| 1/26/2001 | DD | Jason Walker | 6245 · Office expense | | 23 | | 123,772.24 |
| 1/26/2001 | DD | Beckwith, Kenn C. | 6235 · Marketing | | 2,295.07 | | 121,477.17 |
| 1/26/2001 | DD | Casper, Paul A | 6235 · Marketing | | 491.26 | | 120,985.91 |
| 1/26/2001 | DD | Peterson, David D. | 6245 · Office expense | | 65.78 | | 120,920.13 |
| 1/26/2001 | DD | Taylor, Jill K | 6245 · Office expense | | 270.77 | | 120,649.36 |
| 1/26/2001 | | Krengel, Steven E | -split- | | 4,215.22 | | 116,434.14 |
| 1/26/2001 | | Lyng, Robert C. | -split- | | 1,872.77 | | 114,561.37 |
| 1/26/2001 | | Mishra, Lingaraj | -split- | | 3,155.56 | | 111,405.81 |
| 1/26/2001 | | Padgett, David W | -split- | | 4,741.79 | | 106,664.02 |
| 1/26/2001 | | Peterson, David D. | -split- | | 1,325.12 | | 105,338.90 |
| 1/26/2001 | | Rohde, Susan M. | -split- | | 3,327.01 | | 102,011.89 |
| 1/26/2001 | | Sohns, Brad | -split- | | 3,380.08 | | 98,631.81 |
| 1/26/2001 | | Ubl, Michele | -split- | | 2,690.34 | | 95,941.47 |
| 1/26/2001 | | Castro, Anne | -split- | | 1,035.98 | | 94,905.49 |
| 1/26/2001 | | Logajan, George M. | -split- | | 2,684.36 | | 92,221.13 |
| 1/26/2001 | | Stratton, Tammy J.V. | -split- | | 1,467.44 | | 90,753.69 |
| 1/26/2001 | | Beckwith, Kenn C. | -split- | | 4,635.43 | | 86,118.26 |
| 1/26/2001 | | Casper, Paul A | -split- | | 3,060.13 | | 83,058.13 |
| 1/26/2001 | | Martin, Mark A. | -split- | | 2,245.67 | | 80,812.46 |
| 1/26/2001 | | Porter, Jill M | -split- | | 1,939.81 | | 78,872.65 |
| 1/26/2001 | | Billington, Kathleen M | -split- | | 1,575.98 | | 77,296.67 |
| 1/26/2001 | | Clark, Brian A | -split- | | 1,420.74 | | 75,875.93 |
| 1/26/2001 | | Deutsch, Denis J | -split- | | 3,119.70 | | 72,756.23 |
| 1/26/2001 | | Hockin, Robert | -split- | | 2,411.06 | | 70,345.17 |
| 1/26/2001 | | Johnson, Richard L. | -split- | | 2,015.83 | | 68,329.34 |
| 1/26/2001 | | Kavie, Andrew J | -split- | | 1,437.85 | | 66,891.49 |
| 1/26/2001 | | Kellerman, Ron | -split- | | 1,606.35 | | 65,285.14 |
| 1/26/2001 | | Lassiter, Brian | -split- | | 2,513.17 | | 62,771.97 |
| 1/26/2001 | | Lund, Eric J. | -split- | | 3,025.59 | | 59,746.38 |
| 1/26/2001 | | Menzel, Kelvin J | -split- | | 2,836.73 | | 56,909.65 |
| 1/26/2001 | | Meyer, Nathan | -split- | | 2,448.47 | | 54,461.18 |
| 1/26/2001 | | Savage, Carol | -split- | | 1,945.02 | | 52,516.16 |
| 1/26/2001 | | Scott, Mark | -split- | | 1,578.14 | | 50,938.02 |

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance | |
|---|---|---|---|---|---|---|---|---|
| 1/26/2001 | | Smith, Gordon | -split- | | 2,606.26 | | 48,331.76 | |
| 1/26/2001 | | Taylor, Jill K | -split- | | 1,361.02 | | 46,970.74 | |
| 1/26/2001 | | Vaccaro, Nancy G. | -split- | | 1,193.07 | | 45,777.67 | |
| 1/26/2001 | | Webster, Leon C. | -split- | | 3,085.42 | | 42,692.25 | |
| 1/26/2001 | | Wiborg, Liesl K. | -split- | | 1,941.74 | | 40,750.51 | |
| | | | | | | | | When EMC became aware |
| 1/29/2001 | | | -split- | Deposit | | 42,330.00 | 83,080.51 | |
| 1/29/2001 | | | 1499 · Undeposited Funds | Deposit | | 8,280.00 | 91,360.51 | |
| 1/30/2001 | 3372 | Blue Cross Blue Shield | 6020 · Employee benefits:6023 · Medical Premiums | | 2,372.00 | | 88,988.51 | |
| 1/30/2001 | 3373 | Ciber | 2000 · Accounts Payable | VOID: | | | 88,988.51 | |
| 1/30/2001 | 3374 | Fortis Benefits Insurance Company | 6020 · Employee benefits:6022 · Life/Disability Ins. Premiums | | 2,275.55 | | 86,712.96 | |
| 1/30/2001 | 3375 | Qwest | -split- | VOID: | | | 86,712.96 | |
| 1/30/2001 | 3376 | St. Paul Fire & Marine Insurance C | 1350 · Prepaid Expenses | VOID: | | | 86,712.96 | |
| 1/30/2001 | 3377 | Guardian | 6020 · Employee benefits:6021 · Dental Premiums | | 1,100.78 | | 85,612.18 | |
| 1/30/2001 | 3378 | Krengel, Steven E | 2100 · Payroll Liabilities:2130 · Other:2132 · Flexible Benefit P | | 2,032.90 | | 83,579.28 | |
| 1/30/2001 | 3379 | Menzel, Kelvin J | 2100 · Payroll Liabilities:2130 · Other:2132 · Flexible Benefit P | | 99.36 | | 83,479.92 | |
| 1/30/2001 | 3380 | 430 Kickernick Assoc. Ltd. Ptnshp. | 1350 · Prepaid Expenses | | 3,272.80 | | 80,207.12 | |
| 1/30/2001 | 3381 | Qwest | 6340 · Telephone | | 155.95 | | 80,051.17 | |
| 2/1/2001 | | | 1499 · Undeposited Funds | Deposit | | 10,360.00 | 90,411.17 | |
| 2/1/2001 | 999999 | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Payroll taxes:2123 · MN Withh | | 6,878.00 | | 83,533.17 | |
| 2/5/2001 | | | -split- | Deposit | | 7,645.64 | 91,178.81 | |
| 2/5/2001 | 3382 | Rohde, Susan M. | 2600 · Loans From Principles:2602 · Susan M. Rohde | | 4,000.00 | | 87,178.81 | |
| 2/5/2001 | 3383 | MN Dept. of Economic Security | 6010 · Payroll taxes | | 213.08 | | 86,965.73 | |
| 2/6/2001 | 0 | Lyng, Robert C. | -split- | | 4,543.95 | | 82,421.78 | |
| 2/6/2001 | 1000000 | Casper, Paul A | 6999 · Uncategorized Expenses | | | | 82,421.78 | |
| 2/9/2001 | | | -split- | Deposit | | 33,682.55 | 116,104.33 | |
| 2/9/2001 | | | 1499 · Undeposited Funds | Deposit | | 11,212.50 | 127,316.83 | |
| 2/9/2001 | DD | Taylor, Jill K | 6245 · Office expense | | 182.45 | | 127,134.38 | |
| 2/9/2001 | DD | Vaccaro, Nancy G. | 6245 · Office expense | | 286.28 | | 126,848.10 | |
| 2/9/2001 | DD | Hockin, Robert | 6245 · Office expense | | 39.5 | | 126,808.60 | |
| 2/9/2001 | DD | Billington, Kathleen M | 6350 · Travel | | 1,479.49 | | 125,329.11 | |
| 2/9/2001 | DD | Clark, Brian A | 6245 · Office expense | | 297.5 | | 125,031.61 | |
| 2/9/2001 | DD | Scott, Mark | 6245 · Office expense | | 166.59 | | 124,865.02 | |
| 2/9/2001 | DD | Lassiter, Brian | 6245 · Office expense | | 146.54 | | 124,718.48 | |
| 2/9/2001 | DD | Casper, Paul A | 6235 · Marketing | | 799.94 | | 123,918.54 | |
| 2/9/2001 | DD | Wiborg, Liesl K. | 6245 · Office expense | | 127 | | 123,791.54 | |
| 2/9/2001 | DD | Smith, Gordon | 6245 · Office expense | | 139.77 | | 123,651.77 | |
| 2/9/2001 | DD | Johnson, Richard L. | 6110 · Automobile Expense | | 100 | | 123,551.77 | |
| 2/9/2001 | DD | Webster, Leon C. | 6245 · Office expense | | 435.68 | | 123,116.09 | |
| 2/9/2001 | | Castro, Anne | -split- | | 1,250.55 | | 121,865.54 | |
| 2/9/2001 | | Krengel, Steven E | -split- | | 4,118.69 | | 117,746.85 | |
| 2/9/2001 | | Logajan, George M. | -split- | | 3,302.20 | | 114,444.65 | |
| 2/9/2001 | | Padgett, David W | -split- | | 5,080.50 | | 109,364.15 | |
| 2/9/2001 | | Peterson, David D. | -split- | | 3,065.63 | | 106,298.52 | |
| 2/9/2001 | | Sohns, Brad | -split- | | 4,368.11 | | 101,930.41 | |
| 2/9/2001 | | Ubl, Michele | -split- | | 3,244.59 | | 98,685.82 | |
| 2/9/2001 | | Rohde, Susan M. | -split- | | 3,327.02 | | 95,358.80 | |
| 2/9/2001 | | Mishra, Lingaraj | -split- | | 3,155.56 | | 92,203.24 | |
| 2/9/2001 | | Martin, Mark A. | -split- | | 2,245.66 | | 89,957.58 | |

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 2/9/2001 | | Porter, Jill M | -split- | | 1,939.63 | | 86,017.75 |
| 2/9/2001 | | Beckwith, Kenn C. | -split- | | 4,252.43 | | 83,765.32 |
| 2/9/2001 | | Billington, Kathleen M | -split- | | 3,505.94 | | 80,259.38 |
| 2/9/2001 | | Casper, Paul A | -split- | | 3,060.12 | | 77,199.26 |
| 2/9/2001 | | Clark, Brian A | -split- | | 2,756.10 | | 74,443.16 |
| 2/9/2001 | | Deutsch, Denis J | -split- | | 3,119.69 | | 71,323.47 |
| 2/9/2001 | | Hockin, Robert | -split- | | 3,111.90 | | 68,211.57 |
| 2/9/2001 | | Johnson, Richard L. | -split- | | 2,015.85 | | 66,195.72 |
| 2/9/2001 | | Kellerman, Ron | -split- | | 1,606.34 | | 64,589.38 |
| 2/9/2001 | | Lassiter, Brian | -split- | | 2,513.17 | | 62,076.21 |
| 2/9/2001 | | Lund, Eric J. | -split- | | 3,025.61 | | 59,050.60 |
| 2/9/2001 | | Menzel, Kelvin J | -split- | | 3,285.07 | | 55,765.53 |
| 2/9/2001 | | Meyer, Nathan | -split- | | 2,588.01 | | 53,177.52 |
| 2/9/2001 | | Savage, Carol | -split- | | 2,096.33 | | 51,081.19 |
| 2/9/2001 | | Scott, Mark | -split- | | 2,953.50 | | 48,127.69 |
| 2/9/2001 | | Smith, Gordon | -split- | | 2,806.80 | | 45,320.89 |
| 2/9/2001 | | Stratton, Tammy J.V. | -split- | | 2,583.28 | | 42,737.61 |
| 2/9/2001 | | Taylor, Jill K | -split- | | 1,361.03 | | 41,376.58 |
| 2/9/2001 | | Vaccaro, Nancy G. | -split- | | 1,193.08 | | 40,183.50 |
| 2/9/2001 | | Webster, Leon C. | -split- | | 3,512.95 | | 36,670.55 |
| 2/9/2001 | | Wiborg, Liesl K. | -split- | | 2,680.14 | | 33,990.41 |
| 2/9/2001 | 3384 | Kavie, Andrew J | -split- | | 1,437.86 | | 32,552.55 |
| 2/13/2001 | | | -split- | Deposit | | 93,822.50 | 126,375.05 |
| 2/14/2001 | | | -split- | Deposit | | 27,998.75 | 154,373.80 |
| 2/14/2001 | 3385 | American Express Corporate Servi | 2000 · Accounts Payable | | 1,729.08 | | 152,644.72 |
| 2/14/2001 | 3386 | AT&T | 2000 · Accounts Payable | | 460.78 | | 152,183.94 |
| 2/14/2001 | 3387 | Avaya Financial Services | 2000 · Accounts Payable | | 398.26 | | 151,785.68 |
| 2/14/2001 | 3388 | Martin Benefit Administrators | 2000 · Accounts Payable | | 130.2 | | 151,655.48 |
| 2/14/2001 | 3389 | Berry Coffee Company | 2000 · Accounts Payable | | 33.85 | | 151,621.63 |
| 2/14/2001 | 3390 | Ciber | 2000 · Accounts Payable | | 4,914.00 | | 146,707.63 |
| 2/14/2001 | 3391 | Conseco Finance Vendor Services | 2000 · Accounts Payable | | 292.04 | | 146,415.59 |
| 2/14/2001 | 3392 | D.J. Finn & Assoc. | 2000 · Accounts Payable | | 6,900.00 | | 139,515.59 |
| 2/14/2001 | 3393 | DFS Acceptance | 2000 · Accounts Payable | | 55.67 | | 139,459.92 |
| 2/14/2001 | 3394 | DS Capital, LLC | 2000 · Accounts Payable | | 207.4 | | 139,252.52 |
| 2/14/2001 | 3395 | Northwestern Mutual Life | 2000 · Accounts Payable | | 1,108.00 | | 138,144.52 |
| 2/14/2001 | 3396 | Peter Hines | 2000 · Accounts Payable | | 12,885.75 | | 125,258.77 |
| 2/14/2001 | 3397 | Red Design Organization | 2000 · Accounts Payable | | 2,260.00 | | 122,998.77 |
| 2/14/2001 | 3398 | United Investors | 6020 · Employee benefits:6022 · Life/Disability Ins. Premiums | | 31.15 | | 122,967.62 |
| 2/14/2001 | 3399 | Martin Benefit Administrators | 2000 · Accounts Payable | | 43.4 | | 122,924.22 |
| 2/14/2001 | 3400 | Pitney Bowes, Inc. | 2000 · Accounts Payable | | 7.99 | | 122,916.23 |
| 2/14/2001 | 3401 | Martin Benefit Administrators | 2000 · Accounts Payable | | 325 | | 122,591.23 |
| 2/14/2001 | 3402 | Winstar | 2000 · Accounts Payable | | 676.35 | | 121,914.88 |
| 2/14/2001 | 999999 | Aetna Retirement Services | 2100 · Payroll Liabilities:2110 · 401(k) Liabilities:2112 · Emplo | | 6,480.98 | | 115,433.90 |
| 2/14/2001 | 999999 | Aetna Retirement Services | 2100 · Payroll Liabilities:2110 · 401(k) Liabilities:2112 · Emplo | | 7,762.66 | | 107,671.24 |
| 2/14/2001 | 999999 | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Payroll taxes:2123 · MN Withh | | 8,386.00 | | 99,285.24 |
| 2/16/2001 | 1 | | 7200 · Interest Expense [split] | | 2,104.17 | | 97,181.07 |
| 2/16/2001 | 1 | | 7200 · Interest Expense [split] | | 1,260.00 | | 95,921.07 |
| 2/20/2001 | | | -split- | Deposit | | 10,630.00 | 106,551.07 |
| 2/23/2001 | | | -split- | Deposit | | 12,617.70 | 119,168.77 |

139

Confidential 10/15/2003

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

# 01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 2/23/2001 | DD | Vaccaro, Nancy G. | 6245 · Office expense | | 68 | | 119,100.77 |
| 2/23/2001 | DD | Wiborg, Liesl K. | 6245 · Office expense | | 211.03 | | 118,889.74 |
| 2/23/2001 | DD | Porter, Jill M | 6235 · Marketing | | 632.79 | | 118,256.95 |
| 2/23/2001 | DD | Deutsch, Denis J | 6350 · Travel | | 1,160.72 | | 117,096.23 |
| 2/23/2001 | DD | Billington, Kathleen M | 6350 · Travel | | 1,146.41 | | 115,949.82 |
| 2/23/2001 | DD | Scott, Mark | 6245 · Office expense | | 44.5 | | 115,905.32 |
| 2/23/2001 | DD | Clark, Brian A | 6245 · Office expense | | 174.02 | | 115,731.30 |
| 2/23/2001 | DD | Lassiter, Brian | 6245 · Office expense | | 751.41 | | 114,979.89 |
| 2/23/2001 | DD | Hockin, Robert | 6245 · Office expense | | 148.35 | | 114,831.54 |
| 2/23/2001 | DD | Savage, Carol | 6245 · Office expense | | 139.1 | | 114,692.44 |
| 2/23/2001 | DD | Taylor, Jill K | 6245 · Office expense | | 142.35 | | 114,550.09 |
| 2/23/2001 | 3406 | Vaccaro, Nancy G. | 2100 · Payroll Liabilities:2130 · Other:2132 · Flexible Benefit P | | 4,299.90 | | 110,250.19 |
| 2/23/2001 | | Billington, Kathleen M | -split- | | 1,575.97 | | 108,674.22 |
| 2/23/2001 | | Castro, Anne | -split- | | 1,035.97 | | 107,638.25 |
| 2/23/2001 | | Clark, Brian A | -split- | | 1,420.75 | | 106,217.50 |
| 2/23/2001 | | Deutsch, Denis J | -split- | | 3,119.70 | | 103,097.80 |
| 2/23/2001 | | Hockin, Robert | -split- | | 2,411.06 | | 100,686.74 |
| 2/23/2001 | | Johnson, Richard L. | -split- | | 2,015.83 | | 98,670.91 |
| 2/23/2001 | | Lassiter, Brian | -split- | | 2,513.17 | | 96,157.74 |
| 2/23/2001 | | Lund, Eric J. | -split- | | 3,025.60 | | 93,132.14 |
| 2/23/2001 | | Menzel, Kelvin J | -split- | | 2,836.73 | | 90,295.41 |
| 2/23/2001 | | Meyer, Nathan | -split- | | 2,448.47 | | 87,846.94 |
| 2/23/2001 | | Savage, Carol | -split- | | 1,945.02 | | 85,901.92 |
| 2/23/2001 | | Scott, Mark | -split- | | 1,578.14 | | 84,323.78 |
| 2/23/2001 | | Smith, Gordon | -split- | | 2,606.27 | | 81,717.51 |
| 2/23/2001 | | Taylor, Jill K | -split- | | 1,361.03 | | 80,356.48 |
| 2/23/2001 | | Vaccaro, Nancy G. | -split- | | 1,193.08 | | 79,163.40 |
| 2/23/2001 | | Webster, Leon C. | -split- | | 3,085.41 | | 76,077.99 |
| 2/23/2001 | | Wiborg, Liesl K. | -split- | | 2,137.52 | | 73,940.47 |
| 2/23/2001 | | Kellerman, Ron | -split- | | 1,606.35 | | 72,334.12 |
| 2/23/2001 | | Krengel, Steven E | -split- | | 5,329.23 | | 67,004.89 |
| 2/23/2001 | | Logajan, George M. | -split- | | 3,657.37 | | 63,347.52 |
| 2/23/2001 | | Padgett, David W | -split- | | 5,303.45 | | 58,044.07 |
| 2/23/2001 | | Peterson, David D. | -split- | | 3,226.14 | | 54,817.93 |
| 2/23/2001 | | Sohns, Brad | -split- | | 4,357.88 | | 50,460.05 |
| 2/23/2001 | | Stratton, Tammy J.V. | -split- | | 2,423.74 | | 48,036.31 |
| 2/23/2001 | | Ubl, Michele | -split- | | 2,795.08 | | 45,241.23 |
| 2/23/2001 | | Rohde, Susan M. | -split- | | 3,327.01 | | 41,914.22 |
| 2/23/2001 | | Mishra, Lingaraj | -split- | | 3,155.57 | | 38,758.65 |
| 2/23/2001 | | Beckwith, Kenn C. | -split- | | 4,252.43 | | 34,506.22 |
| 2/23/2001 | | Casper, Paul A | -split- | | 3,060.12 | | 31,446.10 |
| 2/23/2001 | | Marlin, Mark A. | -split- | | 2,245.67 | | 29,200.43 |
| 2/23/2001 | | Porter, Jill M | -split- | | 1,939.81 | | 27,260.62 |
| 2/23/2001 | | Casper, Paul A | -split- | VOID: | | | 27,260.62 |
| 2/23/2001 | 3404 | Kavle, Andrew J | -split- | | 1,437.86 | | 25,822.76 |
| 2/23/2001 | 3405 | Rodenberg, Anne M | -split- | | 1,533.96 | | 24,288.80 |
| 2/26/2001 | | | 1499 · Undeposited Funds | Deposit | | 16,065.00 | 40,353.80 |
| 2/26/2001 | 3407 | Diversified Construction | 6245 · Office expense | | 1,750.00 | | 38,603.80 |
| 2/26/2001 | 3408 | Hickstein, Jeffrey A. | 2510 · Note Payable-Hickstein | | 12,960.08 | | 25,643.72 |

Confidential 10/15/2003

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 2/28/2001 | DD | Jason Walker | 2530 · Noncompete Payable | | 6,145.83 | | 19,497.89 |
| 2/28/2001 | DD | Ian Colville | 2530 · Noncompete Payable | | 6,145.83 | | 13,352.06 |
| 2/28/2001 | DD | Ian Alliott Consulting, Inc. | 2520 · Note Payable-Ian Alliott | | 3,166.81 | | 10,185.25 |
| 2/28/2001 | 3409 | Smith, Gordon | 2100 · Payroll Liabilities:2130 · Other:2132 · Flexible Benefit P | | 505.32 | | 9,679.93 |
| 2/28/2001 | 3410 | Harold Arnold | 2100 · Payroll Liabilities:2130 · Other:2139 · Expense Reserve | | 540.47 | | 9,139.46 |
| 2/28/2001 | 2 | | 6240 · Miscellaneous | | | 278.23 | 9,417.69 |
| 3/1/2001 | 3411 | 430 Kickernick Assoc. Ltd. Ptnshp. | 6245 · Office expense | | 120 | | 9,297.69 |
| 3/2/2001 | DD | Associated Bank | 2540 · Note Payable - SBA | | 5,435.60 | | 3,862.09 |
| 3/6/2001 | | | -split- | Deposit | | 8,860.00 | 12,722.09 |
| 3/7/2001 | | | -split- | Deposit | | 36,121.22 | 48,843.31 |
| 3/9/2001 | | | 2600 · Loans From Principles:2602 | Deposit | | 45,000.00 | 93,843.31 |
| 3/9/2001 | DD | Krengel, Steven E | -split- | | 5,417.60 | | 88,425.71 |
| 3/9/2001 | DD | Logajan, George M. | -split- | | 3,674.73 | | 84,750.98 |
| 3/9/2001 | DD | Padgett, David W | -split- | VOID: | | | 84,750.98 |
| 3/9/2001 | DD | Peterson, David D. | -split- | | 2,892.36 | | 81,858.62 |
| 3/9/2001 | DD | Sohns, Brad | -split- | | 4,509.38 | | 77,349.24 |
| 3/9/2001 | DD | Stratton, Tammy J.V. | -split- | | 2,305.36 | | 75,043.88 |
| 3/9/2001 | DD | Ubl, Michele | -split- | | 2,888.98 | | 72,154.90 |
| 3/9/2001 | DD | Padgett, David W | -split- | | 5,391.43 | | 66,763.47 |
| 3/9/2001 | DD | Billington, Kathleen M | -split- | | 1,575.98 | | 65,187.49 |
| 3/9/2001 | DD | Castro, Anne | -split- | | 1,045.59 | | 64,141.90 |
| 3/9/2001 | DD | Clark, Brian A | -split- | | 1,420.74 | | 62,721.16 |
| 3/9/2001 | DD | Hockin, Robert | -split- | | 2,411.08 | | 60,310.08 |
| 3/9/2001 | DD | Johnson, Richard L. | -split- | | 2,015.84 | | 58,294.24 |
| 3/9/2001 | DD | Kellerman, Ron | -split- | VOID: VOID: | | | 58,294.24 |
| 3/9/2001 | DD | Lund, Eric J. | -split- | | 3,025.61 | | 55,268.63 |
| 3/9/2001 | DD | Menzel, Kelvin J | -split- | | 2,845.58 | | 52,423.05 |
| 3/9/2001 | DD | Meyer, Nathan | -split- | | 2,440.24 | | 49,982.81 |
| 3/9/2001 | DD | Rodenberg, Anne M | -split- | | 1,747.15 | | 48,235.66 |
| 3/9/2001 | DD | Savage, Carol | -split- | | 1,945.03 | | 46,290.63 |
| 3/9/2001 | DD | Scott, Mark | -split- | | 1,578.13 | | 44,712.50 |
| 3/9/2001 | DD | Smith, Gordon | -split- | | 2,606.26 | | 42,106.24 |
| 3/9/2001 | DD | Taylor, Jill K | -split- | | 1,361.02 | | 40,745.22 |
| 3/9/2001 | DD | Vaccaro, Nancy G. | -split- | | 1,144.14 | | 39,601.08 |
| 3/9/2001 | DD | Webster, Leon C. | -split- | | 3,085.43 | | 36,515.65 |
| 3/9/2001 | DD | Wiborg, Liesl K. | -split- | | 1,960.86 | | 34,554.79 |
| 3/9/2001 | DD | Kellerman, Ron | -split- | | 1,597.04 | | 32,957.75 |
| 3/9/2001 | DD | Wiborg, Liesl K. | -split- | Expense Reimbursement | 19.4 | | 32,938.35 |
| 3/9/2001 | DD | Johnson, Richard L. | 6110 · Automobile Expense | Expense Reimbursement | 100 | | 32,838.35 |
| 3/9/2001 | DD | Rodenberg, Anne M | -split- | Expense Reimbursement | 379.71 | | 32,458.64 |
| 3/9/2001 | DD | Castro, Anne | 6110 · Automobile Expense | Expense Reimbursement | 100 | | 32,358.64 |
| 3/9/2001 | DD | Smith, Gordon | -split- | Expense Reimbursement | 70.31 | | 32,288.33 |
| 3/9/2001 | DD | Taylor, Jill K | -split- | Expense Reimbursement | 300.16 | | 31,988.17 |
| 3/9/2001 | DD | Casper, Paul A | -split- | Expense Reimbursement | 1,037.24 | | 30,950.93 |
| 3/9/2001 | DD | Scott, Mark | -split- | | 1,322.00 | | 29,628.93 |
| 3/9/2001 | DD | Peterson, David D. | -split- | Expense Reserve payout | 8,122.79 | | 21,506.14 |
| 3/9/2001 | DD | Kellerman, Ron | 6080 · Education | Expense Reimbursement | 276 | | 21,228.14 |
| 3/9/2001 | DD | Casper, Paul A | -split- | | 3,060.12 | | 18,168.02 |
| 3/9/2001 | DD | Marlin, Mark A. | -split- | | 2,245.66 | | 15,922.36 |

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

# 01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance | |
|---|---|---|---|---|---|---|---|---|
| 3/9/2001 | DD | Porter, Jill M | -split- | | 1,939.81 | | 13,982.55 | |
| 3/9/2001 | 3412 | Henney, John M | -split- | | 1,871.49 | | 12,111.06 | |
| 3/9/2001 | 3413 | Kavie, Andrew J | -split- | | 1,437.85 | | 10,673.21 | |
| 3/12/2001 | 3414 | MN Child Support Payment Ctr | 2100 · Payroll Liabilities:2130 · Othe | Andrew Kavie - Case No. | 1,232.63 | | 9,440.58 | |
| 3/12/2001 | 1 | | 1499 · Undeposited Funds | | | 9,451.65 | 18,892.23 | |
| 3/14/2001 | | | -split- | Deposit | | 26,905.00 | 45,797.23 | |
| 3/14/2001 | 3416 | Rohde, Susan M. | 2600 · Loans From Principles:2602 | Repayment | 5,000.00 | | 40,797.23 | |
| 3/14/2001 | 3417 | Vettel Consulting | 5003 · Sub-contract Consultant | Balance Forward | 586.96 | | 40,210.27 | |
| 3/15/2001 | | | -split- | Deposit | | 45,632.50 | 85,842.77 | |
| 3/15/2001 | 3418 | Philadelphia Insurance Companies | 2000 · Accounts Payable | | 2,374.99 | | 83,467.78 | |
| 3/15/2001 | 3419 | Blue Cross Blue Shield | 6020 · Employee benefits:6023 · Me | Group Number T6334-A0 | 8,446.00 | | 75,021.78 | |
| 3/15/2001 | 3420 | Fortis Benefits Insurance Company | 6020 · Employee benefits:6022 · Lif | Policy No. 4026213-1 | 2,631.47 | | 72,390.31 | |
| 3/15/2001 | 3421 | Guardian | 6020 · Employee benefits:6021 · De | Group ID 00 334462 | 881.47 | | 71,508.84 | |
| 3/15/2001 | 999999 | Aetna Retirement Services | 2100 · Payroll Liabilities:2110 · 401( | Employee Contributions fc | 6,577.06 | | 64,931.78 | |
| 3/15/2001 | 999999 | Aetna Retirement Services | 2100 · Payroll Liabilities:2110 · 401( | Employee Contribution foi | 8,209.73 | | 56,722.05 | |
| 3/15/2001 | 999999 | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Pay | 2725109 | 8,180.00 | | 48,542.05 | |
| 3/15/2001 | 999999 | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Pay | 2725109 | 6,658.00 | | 41,884.05 | |
| 3/16/2001 | | | -split- | Deposit | | 26,750.00 | 68,634.05 | |
| 3/16/2001 | | | | Deposit | | | 68,634.05 | |
| 3/19/2001 | | | -split- | Deposit | | 33,557.50 | 102,191.55 | |
| 3/19/2001 | | | 1499 · Undeposited Funds | Deposit | | 1,000.00 | 103,191.55 | |
| 3/19/2001 | | | 2100 · Payroll Liabilities:2110 · 401( | Deposit | | 38,377.93 | 141,569.48 | 401K Loan Repayment |
| 3/19/2001 | 3422 | Aetna Retirement Services | 2100 · Payroll Liabilities:2110 · 401( | Payoff for Harrison Nelsor | 38,377.93 | | 103,191.55 | |
| 3/19/2001 | 3423 | Anderson Agency | 2000 · Accounts Payable | | 3,158.75 | | 100,032.80 | |
| 3/19/2001 | 3424 | Ciber | 2000 · Accounts Payable | | 5,889.00 | | 94,143.80 | |
| 3/19/2001 | 3425 | SDK Software, Inc. | 2000 · Accounts Payable | | 26,015.00 | | 68,128.80 | |
| 3/19/2001 | 3426 | Stacey Larson | 2000 · Accounts Payable | | 175 | | 67,953.80 | |
| 3/19/2001 | 3427 | 430 Kickernick Assoc. Ltd. Ptnshp. | 2000 · Accounts Payable | | 6,819.24 | | 61,134.56 | |
| 3/19/2001 | 3428 | John Henney | 5003 · Sub-contract Consultant | Sub-Contract Wells Fargc | 14,458.50 | | 46,676.06 | |
| 3/19/2001 | 3429 | Rohde, Susan M. | 2600 · Loans From Principles:2602 | Loan Repay | 10,000.00 | | 36,676.06 | |
| 3/19/2001 | 999999 | Associated Bank | 2540 · Note Payable - SBA | SBA March payment | 5,435.60 | | 31,240.46 | |
| 3/20/2001 | | | -split- | Deposit | | 11,830.70 | 43,071.16 | |
| 3/21/2001 | | | -split- | VOID: | | | 43,071.16 | |
| 3/21/2001 | 3433 | Agilli, Inc. | 2000 · Accounts Payable | Invoice No. B1-9129 | 1,424.73 | | 41,646.43 | |
| 3/21/2001 | 3434 | Ambassador Press, Inc. | 2000 · Accounts Payable | | 2,181.12 | | 39,465.31 | |
| 3/21/2001 | 3435 | AT&T | 2000 · Accounts Payable | | 111.04 | | 39,354.27 | |
| 3/21/2001 | 3436 | Bartels Consulting | 2000 · Accounts Payable | | 350 | | 39,004.27 | |
| 3/21/2001 | 3437 | Berry Coffee Company | 2000 · Accounts Payable | | 111.21 | | 38,893.06 | |
| 3/21/2001 | 3438 | D.J. Finn & Assoc. | 2000 · Accounts Payable | VOID: | | | 38,893.06 | |
| 3/21/2001 | 3439 | DFS Acceptance | 2000 · Accounts Payable | | 138.82 | | 38,754.24 | |
| 3/21/2001 | 3440 | Insty Prints | 2000 · Accounts Payable | Invoices: 20603, 20766 | 36.1 | | 38,718.14 | |
| 3/21/2001 | 3441 | Office Depot | 2000 · Accounts Payable | | 98.47 | | 38,619.67 | |
| 3/21/2001 | 3442 | Qwest | 2000 · Accounts Payable | | 375.79 | | 38,243.88 | |
| 3/21/2001 | 3443 | Qwest Dex | 2000 · Accounts Payable | Invoice No: 0081972640( | 89.78 | | 38,154.10 | |
| 3/21/2001 | 3444 | Spangler Design Team | 2000 · Accounts Payable | | 941.24 | | 37,212.86 | |
| 3/21/2001 | 3445 | American Express Corporate Servi | 2000 · Accounts Payable | Corp. Acct. No. 3785-169 | 164 | | 37,048.86 | |
| 3/21/2001 | 3446 | Castro, Anne | 2100 · Payroll Liabilities:2130 · Othe | Flex Benefits Reimburserr | 123.28 | | 36,925.58 | |
| 3/21/2001 | 3447 | Meyer, Nathan | 2100 · Payroll Liabilities:2130 · Othe | Flex Benefits Reimburserr | 384.62 | | 36,540.96 | |
| 3/21/2001 | 3448 | Webster, Leon C. | 2100 · Payroll Liabilities:2130 · Othe | Flex Benefits Reimbursme | 780 | | 35,760.96 | |

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 3/21/2001 | 3449 | Rohde, Susan M. | 2100 · Payroll Liabilities:2130 · Othe | Flex Benefits Reimburser | 1,170.00 | | 34,590.96 |
| 3/21/2001 | 3450 | Mishra, Lingaraj | 2100 · Payroll Liabilities:2130 · Othe | Flex Benefits Reimburser | 803.89 | | 33,787.07 |
| 3/21/2001 | 3451 | D.J. Finn & Assoc. | 5003 · Sub-contract Consultant | FORT13 | 6,100.00 | | 27,687.07 |
| 3/22/2001 | | | 2600 · Loans From Principles:2602 | Deposit | | 60,000.00 | 87,687.07 |
| 3/23/2001 | DD | Krengel, Steven E | -split- | | 5,585.23 | | 82,101.84 |
| 3/23/2001 | DD | Logajan, George M. | -split- | | 3,716.58 | | 78,385.26 |
| 3/23/2001 | DD | Padgett, David W | -split- | | 5,080.50 | | 73,304.76 |
| 3/23/2001 | DD | Peterson, David D. | -split- | | 2,759.30 | | 70,545.46 |
| 3/23/2001 | DD | Sohns, Brad | -split- | | 4,002.17 | | 66,543.29 |
| 3/23/2001 | DD | Stratton, Tammy J.V. | -split- | | 1,641.38 | | 64,901.91 |
| 3/23/2001 | DD | Ubl, Michele | -split- | | 1,784.97 | | 63,116.94 |
| 3/23/2001 | DD | Mishra, Lingaraj | -split- | VOID: | | | 63,116.94 |
| 3/23/2001 | DD | Mishra, Lingaraj | -split- | | 3,155.56 | | 59,961.38 |
| 3/23/2001 | DD | Billington, Kathleen M | -split- | | 1,575.97 | | 58,385.41 |
| 3/23/2001 | DD | Castro, Anne | -split- | | 1,045.60 | | 57,339.81 |
| 3/23/2001 | DD | Clark, Brian A | -split- | | 1,420.74 | | 55,919.07 |
| 3/23/2001 | DD | Hockin, Robert | -split- | | 2,411.07 | | 53,508.00 |
| 3/23/2001 | DD | Kellerman, Ron | -split- | | 1,527.34 | | 51,980.66 |
| 3/23/2001 | DD | Lund, Eric J. | -split- | | 3,025.59 | | 48,955.07 |
| 3/23/2001 | DD | Menzel, Kelvin J | -split- | | 2,845.58 | | 46,109.49 |
| 3/23/2001 | DD | Meyer, Nathan | -split- | | 2,440.24 | | 43,669.25 |
| 3/23/2001 | DD | Rodenberg, Anne M | -split- | | 1,561.32 | | 42,107.93 |
| 3/23/2001 | DD | Savage, Carol | -split- | | 1,945.02 | | 40,162.91 |
| 3/23/2001 | DD | Scott, Mark | -split- | | 1,578.14 | | 38,584.77 |
| 3/23/2001 | DD | Smith, Gordon | -split- | | 2,606.27 | | 35,978.50 |
| 3/23/2001 | DD | Taylor, Jill K | -split- | | 1,229.25 | | 34,749.25 |
| 3/23/2001 | DD | Vaccaro, Nancy G. | -split- | | 1,144.15 | | 33,605.10 |
| 3/23/2001 | DD | Webster, Leon C. | -split- | | 3,085.42 | | 30,519.68 |
| 3/23/2001 | DD | Wiborg, Liesl K. | -split- | | 1,941.74 | | 28,577.94 |
| 3/23/2001 | DD | Johnson, Richard L. | -split- | | 2,015.83 | | 26,562.11 |
| 3/23/2001 | DD | Taylor, Jill K | -split- | Employee Expense reimb | 142.87 | | 26,419.24 |
| 3/23/2001 | DD | Wiborg, Liesl K. | -split- | Employee Expense Reiml | 267.16 | | 26,152.08 |
| 3/23/2001 | DD | Billington, Kathleen M | -split- | Employee Expense Reiml | 779.25 | | 25,372.83 |
| 3/23/2001 | DD | Scott, Mark | -split- | Employee Expense Reiml | 204.24 | | 25,168.59 |
| 3/23/2001 | DD | Hockin, Robert | -split- | Expense Reimbursement | 306.09 | | 24,862.50 |
| 3/23/2001 | DD | Clark, Brian A | -split- | Employee Expense Reiml | 724.51 | | 24,137.99 |
| 3/23/2001 | DD | Ian Colville | -split- | Expense Reimbursement | 151.82 | | 23,986.17 |
| 3/23/2001 | DD | Vaccaro, Nancy G. | -split- | Employee Expense Reiml | 691.44 | | 23,294.73 |
| 3/23/2001 | DD | Rodenberg, Anne M | -split- | Employee Expense Reiml | 362.47 | | 22,932.26 |
| 3/23/2001 | DD | Marlin, Mark A. | -split- | | 2,245.68 | | 20,686.58 |
| 3/23/2001 | DD | Porter, Jill M | -split- | | 1,939.82 | | 18,746.76 |
| 3/23/2001 | DD | Casper, Paul A | -split- | | 3,060.12 | | 15,686.64 |
| 3/23/2001 | 3430 | Henney, John M | -split- | | 2,642.66 | | 13,043.98 |
| 3/23/2001 | 3431 | Kavle, Andrew J | -split- | | 1,437.85 | | 11,606.13 |
| 3/23/2001 | 3432 | Kavle, Andrew J | 6110 · Automobile Expense | Employee Expense Reiml | 203.5 | | 11,402.63 |
| 3/27/2001 | | | -split- | Deposit | | 52,043.50 | 63,446.13 |
| 3/27/2001 | 3452 | MN Child Support Payment Ctr | 2100 · Payroll Liabilities:2130 · Othe | Andrew Kavle - Case No. | 1,232.63 | | 62,213.50 |
| 3/27/2001 | 3453 | Mute Chianti/Jason Walker/Ian Col | 6240 · Miscellaneous | Restructure fee | 600 | | 61,613.50 |
| 3/28/2001 | | | 1499 · Undeposited Funds | Deposit | | 14,700.00 | 76,313.50 |

Register: 1000 · Associated Bank
From 01/01/2001 through 03/31/2001
Sorted by: Date, Type, Number/Ref

## 01.2001 thru 03.2001 Check Regi

| Date | Number | Payee | Account | Memo | | Payment | Deposit | Balance |
|---|---|---|---|---|---|---|---|---|
| 3/28/2001 | 999999 | MN Dept. of Revenue | 2100 · Payroll Liabilities:2120 · Payi | | 2725109 | 6,613.00 | | 69,700.50 |
| 3/29/2001 | | | 1499 · Undeposited Funds | Deposit | | | 19,600.00 | 89,300.50 |
| 3/30/2001 | | | 1499 · Undeposited Funds | Deposit | | | 10,810.00 | 100,110.50 |

**Jan 30 thru March 31 Unemcumbered Funds 9,756.92**

# EXHIBIT D-6

## Rohde Loans/Investments

## ROHDE LOANS/INVESTMENTS

| Date | Source | | Amount |
|---|---|---|---|
| 3/9/2001 | Susan M. Rohde | | 45,000.00 |
| 3/22/2001 | Susan M. Rohde | | 60,000.00 |
| 11/29/2001 | Rohde Sisters Farm | | 39,000.00 |
| 12/3/2001 | Susan M. Rohde | | 1,000.00 |
| 1/10/2002 | Susan M. Rohde | | 20,000.00 |
| 2/7/2002 | Susan M. Rohde | | 25,000.00 |
| 2/15/2002 | Susan M. Rohde | | 20,000.00 |
| 2/21/2002 | Susan M. Rohde | | 55,000.00 |
| 2/26/2002 | Susan M. Rohde | | 10,000.00 |
| 3/7/2002 | Susan M. Rohde | | 13,000.00 |
| 4/19/2002 | Susan M. Rohde | | 9,000.00 |
| 5/15/2002 | Susan M. Rohde | | 10,000.00 |
| 5/17/2002 | Susan M. Rohde | | 2,000.00 |
| 7/12/2002 | Susan M. Rohde | | 3,000.00 |
| 7/16/2002 | Susan M. Rohde | | 4,000.00 |
| 7/17/2002 | Opal Rohde | | 20,000.00 |
| 7/17/2002 | Opal Rohde | | 19,000.00 |
| 7/19/2002 | Susan M. Rohde | | 1,000.00 |
| 8/12/2002 | Susan M. Rohde | | 700.00 |
| 9/11/2002 | Susan M. Rohde | | 17,000.00 |
| 9/13/2002 | Susan M. Rohde | | 4,000.00 |
| 10/4/2002 | Susan M. Rohde | | 12,500.00 |
| 1/6/2003 | Susan M. Rohde | | 13,518.00 |
| | | Total | 403,718.00 |

Doc. #199698

**EXHIBIT D-7**

**TechArch Payroll Levels**

TECHARCH PAYROLL LEVELS



**EXHIBIT D-8**

**Payment Allocations for First Quarter 2001 for TFRP Purposes Only**

| | Conservative Pro-IRS Allocations | Middle Ground | Aggressive Pro-Taxpayer Allocations |
|---|---|---|---|
| 2001-1 Tax per IRS[1] | $276,109.10 | $276,109.10 | $276,109.10 |
| Less pre-responsible person status taxes: | | | |
| January 12 payroll[2] | $ 47,668.93 | $ 47,668.93 | $ 47,668.93 |
| January 26 payroll[3] | 43,324.12 | 43,324.12 | 43,324.12 |
| February 6 payroll | --- | --- | 3,676.36 |
| February 9 payroll[4] | | | 50,046.82 |
| Reduction for pre-responsible person status taxes | $ 90,993.05 | $ 90,993.05 | $144,716.23 |
| Employment taxes during responsible person status | $185,116.05 | $185,116.05 | $131,392.87 |
| Less Application of Loan Proceeds: | | | |
| Up to full net proceeds[5] | --- | --- | 131,392.87 |
| 01/26/01 payment to IRS[6] | 24,921.67 | 72,590.60 | --- |
| Leaves employment taxes of | $160,194.38 | $112,525.45 | $ 0.00 |
| Times trust fund tax %[7] | 77.73% | 77.73% | N/A |
| Approx. beginning trust tax liability | $124,519.09 | $ 87,466.03 | |
| Less allocation of later payments | | | |
| 200203 overpayment per IRS[8] | 2,626.43 | 2,626.43 | |
| 04/30/01 Form 1120 overpayment treated by IRS as payment on 200103[9] | 2,331.08 | 2,331.08 | |
| 08/27/01 payment treated by IRS as 200009 penalty payment[10] | 657.96 | 657.96 | |
| $15,000 installment agreement payments 08/30/01, 09/12/01, 10/11/01, 11/14/01, 12/14/01[11] | 75,000.00 | 75,000.00 | |
| $15,000 installment agreement payment 01/14/02 | 15,000.00 | 6,850.56 | |
| $15,000 installment agreement payment 02/15/02 | 15,000.00 | --- | |
| $15,000 installment agreement payment 03/18/02 | 13,903.62 | --- | |
| Total Payments | | | |
| Leaves[12] | | | |

[1]Form 94
Form 941. Th
[2]Th
the
entire
made Her
of wilfulness
loan be credited
Ms. Rohde only. Su
Taxpayer realizes that

under which the CFO plainly was a responsible person in 2000 and the first quarter of 2001, and it was his deceitful conduct, not any fault of Ms. Rohde's, that caused the problems.

[6]The payments to the IRS actually made by TechArch on January 26, 2001, were credited, pursuant to the CFO's direction, against TechArch's December 2000 employment tax obligations. See Section II.F. Not coincidentally, the CFO clearly was a responsible person with respect to those obligations. The loan proceeds that the CFO used to reduce his own TFRP exposure were the direct result of his deceit of Ms. Rohde and others. For purposes of TFRP only, due to this deceit and to the fact that Ms. Rohde and her family partnership are repaying the Bank in full for the portion of this loan not repaid by TechArch, these actual payments to the IRS must be allocated to reduce the employment taxes (trust fund and non-trust fund alike) about which Ms. Rohde had some knowledge. The most conservative approach would include the January 12 payroll taxes of $47,668.93 because Ms. Rohde had been informed that a portion of those taxes would be paid out of the proceeds. The middle ground approach would credit these payments 100% against payroll taxes arising after the loan was made. Because the taxes attributable to the January 12 and January 26 payrolls already have been subtracted, the payments of $115,914.72 are netted, so that the conservative approach leaves $24,921.67 (the full payment less the taxes from the January 12 and January 26 payrolls) to credit against responsible person era payroll taxes and the middle ground approach leaves $72,590.60 (the full payment less the taxes from the January 26 payroll) to credit. If the Service takes the position that the January 12 and January 26 payroll taxes contribute to Ms. Rohde's TFRP exposure, then the amount of the January 26 payment to the IRS that reduces that exposure must be correspondingly increased.

[7]This is the percentage of trust fund taxes of total taxes per IRS.

[8]See bottom of Exhibit D-1.

[9]Slodov, Elmore, and Kenagy plainly require crediting all payments against TFRP exposure, for TFRP purposes only.

[10]Same explanation as footnote 9.

[11]All payments under the installment payment agreement are also covered by footnote 9. IRS has conceded that $22,500 of those payments (though they are later ones) should be applied against 200103 TFRP. See Exhibit D-1.

[12]The 200103 TFRP liability is completely eliminated under all three approaches. The approaches differ, however, in how much of the $211,500 in installment agreement payments are soaked up to eliminate the 200103 TFRP. The conservative, pro-IRS allocations soak up $118,903.62, leaving $92,596.38 to offset TFRP in 200206 and 200209. The middle ground allocations soak up $81,850.56, leaving $129,649.44 to offset TFRP in 200206 and 200209. The aggressive, pro-taxpayer allocations soak up nothing, leaving the full $211,500 to offset TFRP in 200206 and 200209. Note, too, that these three approaches are not mutually exclusive. For example, following the aggressive, pro-taxpayer approach regarding when Ms. Rohde became a responsible person (February 10), but taking the middle ground position that only the payments actually made to the IRS on January 26, 2001, and not the entire net loan proceeds may be taken into account, would result in soaking up $41,759.03 less in installment agreement payments than under the middle ground for a total application of $40,091.53 leaving $171,408.47 to offset later TFRP.

# EXHIBIT D-9

## IRS Allocations of Installment Agreement Payments

| Date | Amount | IRS Allocated to |
|---|---|---|
| 8/30/01 | $ 8,345.78 | 2nd qtr 2000 penalty and interest |
| 8/30/01 | 4,161.41 | 4th qtr 2000 penalty |
| 8/30/01 | 2,492.81 | 2000 940 |
| 9/12/01 | 10,053.72 | 4th qtr 2000 penalty and interest |
| 9/12/01 | 4,946.28 | January 2001 tax |
| 10/11/01 | 15,000.00 | January 2001 tax |
| 11/14/01 | 15,000.00 | January 2001 tax |
| 12/14/01 | 15,000.00 | January 2001 tax |
| 1/14/02 | 15,000.00 | January 2001 tax |
| 2/15/02 | 15,000.00 | January 2001 tax |
| 3/18/02 | 15,000.00 | January-February 2001 tax |
| 4/16/02 | 15,000.00 | February 2001 tax |
| 5/16/02 | 15,000.00 | February 2001 tax |
| 6/14/02 | 15,000.00 | February 2001 tax |
| 7/22/02 | 15,000.00 | February 2001 tax |
| 12/11/02 | 2,626.43 | March 2002 penalty and interest |
| 12/11/02 | 4,873.57 | April 2002 tax |
| 2/4/03 | 7,500.00 | April 2002 tax |
| 2/28/03 | 7,500.00 | April-May 2002 tax |
| 6/3/03 | 4,500.00 | July 2002 trust tax |
| 7/1/03 | 4,500.00 | July 2002 trust tax |

Doc. #: 322766

**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**

Date:
September 01, 2005
Person to Contact:
Kathleen M. Kelm
Telephone Number:
(651) 312-7972
FAX Number:
651-312-8050
Employee Identification Number:
41-03451
Refer Reply to:
Form 843 Claim

Susan M Rohde
1944 E River Ter
Minneapolis, MN 55414-3672

**CERTIFIED MAIL**

Dear Ms. Rohde:

We have considered your request for a refund of $7350.82 and abatement of $210,142.37 assessed against you for the tax periods ended March 31, 2001, June 30, 2002 and September 30, 2002. We assessed this amount under Internal Revenue Code (IRC) section 6672 because TechArch, Inc. did not pay the Federal Employment Tax(es) due for the tax period(s) shown above. This is your legal notice that your claim for refund and abatement is disallowed. Your claim has not produced any information that was not already considered in your previous appeal.

If you do not accept our conclusion, you may request reconsideration with the Internal Revenue Service's local office of Appeals. You should make the request for an Appeals conference within 30 days of the date of this letter. A request for an Appeals conference should describe the reasons you do not agree with our determination and should contain identifying information regarding the tax liability you wish to appeal. You should provide a statement containing your view of the facts. Please mail your request for an Appeals conference to:

Internal Revenue Service
Attn: Kathleen Kelm Stop 5900
30 E. 7th Street, Suite 1222
St. Paul, MN 55101

If you wish to bring suit or proceedings for recovery of any tax, penalties, and other moneys that were paid and for which this notice of disallowance is issued, you may do so by filing suit with either the United States District Court having jurisdiction or the United States Court of Federal Claims. The law permits you to do so within two years of the mailing date of this letter. You are not required to go to Appeals prior to filing suit. Please



**Letter 3784 (Rev 10-2003)**
Catalog Number 37173M

note that Appeals review of a disallowed claim does not extend the two-year period for filing suit; however, it may be extended by mutual agreement.

For any unpaid section 6672 liability that arises from periods beginning or transactions occurring after December 31, 1998, the Internal Revenue Service is required to suspend most of its collection activities if you file a proper lawsuit seeking a refund of those amounts listed on your disallowed refund claim for the section 6672 liability. While the Internal Revenue Service is prohibited from collecting the unpaid portion of your liability by levy, the limitation period for the Internal Revenue Service to collect this liability is also suspended, pursuant to IRC section 6331(i)(5).

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely,

John S. Head
Technical Services Group Manager

Department of the Treasury
**Internal Revenue Service**
CINCINNATI, OH 45999-0010

Date of this notice: OCT. 4, 2004
Taxpayer Identifying Number 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
Form: CVL PEN Tax Period: JUNE 30, 2002

For assistance you may call us at:
1-800-829-8374

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445

WE CHARGED YOU A PENALTY FOR NOT PAYING EMPLOYMENT TAX

ACCORDING TO OUR RECORDS, YOU HAVE NOT PAID THE EMPLOYMENT TAXES THAT YOU WERE RESPONSIBLE FOR WITHHOLDING ON THE FOLLOWING TAX ACCOUNT(S).

| EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED | EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED |
|---|---|---|---|---|---|
| 41-1841273 | 941 | JUNE 30, 2002 | | | |

THE LAW ALLOWS US TO CHARGE A PENALTY IF YOU DON'T COLLECT, ACCOUNT FOR, OR PAY OVER EMPLOYMENT TAXES. THE PENALTY IS THE AMOUNT OF UNPAID EMPLOYMENT TAXES WITHHELD FROM EMPLOYEES. WE USUALLY REFER TO THESE TAXES AS "TRUST FUND TAXES." THEREFORE, WE CALL THE PENALTY THE "TRUST FUND RECOVERY PENALTY."

WE FIGURED THE PENALTY AND INTEREST YOU OWE AS FOLLOWS:

| | |
|---|---|
| PENALTY | $81,469.18 |
| INTEREST FIGURED TO OCT. 4, 2004 | .00 |
| TOTAL AMOUNT DUE | $81,469.18 |

IF YOU AGREE WITH OUR FIGURES, PLEASE PAY THE AMOUNT SHOWN ABOVE BY OCT. 25, 2004 TO AVOID FURTHER INTEREST CHARGES.

IF YOU DON'T AGREE, THE LAW ALLOWS YOU TO FILE SUIT FOR REFUND. TO DO SO, YOU MUST:

-PAY THE WITHHELD TAX FOR ONE EMPLOYEE FOR ONE QUARTER OF LIABILITY; AND

-FILE A CLAIM FOR REFUND ON FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT, FOR THE AMOUNT PAID BY NOV. 3, 2004. HOWEVER, WE WILL CHARGE INTEREST ON ANY AMOUNT YOU DON'T PAY BY OCT. 25, 2004.

IF YOU WANT US TO SUSPEND COLLECTION OF THE PENALTY WHILE THE SUIT IS PENDING BEFORE THE COURT, YOU MUST:

-POST A BOND WITH THE INTERNAL REVENUE SERVICE FOR ONE AND A HALF TIMES THE BALANCE (THE PENALTY AMOUNT SHOWN ABOVE MINUS THE AMOUNT YOU PAID) BY NOV. 3, 2004.

HOWEVER, IF WE DETERMINE THAT THE COLLECTION OF THE AMOUNT DUE IS IN JEOPARDY, WE MAY COLLECT IT IMMEDIATELY WITHOUT WAITING UNTIL NOV. 3, 2004.

CINCINNATI SERVICE CENTER 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 TAX PERIOD: JUNE 30, 2002

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

RETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
UR TELEPHONE NUMBER BEST TIME TO CALL
) -

AMOUNT YOU OWE..................$81,469.18
LESS PAYMENTS NOT INCLUDED. $____________
PAY ADJUSTED AMOUNT........ $____________

618

W

200438 17254-658-52011-4

INTERNAL REVENUE SERVICE
CINCINNATI, OH 45999-0010

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445



501849856 CW ROHD 55 0 200206 670 00008146918

Form **843**
(Rev. November 2002)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

*Do not use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

| | |
|---|---|
| Name of claimant<br>**Susan M. Rohde** | Your SSN or ITIN<br>**501 : 84 : 9856** |
| Address (number, street, and room or suite no.)<br>**1944 East River Terrace** | Spouse's SSN or ITIN<br>: : |
| City or town, state, and ZIP code<br>**Minneapolis, MN 55414-3672** | Employer identification number (EIN)<br>: |
| Name and address shown on return if different from above | Daytime telephone number<br>( **612** ) **316-0010** |

1 Period. Prepare a separate Form 843 for each tax period
From **04** / **01** / **02** to **06** / **30** / **02**

2 Amount to be refunded or abated $ **67.73**

3a Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ **6672**

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

**The IRS assessed trust fund recovery penalty ("TFRP") of $81,469.18 on October 4, 2004. A copy of the notice of assessment is attached as Exhibit A.**

**The assessment relates to the trust fund taxes of TechArch, Inc., EIN 41-1841273 ("TechArch"). A copy of the TechArch Payroll Summary for the second quarter of 2002 is attached as Exhibit B. As shown on Exhibit B, Brian A. Clark was a TechArch employee whose trust fund taxes totaled $67.73, consisting of income tax withholding of $30.00, Social Security tax of $30.58, and Medicare tax of $7.15. Taxpayer paid $67.73 of TFRP on June 17, 2005, directing that the entire payment be applied to pay in full the trust fund taxes of Brian A. Clark, as shown in the cover letter accompanying payment, a copy of which is attached as Exhibit C. Taxpayer believes that this claim must be allowed, and that no additional amount of TFRP is owed by Taxpayer for the above-referenced period, for the reasons set forth in the attached Exhibit D, Grounds for Inapplicability of the Trust Fund Recovery Penalty for the above-referenced period, and sub-exhibits D1 - D-2.**

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Susan M Rohde — 6/17/2005
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) — Date

Signature — Date

**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.** Cat. No. 10180R Form **843** (Rev. 11-2002)

# EXHIBIT A

## Second Quarter of 2002

## Notice of Assessment

Department of the Treasury
Internal Revenue Service
CINCINNATI, OH 45999-0010

Date of this notice: OCT. 4, 2004
Taxpayer Identifying Number 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
Form: CVL PEN Tax Period: JUNE 30, 2002

For assistance you may call us at:

1-800-829-8374

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445

WE CHARGED YOU A PENALTY FOR NOT PAYING EMPLOYMENT TAX

ACCORDING TO OUR RECORDS, YOU HAVE NOT PAID THE EMPLOYMENT TAXES THAT YOU WERE RESPONSIBLE FOR WITHHOLDING ON THE FOLLOWING TAX ACCOUNT(S).

| EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED | EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED |
|---|---|---|---|---|---|
| 41-1841273 | 941 | JUNE 30, 2002 | | | |

THE LAW ALLOWS US TO CHARGE A PENALTY IF YOU DON'T COLLECT, ACCOUNT FOR, OR PAY OVER EMPLOYMENT TAXES. THE PENALTY IS THE AMOUNT OF UNPAID EMPLOYMENT TAXES WITHHELD FROM EMPLOYEES. WE USUALLY REFER TO THESE TAXES AS "TRUST FUND TAXES." THEREFORE, WE CALL THE PENALTY THE "TRUST FUND RECOVERY PENALTY."

WE FIGURED THE PENALTY AND INTEREST YOU OWE AS FOLLOWS:

| | |
|---|---|
| PENALTY | $81,469.18 |
| INTEREST FIGURED TO OCT. 4, 2004 | .00 |
| TOTAL AMOUNT DUE | $81,469.18 |

IF YOU AGREE WITH OUR FIGURES, PLEASE PAY THE AMOUNT SHOWN ABOVE BY OCT. 25, 2004 TO AVOID FURTHER INTEREST CHARGES.

IF YOU DON'T AGREE, THE LAW ALLOWS YOU TO FILE SUIT FOR REFUND. TO DO SO, YOU MUST:

-PAY THE WITHHELD TAX FOR ONE EMPLOYEE FOR ONE QUARTER OF LIABILITY; AND

-FILE A CLAIM FOR REFUND ON FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT, FOR THE AMOUNT PAID BY NOV. 3, 2004. HOWEVER, WE WILL CHARGE INTEREST ON ANY AMOUNT YOU DON'T PAY BY OCT. 25, 2004.

IF YOU WANT US TO SUSPEND COLLECTION OF THE PENALTY WHILE THE SUIT IS PENDING BEFORE THE COURT, YOU MUST:

-POST A BOND WITH THE INTERNAL REVENUE SERVICE FOR ONE AND A HALF TIMES THE BALANCE (THE PENALTY AMOUNT SHOWN ABOVE MINUS THE AMOUNT YOU PAID) BY NOV. 3, 2004.

HOWEVER, IF WE DETERMINE THAT THE COLLECTION OF THE AMOUNT DUE IS IN JEOPARDY, WE MAY COLLECT IT IMMEDIATELY WITHOUT WAITING UNTIL NOV. 3, 2004.

CINCINNATI SERVICE CENTER 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

TAX PERIOD: JUNE 30, 2002

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

RETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY

YOUR TELEPHONE NUMBER BEST TIME TO CALL

( ) -

AMOUNT YOU OWE..................$81,469.18

LESS PAYMENTS NOT INCLUDED. $____________

PAY ADJUSTED AMOUNT........ $____________

618

W

200438

17254-658-52011-4

INTERNAL REVENUE SERVICE
CINCINNATI, OH 45999-0010

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445



501849856 CW ROHD 55 0 200206 670 00008146918

# EXHIBIT B

## TechArch Payroll Summary

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Beckwith, Kenn C. | Billington, Kathleen M | Clark, Brian A |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Salary | 4,433.94 | 0.00 | 0.00 |
| Salary-Consultants | 0.00 | 15,346.17 | 0.00 |
| Bonus | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 0.00 | 807.73 | 0.00 |
| PTO payout | 0.00 | 0.00 | 493.20 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 4,433.94 | 16,153.90 | 493.20 |
| Deductions from Gross Pay | | | |
| Dental Ins. | 0.00 | -77.56 | 0.00 |
| Employee 401(k) 1 | 0.00 | -920.78 | 0.00 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | 0.00 |
| Medical AND Dental (combined) | 0.00 | 0.00 | 0.00 |
| Medical Ins. | 0.00 | -284.34 | 0.00 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | 0.00 | -1,282.68 | 0.00 |
| Adjusted Gross Pay | 4,433.94 | 14,871.22 | 493.20 |
| Taxes Withheld | | | |
| Federal Withholding | 0.00 | -2,436.00 | -30.00 |
| Medicare Employee | -64.29 | -228.99 | -7.15 |
| Social Security Employee | -274.91 | -979.11 | -30.58 |
| MN - Withholding | 0.00 | 0.00 | -17.00 |
| Total Taxes Withheld | -339.20 | -3,644.10 | -84.73 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | 0.00 | -30.40 | 0.00 |
| Total Deductions from Net Pay | 0.00 | -30.40 | 0.00 |
| **Net Pay** | **4,094.74** | **11,196.72** | **408.47** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 25.60 | 0.00 | 0.00 |
| Medicare Company | 64.29 | 228.99 | 7.15 |
| Social Security Company | 274.91 | 979.11 | 30.58 |
| MN - Unemployment Company | 11.97 | 0.00 | 1.33 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **376.77** | **1,208.10** | **39.06** |

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Deutsch, Denis J | Gregg, John | Henney, John M |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Salary | 11,183.41 | 0.00 | 0.00 |
| Salary-Consultants | 0.00 | 21,538.44 | 35,269.22 |
| Bonus | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 0.00 | 807.73 | 1,884.61 |
| PTO payout | 0.00 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 11,183.41 | 22,346.17 | 37,153.83 |
| Deductions from Gross Pay | | | |
| Dental Ins. | 0.00 | -77.56 | -247.94 |
| Employee 401(k) 1 | 0.00 | -3,230.78 | -2,116.17 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | -53.34 | -151.48 |
| Medical AND Dental (combined) | 0.00 | 0.00 | 0.00 |
| Medical Ins. | 0.00 | -284.34 | -2,224.39 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | 0.00 | -3,646.02 | -4,739.98 |
| Adjusted Gross Pay | 11,183.41 | 18,700.15 | 32,413.85 |
| Taxes Withheld | | | |
| Federal Withholding | -1,253.00 | -3,472.00 | -5,355.00 |
| Medicare Employee | -162.16 | -318.00 | -500.69 |
| Social Security Employee | -693.37 | -1,359.72 | -2,140.86 |
| MN - Withholding | -574.00 | -1,085.00 | -1,729.00 |
| Total Taxes Withheld | -2,682.53 | -6,234.72 | -9,725.55 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | -58.48 |
| STD/LTD Ins. (After-tax) | 0.00 | -144.74 | -207.99 |
| Total Deductions from Net Pay | 0.00 | -144.74 | -266.47 |
| Net Pay | 8,500.88 | 12,320.69 | 22,421.83 |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 162.16 | 318.00 | 500.69 |
| Social Security Company | 693.37 | 1,359.72 | 2,140.86 |
| MN - Unemployment Company | 30.19 | 10.93 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 885.72 | 1,688.65 | 2,641.55 |

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Hetland, Steve T | Johnson, Richard L. | Kaschner, Dan |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Salary | 21,538.44 | 0.00 | 0.00 |
| Salary-Consultants | 0.00 | 22,076.95 | 0.00 |
| Bonus | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 1,884.61 | 807.73 | 0.00 |
| PTO payout | 0.00 | 0.00 | 2,076.80 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 23,423.05 | 22,884.68 | 2,076.80 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -247.94 | -77.56 | 0.00 |
| Employee 401(k) 1 | -2,153.83 | -1,324.61 | 0.00 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | 0.00 |
| Medical AND Dental (combined) | 0.00 | 0.00 | 0.00 |
| Medical Ins. | -1,650.95 | -347.34 | 0.00 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -4,052.72 | -1,749.51 | 0.00 |
| Adjusted Gross Pay | 19,370.33 | 21,135.17 | 2,076.80 |
| Taxes Withheld | | | |
| Federal Withholding | -2,485.00 | -3,703.00 | -147.00 |
| Medicare Employee | -312.10 | -325.67 | -30.11 |
| Social Security Employee | -1,334.49 | -1,392.50 | -128.76 |
| MN - Withholding | -980.00 | -1,155.00 | -67.00 |
| Total Taxes Withheld | -5,111.59 | -6,576.17 | -372.87 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -143.04 | -150.47 | 0.00 |
| Total Deductions from Net Pay | -143.04 | -150.47 | 0.00 |
| Net Pay | **14,115.70** | **14,408.53** | **1,703.93** |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 312.10 | 325.67 | 30.11 |
| Social Security Company | 1,334.49 | 1,392.50 | 128.76 |
| MN - Unemployment Company | 11.87 | 7.79 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **1,658.46** | **1,725.96** | **158.87** |

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Kavie, Andrew J | Krengel, Steven E | Lassiter, Brian |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| **Gross Pay** | | | |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 22,615.39 | 21,230.76 | 11,760.00 |
| Bonus | 0.00 | 11,533.15 | 0.00 |
| Medical Benefit Offset | 1,884.61 | 0.00 | 0.00 |
| PTO payout | 0.00 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| **Total Gross Pay** | 24,500.00 | 32,763.91 | 11,760.00 |
| **Deductions from Gross Pay** | | | |
| Dental Ins. | -247.94 | 0.00 | 0.00 |
| Employee 401(k) 1 | 0.00 | -1,273.84 | 0.00 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | -307.68 | 0.00 |
| Flex. Benefit Plan | 0.00 | -76.92 | 0.00 |
| Medical AND Dental (combined) | 0.00 | -542.54 | 0.00 |
| Medical Ins. | -1,623.44 | 0.00 | 0.00 |
| MN Child Support Payment Ctr | -4,510.12 | 0.00 | 0.00 |
| **Total Deductions from Gross Pay** | -6,381.50 | -2,200.98 | 0.00 |
| **Adjusted Gross Pay** | 18,118.50 | 30,562.93 | 11,760.00 |
| **Taxes Withheld** | | | |
| Federal Withholding | -4,879.00 | -6,418.00 | -1,099.00 |
| Medicare Employee | -328.12 | -461.64 | -170.52 |
| Social Security Employee | -1,402.97 | -1,973.88 | -729.12 |
| MN - Withholding | -1,526.00 | -958.00 | -497.00 |
| **Total Taxes Withheld** | -8,136.09 | -9,811.52 | -2,495.64 |
| **Deductions from Net Pay** | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -170.68 | -90.30 | 0.00 |
| **Total Deductions from Net Pay** | -170.68 | -90.30 | 0.00 |
| **Net Pay** | **9,811.73** | **20,661.11** | **9,264.36** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 0.00 | 0.00 | 42.56 |
| Medicare Company | 328.12 | 461.64 | 170.52 |
| Social Security Company | 1,402.97 | 1,973.88 | 729.12 |
| MN - Unemployment Company | 4.33 | 0.00 | 31.75 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | **1,735.42** | **2,435.52** | **973.95** |

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Logajan, George M. | Rodenberg, Anne M | Rohde, Susan M. |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Salary | 0.00 | 13,407.66 | 18,576.93 |
| Salary-Consultants | 33,653.83 | 0.00 | 0.00 |
| Bonus | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 807.73 | 807.73 | 230.78 |
| PTO payout | 0.00 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 34,461.56 | 14,215.39 | 18,807.71 |
| Deductions from Gross Pay | | | |
| Dental Ins. | 0.00 | 0.00 | -33.24 |
| Employee 401(k) 1 | -2,840.39 | -2,800.00 | -1,114.61 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | -140.00 | -135.00 |
| Medical AND Dental (combined) | 0.00 | 0.00 | 0.00 |
| Medical Ins. | 0.00 | -253.61 | -148.86 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -2,840.39 | -3,193.61 | -1,431.71 |
| Adjusted Gross Pay | 31,621.17 | 11,021.78 | 17,376.00 |
| Taxes Withheld | | | |
| Federal Withholding | -7,819.00 | -1,232.00 | -3,562.00 |
| Medicare Employee | -499.69 | -200.42 | -268.12 |
| Social Security Employee | -2,136.61 | -856.95 | -1,146.41 |
| MN - Withholding | -2,226.00 | -560.00 | -1,011.00 |
| Total Taxes Withheld | -12,681.30 | -2,849.37 | -5,987.53 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | -2,057.67 |
| STD/LTD Ins. (After-tax) | -245.49 | -105.66 | -132.95 |
| Total Deductions from Net Pay | -245.49 | -105.66 | -2,190.62 |
| **Net Pay** | **18,694.38** | **8,066.75** | **9,197.85** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 499.69 | 200.42 | 268.12 |
| Social Security Company | 2,136.61 | 856.95 | 1,146.41 |
| MN - Unemployment Company | 0.00 | 27.82 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **2,636.30** | **1,085.19** | **1,414.53** |

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Savage, Carol | Scott, Mark | Smith, Gordon |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 27,461.56 | 0.00 | 33,653.83 |
| Bonus | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 807.73 | 0.00 | 807.73 |
| PTO payout | 0.00 | 2,188.18 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 28,269.29 | 2,188.18 | 34,461.56 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -143.66 | 0.00 | -170.10 |
| Employee 401(k) 1 | -1,647.66 | 0.00 | -2,840.39 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -673.12 | 0.00 | 0.00 |
| Medical AND Dental (combined) | 0.00 | 0.00 | 0.00 |
| Medical Ins. | -1,175.74 | 0.00 | -1,041.95 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -3,640.18 | 0.00 | -4,052.44 |
| Adjusted Gross Pay | 24,629.11 | 2,188.18 | 30,409.12 |
| Taxes Withheld | | | |
| Federal Withholding | -4,562.00 | -365.00 | -7,455.00 |
| Medicare Employee | -381.01 | -31.73 | -482.12 |
| Social Security Employee | -1,629.16 | -135.67 | -2,061.47 |
| MN - Withholding | -1,461.00 | -121.00 | -2,135.00 |
| Total Taxes Withheld | -8,033.17 | -653.40 | -12,133.59 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -159.88 | 0.00 | -198.49 |
| Total Deductions from Net Pay | -159.88 | 0.00 | -198.49 |
| **Net Pay** | **16,436.06** | **1,534.78** | **18,077.04** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 381.01 | 31.73 | 482.12 |
| Social Security Company | 1,629.16 | 135.67 | 2,061.47 |
| MN - Unemployment Company | 0.53 | 5.91 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | **2,010.70** | **173.31** | **2,543.59** |

7:19 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
April through June 2002

| | Webster, Leon C. | Wiborg, Liesl K. | TOTAL |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Salary | 0.00 | 28,269.22 | 97,409.60 |
| Salary-Consultants | 36,346.17 | 0.00 | 280,952.32 |
| Bonus | 0.00 | 0.00 | 11,533.15 |
| Medical Benefit Offset | 0.00 | 807.73 | 12,346.45 |
| PTO payout | 0.00 | 0.00 | 4,758.18 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 36,346.17 | 29,076.95 | 406,999.70 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -77.56 | -77.56 | -1,478.62 |
| Employee 401(k) 1 | -3,634.61 | -1,715.52 | -27,613.19 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex - Child Care | 0.00 | 0.00 | -307.68 |
| Flex. Benefit Plan | 0.00 | 0.00 | -1,229.86 |
| Medical AND Dental (combined) | 0.00 | 0.00 | -542.54 |
| Medical Ins. | 0.00 | -284.34 | -9,319.30 |
| MN Child Support Payment Ctr | 0.00 | 0.00 | -4,510.12 |
| Total Deductions from Gross Pay | -3,712.17 | -2,077.42 | -45,001.31 |
| Adjusted Gross Pay | 32,634.00 | 26,999.53 | 361,998.39 |
| Taxes Withheld | | | |
| Federal Withholding | -6,335.00 | -5,707.00 | -68,314.00 |
| Medicare Employee | -525.89 | -416.37 | -5,714.79 |
| Social Security Employee | -2,248.65 | -1,780.33 | -24,435.52 |
| MN - Withholding | -1,974.00 | -1,677.00 | -19,753.00 |
| Total Taxes Withheld | -11,083.54 | -9,580.70 | -118,217.31 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | -2,116.15 |
| STD/LTD Ins. (After-tax) | -265.23 | -156.46 | -2,201.78 |
| Total Deductions from Net Pay | -265.23 | -156.46 | -4,317.93 |
| **Net Pay** | **21,285.23** | **17,262.37** | **239,463.15** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 0.00 | 0.00 | 68.16 |
| Medicare Company | 525.89 | 416.37 | 5,714.79 |
| Social Security Company | 2,248.65 | 1,780.33 | 24,435.52 |
| MN - Unemployment Company | 0.00 | 0.00 | 144.42 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **2,774.54** | **2,196.70** | **30,362.89** |

**EXHIBIT C**

**Cover Letter with Payment**

LOMMEN NELSON
LAW FIRM
LOMMEN, NELSON, COLE & STAGEBERG, P.A.

2000 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

(612) 339-8131
National Toll-Free (800) 752-4297
FAX (612) 339-8064

John P. James
Attorney at Law

Minneapolis Office
Web Site: www.lommen.com
E-mail Address:JPJAMES@LOMMEN.COM
(612) 336-9317

Grandview Professional Building, Suite 210
400 South Second Street
Hudson, Wisconsin 54016

(715) 386-8217
Twin City Line (651) 436-8085
FAX (715) 386-8219

June 17, 2005

**Certified Mail, Return Receipt Requested**

Department of the Treasury
Internal Revenue Service
Cincinnati, OH 45999-0010

Re: Susan M. Rohde, 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

Payment on Trust Fund Recovery Penalty for Unpaid Unemployment Taxes of TechArch, Inc., 41-1841273 for Tax Periods Ended March 31, 2001, June 30, 2002, and September 30, 2002

Dear Sir/Madam:

Enclosed please find a Power of Attorney authorizing me to represent Susan M. Rohde in this matter and three checks of Susan M. Rohde, each in partial payment of trust fund recovery penalty relating to the employment taxes of TechArch, Inc. for the quarters ended March 31, 2001, June 30, 2002 and September 30, 2002, respectively. Also enclosed are copies of your assessment notices dated October 4, 2004 with respect to the above-referenced trust fund recovery penalty for each of the above-referenced periods.

Check No. 6159 in the amount of $793.00 is in full payment of the portion of the penalty relating to the withheld income taxes for TechArch employee John M. Henney for the tax period ended March 31, 2001. (The entire assessment for that tax period relates to withheld income taxes).

Check No. 6160 in the amount of $67.73 is in full payment of the portion of the penalty relating to the trust fund taxes for TechArch employee Brian A. Clark for the tax period ended June 30, 2002.

Check No. 6161 in the amount of $301.21 is in full payment of the portion of the penalty relating to the trust fund taxes for TechArch employee Denis J. Deutsch for the tax period ended

September 30, 2002.

The enclosed checks are to be allocated to the trust fund recovery penalty in the amounts and with respect to the employees and periods described above.

Sincerely,

John P. James

JPJ:dh
enclosures
cc: Susan M. Rohde

Doc. #: 316087

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6159

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 793.00

seven-hundred ninety-three and 00/100 DOLLARS

TARP
MEMO 1st QTR 2001 - re: w/h of John M Henney

Susan Rohde

⑈006159⑈ ⑆091000022⑆ 1202290907 70⑈

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6160

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 67.73

sixty-seven and 73/100 DOLLARS

TARP
MEMO 2nd QTR 2002 re: w/h BRIAN A. CLARK

Susan Rohde

⑈006160⑈ ⑆091000022⑆ 1202290907 70⑈

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6161

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 301.21

three-hundred one and 21/100 DOLLARS

TARP
MEMO 3RD QTR 2002 re: w/h of Denis J. Deutsch

Susan Rohde

⑈006161⑈ ⑆091000022⑆ 1202290907 70⑈

**Susan M. Rohde**
**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**
**Form 843, Claim for Refund and Request for Abatement**
**Trust Fund Recovery Penalty for Second Quarter 2002**

**Exhibit D**
**Grounds for Inapplicability of Trust Fund Recovery Penalty for Second Quarter of 2002**

**Table of Contents**

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- A. Origin of the Amount of TFRP Assessed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- B. Ms. Rohde's Status During the Second Quarter of 2002 and the Relation of Earlier Events to the Question of Her Liability for Second Quarter 2002 TFRP . . . . . . . 3
- C. Aftermath of 9-11 and Shrinking Business Caused Financial Distress in 2002 . . 4
- D. Employment Tax Penalties Incurred Due to Ms. Rohde's Good Faith Mistake . . 5
- E. Requested Payment Allocation with Respect to 2002-2 Trust Fund Taxes . . . . . . 5

III. Grounds for Inapplicability of Trust Fund Recovery Penalty for Second Quarter 2002. . . . . 6
- A. Requirements for TFRP Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
- B. The Federal Tax Deposit Penalties and Interest Paid in 2002 and After 200206 Must Be Allocated, for TFRP Purposes Only, to TechArch's Employment Taxes for the Second Quarter of 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
- C. The Installment Agreement Payments Must Be Allocated, for TFRP Purposes Only, to TechArch's Trust Fund Taxes for the Period During Which Ms. Rohde Was a Responsible Person, Except That Payments During the Second and Third Quarters of 2002 Must be Allocated as if They Were Current Employment Tax Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
- D. The TFRP Does Not Apply to the Extent that Payments on the Installment Payment Agreement Could Have Been Applied to Reduce TFRP Exposure Because the Service Is Estopped to Allocate the Payments Otherwise By Its Misleading Advice to Ms. Rohde . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
- E. The TFRP Does Not Apply Because Ms. Rohde Did Not Willfully Fail to Collect, Truthfully Account for or Pay Over the Trust Fund Taxes . . . . . . . . . . . . . . . . . . 9

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I.
## Introduction

This combination claim for refund and request for abatement relates to the assessment of trust fund recovery penalty under Internal Revenue Code Section 6672 ("TFRP") against Susan M. Rohde ("Rohde") for unpaid trust fund taxes of TechArch, Inc. ("TechArch") for the second quarter of 2002. The Service assessed the TFRP against Ms. Rohde for the first quarter of 2001 and the second and third quarters of 2002. TechArch has had no unpaid trust fund taxes for any other period during its existence to date. Ms. Rohde is contemporaneously filing claims for all three quarters for which the TFRP has been assessed against her. Ms. Rohde hereby requests that the three claims be consolidated and treated together by the Service and hereby incorporates by reference her claims with respect to the other two quarters.

Ms. Rohde has been TechArch CEO throughout its existence. TechArch began operating in 1996. It most recently paid salaries in 2003 and received revenue in 2004. TechArch has been dormant since that time. It is expected to never again have active operations unless a valuable market emerges for certain software it owns, which is not expected. TechArch has not been formally liquidated and dissolved, but it currently has no activity whatsoever. Ms. Rohde has moved on and is now employed by Wells Fargo Bank, N.A.

As CEO, Ms. Rohde was a logical person for the Service to pursue for the TFRP penalty. Nevertheless, Ms. Rohde has grounds to contest the TFRP assessments which have been made against her. This situation is factually extraordinary in six respects: reasonable lack of involvement of Ms. Rohde in TechArch's finances; nondisclosure to and deception of Ms. Rohde (and the TechArch Board) by its CFO, which enabled TechArch's financial problems to spiral completely out of control before Ms. Rohde and the Board even learned they existed; the end of the technology consulting boom; the aftermath of 9-11; insistence by the Service on TechArch making very large monthly payments on the past employment tax liability, which led Ms. Rohde to have TechArch continue making those payments instead of staying current in 2002, and the infusion of several hundred thousand dollars into TechArch by Ms. Rohde and her family members in an effort to enable it to permanently dig out of the hole its CFO's deception had dug for it. This strange combination of circumstances delays the point in 2001 at which Ms. Rohde became a responsible person and negates willfulness on her part after she became a responsible person.

The grounds for a determination that the TFRP does not apply for the second quarter of 2002 include:

(1) Ms. Rohde cannot be held personally responsible for trust fund taxes that arose prior to when she became a responsible person, which she contends was February 10, 2001, beyond the amount of TechArch's unencumbered funds at the time she became a responsible person, which she contends was zero (Section III.D. of first quarter 2001 claim, the importance of which here is to preserve later payments for allocation against second quarter 2002 employment

taxes);

(2) The full net proceeds of the SBA loan must be allocated, for TFRP purposes only, to TechArch's 2001-1 employment taxes (Section III.E. of first quarter 2001 claim, important here for the same reasons as (1) above);

(3) The federal tax deposit penalties paid must be allocated, for TFRP purposes only, to TechArch's trust fund taxes for the period in which paid (Section III.B);

(4) All payments under TechArch's installment payment agreement with the Service with respect to employment taxes must be allocated, for TFRP purposes only, to reduce TechArch's trust fund taxes for the period during which Ms. Rohde was a responsible person, except that payments during the second and third quarters of 2002 must be allocated as if they were current federal employment tax deposits (Section III.C.);

(5) The TFRP does not apply to the extent that payments on the installment payment agreement could have been applied to pay current employment taxes because the Service is equitably estopped to allocate the payments otherwise due to its misleading advice to Ms. Rohde (Section III.D.);

(6) The TFRP does not apply because Ms. Rohde did not willfully fail to collect, truthfully account for or pay over the trust fund taxes (Section III.E.).

## II.
## Facts

### A. Origin of the Amount of TFRP Assessed

The TFRP assessed for the second quarter was 2002 was $81,469.18. That consists of $24,942.18 in employee's share of FICA and $56,527.00 in withheld income tax, as shown on the last page of **Exhibit D-1**, IRS Position on Details of Unpaid Trust Fund Taxes.

### B. Ms. Rohde's Status During the Second Quarter of 2002 and the Relation of Earlier Events to the Question of Her Liability for Second Quarter 2002 TFRP

Ms. Rohde became a "responsible person" under Section 6672 on February 10, 2001, when TechArch had no unencumbered funds and continued to be a responsible person thereafter, including the full second quarter of 2002.

As is explained in depth in Ms. Rohde's claim with respect to first quarter 2001 TFRP, Ms. Rohde was kept in the dark regarding TechArch's deteriorating financial condition by TechArch's CFO. She did not realize there was a problem until the problem had become so huge that there ultimately turned out to be no financial recovery for TechArch. Key points about the

2001 situation for purposes of the question of second quarter 2002 TFRP liability include the CFO's wrongful deception of her regarding TechArch's financial condition; the proper application for TFRP purposes of the SBA Loan proceeds received on January 24, 2001; the Rohde loans and investments into TechArch following discovery of the problem with respect to federal employment taxes; the negotiation of an installment payment agreement with the Service that required TechArch to make payments of $15,000 per month on its past due employment taxes, commencing in August 2001; the payments made on the installment payment agreement, and the aftermath of 9-11.

## C. Aftermath of 9-11 and Shrinking Business Caused Financial Distress in 2002

The TFRP for the first quarter of 2001 and for both the second and third quarters of 2002 stand on completely different footings. The penalties in the first quarter of 2001 were directly due to the CFO's wrongdoing and arose exclusively due to events of which Ms. Rohde was reasonably unaware or, in the case of February and March, 2001 payrolls, reasonably unable to turn the situation around fast enough to avoid the problem.

The $15,000 per month installment payment agreement with the IRS was agreed upon in August 2001. No sooner had that happened than 9-11 occurred and TechArch immediately lost a significant amount of business. It also never got paid for about $250,000 in software development work it had done for a specific customer. The customer needed to fund the work intended to be done with the software and, in the aftermath of 9-11, could not get the funding. Consequently, TechArch never got paid. That loss of significant funds ultimately proved devastating.

TechArch staggered on, managing to keep current on its employment tax obligations and the installment payment agreement. TechArch experienced nearly four consecutive quarters of full employment tax compliance. As time passed though, the $15,000 monthly payment requirement on the back taxes quickly became exceedingly onerous.

TechArch's cash flow problems reached crisis proportions in March of 2002. TechArch was shrinking in size as its engagements were completed and were not replaced. This caused immediate serious cash flow problems due to the long lag time between employee work and payment for it. TechArch's bi-weekly payroll in the first and second quarters of 2002 slipped from about $80,000 at the beginning of the year to less than $60,000 for most of the second quarter. This was down from as high as $160,000 in the first quarter of 2001 and $120,000 in the third quarter of 2001.

Both March Federal tax deposits were slightly late, resulting in an assessment of penalties and interest of $2,626.43, which ultimately were paid on December 11, 2002 by the Service allocating part of a TechArch payment of $7,500 to that use. In April, 2002, the first Federal tax deposit was timely made, but the second was not made and this problem continued through September.

The problem was exacerbated by the fact that TechArch continued to make $15,000 per month payments under the installment payment agreement. These payments began in August, 2001 and ran through July of 2002, for total payments of $180,000 against TechArch's old Federal employment tax liabilities at a time when it was continuing to experience difficulties. As time passed and TechArch shrank, the $15,000 per month payments became increasingly onerous in relation to TechArch's size.

Very clearly, TechArch could have made its March Federal tax deposits on time had it not been paying the $15,000 per month. Moreover, TechArch would have been far better off in April, May, June and July had it chosen to pay the Service through the medium of Federal tax deposits instead of making payments on the installment payment agreement. Ms. Rohde was not well versed in how to deal with a delinquent employment tax situation and, operating in complete good faith, continued on behalf of TechArch making the $15,000 per month installment payments, in lieu of current federal tax deposits, until the money ran out.

### D. Employment Tax Penalties Incurred Due to Ms. Rohde's Good Faith Mistake

Ms. Rohde, operating in complete good faith based on advice from the Service, made payment of the increasingly onerous $15,000 per month installment payments on past due federal employment taxes a higher priority than staying current. Consequently, TechArch incurred federal tax deposit penalties of $2,583.61 in March 2002, which it ultimately paid on December 11, 2002.

Allocation, for TFRP purposes only, of that penalty, which TechArch incurred only because Ms. Rohde paid the Service for the wrong reason, to TechArch's employment taxes would reduce Ms. Rohde's TFRP exposure.

### E. Requested Payment Allocation with Respect to 2002-2 Trust Fund Taxes

Attached Exhibit D-2, Payment Allocations for second quarter 2002 for TFRP Purposes Only, shows payment allocations under three separate methodologies - a conservative, pro-IRS methodology, a middle ground methodology, and an aggressive, pro-taxpayer methodology. Under each of the latter two, Ms. Rohde very clearly has no TFRP for the second quarter of 2002.

Under the conservative, pro-IRS allocation methodology, Exhibit D-2 shows a TFRP of $14,420.80 for the second quarter of 2002. If the Service rejects the idea that earlier installment payments could reduce later TFRP exposure, the claimed TFRP would increase to $15,517.18. On the other hand, if the Service accepts that Ms. Rohde became a responsible person on February 10,2001, the TFRP for the second quarter of 2002 completely disappears.

Please note that these requested allocations are for TFRP purposes only. Ms. Rohde claims no right to determine how the Service should allocate these payments for purposes of determining what TechArch owes. She claims, for the reasons set forth in Section III, Grounds for Inapplicability of Trust Fund Recovery Penalty for Second Quarter 2002, that these payment

allocations must be made with respect only to determining her exposure to TFRP liability. Also, the payment allocations here are dependent on the payment allocations determined with respect to the first quarter 2001 trust fund recovery penalty issue, which are set forth in full in the refund claim with respect thereto. If these grounds are upheld by the Service or the courts, Ms. Rohde has no liability for second quarter 2002 TFRP.

Note also that, if the suggested allocations through the second quarter of 2002 are not fully accepted, the result will be that payments actually made subsequent thereto, credit for which is claimed in the refund claim for the third quarter of 2002, clearly will be applicable to the second quarter of 2002. This would reduce or eliminate the TFRP for the second quarter of 2002, even if the allocations claimed here and in the claim for the first quarter of 2001 are modified.

## III.
## Grounds for Inapplicability of Trust Fund Recovery Penalty for Second Quarter 2002

### A. Requirements for TFRP Application

Internal Revenue Code §6672(a) provides in relevant part as follows:

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempt in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected or not accounted for and paid over...."

A person described in the foregoing statute generally is called a "responsible person." Clearly, a person cannot be liable for the TFRP unless he or she is a responsible person.

Assuming responsible person status, liability follows only if the failure to collect, truthfully account for and/or pay over the tax is "willful."

Thus, for Ms. Rohde to be held liable for the TFRP with respect to any unpaid trust fund taxes of TechArch employees, she must have been a responsible person and must have willfully failed to collect, truthfully account for and/or pay over the tax.

The timing of a person's accession to responsible person status can be important and, due to the timing of TechArch's failures to pay its federal employment taxes and the question of allocation of subsequent payments on those taxes, is very important in this case.

**B. The Federal Tax Deposit Penalties and Interest Paid in 2002 and After 200206 Must Be Allocated, for TFRP Purposes Only, to TechArch's Employment Taxes for the Second Quarter of 2002**

As indicated in Section II.D. above, TechArch paid federal tax deposit penalties of $2,583.61 and interest of $42.82, for a total of $2,626.43 in December 2002. While the payment of these penalties and interest certainly can be allocated however the Service desires for purposes of its internal accounting and TechArch's liability, for purposes of the TFRP, Kenagy v. U.S., 942 F.2d 459 (8th Cir. 1991), clearly mandates that these payments be allocated against trust fund tax liabilities accruing after Ms. Rohde became a responsible person. This allocation is reflected in **Exhibit D-2**.

**C. The Installment Agreement Payments Must Be Allocated, for TFRP Purposes Only, to TechArch's Trust Fund Taxes for the Period During Which Ms. Rohde Was a Responsible Person, Except That Payments During the Second and Third Quarters of 2002 Must be Allocated as if They Were Current Employment Tax Deposits**

The rule that the installment agreement payments must be allocated, for TFRP purposes only, to TechArch's trust fund taxes for the period during which Ms. Rohde was a responsible person applies for exactly the same reasons set out in Section III.G. of the claim with respect to the first quarter of 2001, the details of which will not be repeated here. To go right to the bottom line, this rule must be applied under Kenagy v. U.S., 942 F2d 459 (8th Cir. 1991) so that the unencumbered funds rule established by the United States Supreme Court in Slodov v. U.S., 436 US 238 (1978) and followed by the Eighth Circuit in Elmore v. U.S., 843 F2d 1128 (8th Cir. 1988) is not circumvented. This means that the Service's allocation on its books of substantial amounts of the installment payments to 2000 employment taxes and to 2001 non-trust fund employment taxes must be disregarded, for TFRP purposes only, because Ms. Rohde was causing those payments to be made to the Service.

The treatment of installment agreement payments made during the second and third quarters of 2002 is required for the reasons set forth in the next two sections.

**D. The TFRP Does Not Apply to the Extent that Payments on the Installment Payment Agreement Could Have Been Applied to Reduce TFRP Exposure Because the Service Is Estopped to Allocate the Payments Otherwise By Its Misleading Advice to Ms. Rohde**

The elements of equitable estoppel against the Service are:

(1) Misrepresentation by an agent of the U.S. acting within the apparent scope of his/her duties;

(2) Absence of contrary knowledge by taxpayer in circumstances where the taxpayer

may reasonably act in reliance;

(3) Actual reliance;

(4) Detriment;

(5) Factual context in which the absence of equitable relief would be unconscionable.

The elements are met with respect to Ms. Rohde for the second quarter 2002 TFRP.

(1) The misrepresentations were by the Collection Officer and perhaps in the Installment Payment Agreement in setting up Ms Rohde to believe that her highest priority in dealing with the Service with respect to TechArch's employment tax problems was simply to make the $15,000 monthly payments on the installment payment agreement, which the Service would then apply as a matter of course to the oldest outstanding employment tax obligations.

(2) Ms. Rohde knew no better and had every right and reasonable expectation that putting the monthly payments first was the right thing to do, and had no idea that the manner in which those payments were applied could ever impact personal liability for her.

(3) Ms. Rohde did put the $15,000 monthly payments first. Consequently, TechArch suffered additional employment tax payment delinquencies and penalties and Ms. Rohde suffered additional exposure to the TFRP at times when she, not the former CFO whose deceit caused the problems, was clearly in charge. Moreover, Ms. Rohde did not specify any particular application of the payments and, indeed, probably could not under the installment payment agreement. Thus, the payments were automatically applied in a way that maximized Ms. Rohde's potential exposure to the TFRP.

(4) Detriment came in the form of penalties against TechArch for late employment tax deposits while it was paying the monthly installment payments, and in exposure to and ultimately assessment of the TFRP against Ms. Rohde. The penalties left more tax unpaid than necessary. The TFRP exposure was completely unnecessary.

(5) The unconscionableness of assessing the TFRP against Ms. Rohde flows from the entire factual context set forth above. Key elements are the CFO's deceit that caused both the problem and the magnitude thereof; Ms. Rohde's good faith efforts to right TechArch's ship and have the proper priorities with respect to paying the Service, based on the installment payment agreement and the Collection Officer's representations; the Collection Officer's insistence on $15,000 per month payments even as TechArch shrank to a shadow of its former

size; and Ms. Rohde's infusion of more than $400,000 of family capital into TechArch.

Therefore, the Service is equitably estopped from asserting the TFRP against Ms. Rohde and must abate the penalty and refund the portion already paid.

The point of this ground of the claim is to require the Service to shoot straight with taxpayers who are involved in cash strapped businesses. Representatives of the United States government should be required to make clear to business taxpayers that their highest priority at all times is to stay current on the employment tax obligations of the business. Having failed to do that, and having received $211,500 in payments for past periods of liability and assessed still more penalties for periods during which those payments were made, the Service must be estopped from asserting TFRP penalty against Ms. Rohde to the extent that it could have been avoided by paying current period employment taxes on a current basis and reduced by the amounts of additional penalties assessed with respect to current period employment taxes that were not paid because the taxpayer ignorantly made the installment agreement payments instead of the currently required payments.

## E. The TFRP Does Not Apply Because Ms. Rohde Did Not Willfully Fail to Collect, Truthfully Account for or Pay Over the Trust Fund Taxes

To this point, Ms. Rohde's legal position has been founded upon the highly technical payment allocation rules that apply in determining with precision a responsible person's exposure to the TFRP, coupled with the technical ground of estoppel. Although it appears that Ms. Rohde has no TFRP exposure for the second quarter of 2002 under these technical rules, she nevertheless want to point out that TFRP liability turns not only on such arithmetical precision, but also on the question of whether the responsible person "willfully" failed to collect, truthfully account for and pay over the tax.

Lack of willfulness for the failures to pay over the trust taxes in 2002 is on a different footing than in 2001. TechArch did get back on its feet in 2001 and managed to comply on a current basis with the federal employment tax payment requirements from April 1, 2001 through March 31, 2002, except only for modest penalties for late deposit of the two March payrolls. Therefore, viewed in isolation and applying the usual approach to the "willfulness" standard in Section 6672, Ms. Rohde's failures to pay over trust fund taxes in the second quarter of 2002 would be viewed as a willful failure, so the TFRP would apply, except to the extent that the payment application rules and the estoppel principle reduce or eliminate the amount of the TFRP as set forth above.

Ms. Rohde contends that, notwithstanding the fact that her failures in the second quarter may appear to constitute willful failure, they were not willful due to her having to cope with the continued overhang of the CFO's deceit and to the entire range of her actions in trying to bring TechArch out of the hole into which it had been plunged by that deceit. The problem in 2002 was a gradually, then drastically shrinking business that, coupled with the onerous $15,000 per month

payment requirement that was established in 2001 when the business was much larger, eventually made it impossible for TechArch to both make the installment agreement payments and stay current with its employment taxes.

In May, 2001, Ms. Rohde initiated negotiations with IRS Collection Officer Karen Nyquist for an installment payment agreement with respect to TechArch's past due federal employment taxes. In August, 2001, after Ms. Rohde had, with substantial infusions of capital and an enormous amount of effort, returned TechArch to financial stability on a current basis, the negotiations successfully concluded in a very aggressive payment plan of $15,000 per month. Ms. Rohde believed in all good faith that TechArch would be able to make the payments, as well as staying current with its employment tax obligations.

When TechArch's financial hard times that began right after 9-11 became overwhelming in the first quarter of 2002, Ms. Rohde, having been advised by Collection Officer Nyquist that failure to make the $15,000 per month payments would result in the immediate closure of TechArch, made the fundamental mistake of continuing to timely make the $15,000 per month installment payment agreements to the Service instead of staying current, or at least more current, on TechArch's federal employment tax obligations. The undeniable fact is that Ms. Rohde was misinformed as to her federal employment tax payment priorities. She should have kept TechArch's payments current instead of staying current on the installment agreement. The Service got the money and Ms. Rohde ought not be penalized for failing to know how to designate the payments. Ms. Rohde was willfully making payments on employment tax obligations to the Service. She most emphatically was not willfully violating her Section 6672 duties.

In fact, as TechArch gradually shrank in size, the $15,000 per month IRS payment agreement became increasingly unrealistic and the amount of unpaid federal employment taxes became relatively heavier and heavier, as TechArch was no longer generating as much revenue as it formerly had. TechArch's shrinkage is shown in **Exhibit D-7** to the first quarter 2001 refund claim, TechArch Payroll Levels. Ms. Rohde's willingness and her herculean efforts to continue notwithstanding TechArch's greatly shrunken status, and the very substantial investments that Ms. Rohde and her family injected into TechArch in attempting to cope with the crisis caused by the CFO's wrongdoing and maintain TechArch as a viable business, show that she strove mightily to meet TechArch's current and past federal employment tax obligations.

Consequently, at least to the extent of the $45,000 in monthly payments to the Service made during the second quarter of 2002, Ms. Rohde plainly was not willfully failing to meet her Section 6672 obligations. The clear consequence of that reality should be to treat those payments as if they were current timely employment tax deposits. That has been done in Exhibit D-2. It is warranted by some or all of the lack of willfulness, the Slodov/Elmore/Kenagy line of cases and equitable estoppel, as discussed above.

The extraordinary set of circumstances present here also contributes to the lack of willful violation of Ms. Rohde's Section 6672 duty. Slodov's statement that "Section 6672 cannot be

read as imposing upon the responsible person an absolute duty to "pay over" amounts which should have been collected and withheld" is especially compelling under Ms. Rohde's circumstances, where she caused the investment of $403,718 notwithstanding the wrong done to TechArch and Ms. Rohde by the CFO, the bursting of the high tech bubble and the aftermath of 9/11. By continuing to make the $15,000 per month payments to the Service from August 2001 through the second quarter of 2002 and beyond, Ms. Rohde was willfully advancing the Service's own interests. These circumstances warrant a finding that Ms. Rohde did not willfully violate her duty under Section 6672. If Ms. Rohde did not willfully violate her duty under Section 6672, she has no TFRP liability for the second quarter of 2002, without regard to the detailed payment applications that came to the same result in two of the methodologies deployed in Exhibit D-2.

## IV.
## Conclusion

Susan Rohde became a responsible person on February 10, 2001. TechArch had no unencumbered funds at that time. Ms. Rohde respectfully submits that these two propositions are established by the first quarter 2001 refund claim.

If the foregoing propositions are correct and the January 26, 2001, payment to the IRS must be allocated to first quarter 2001 employment taxes, as contended in the first quarter 2001 refund claim, then the result under a conservative, pro-IRS allocation is a TFRP for the second quarter of 2002 of $14,420.80, or, if the Service refuses to accept allocation of $1,096.38 in pre-second quarter installment payments to second quarter trust fund taxes, a second quarter 2002 TFRP of $15,517.18. Ms. Rohde respectfully submits that this should be her maximum exposure for the second quarter of 2002.

Ms. Rohde also respectfully submits that either of the middle ground or pro-taxpayer allocations is better under the applicable law and the circumstances of this case than is the foregoing allocation. In the middle ground allocation, only the January 26, 2001, payment actually made to the IRS would be counted in the application of the loan proceeds for TFRP purposes, but it would not be applied to the January 12 payroll because Ms. Rohde clearly was not a responsible person and had no idea that there were problems as of the date of payment thereof. The result of this difference from the pro-IRS allocation (which is to disregard the January 12 payroll) would be to completely eliminate the TFRP for the second quarter of 2002.

In the pro-taxpayer allocation, up to the entire loan proceeds would be credited against first quarter 2001 employment taxes, and the taxes attributable to the payrolls before Ms. Rohde became a responsible person on February 10 would be disregarded. This would result in crediting $131,392.87 against the later first quarter 2001 payroll taxes, completely eliminating the TFRP exposure for the first quarter of 2001 and freeing up later payments to eliminate TFRP exposure in the second and third quarters of 2002.

Ms. Rohde respectfully submits that pre-second quarter installment payments must, under the extraordinary circumstances present here, be credited against second quarter TFRP exposure.

Due to the differences described above with respect to the allocation of the loan proceeds to first quarter 2001 employment taxes, the amount of the $120,000 in pre-second quarter installment payments available to allocate differs among the three methods. Under the IRS and middle ground methods, all that is left to allocate is $1,096.38 and $38,149.44, so those are the amounts allocated. Under the pro-taxpayer method, the entire $120,000 in such payments is available, but only $45,344.63 is needed to completely eliminate the TFRP exposure.

Thus, Ms. Rohde's second quarter TFRP exposure appears to be from zero to $15,517.18, and far less than the $81,469.18 assessed. Ms. Rohde respectfully submits that the correct answer to her TFRP for the second quarter of 2002 is zero.

**Exhibit D-1**

IRS Position on Details of Unpaid Trust Fund Taxes

St. Paul Office of Appeals
380 Jackson St., Suite 600
St. Paul, MN 55101-2906

Tele: (651) 290-3867, ext. 316
Fax: (651) 290-3080

# facsimile transmittal

| | | | |
|---|---|---|---|
| To: | JOHN JAMES | Fax: | 612-339-8064 |
| From: | Dale R. Veer | Date: | 5/18/2005 |
| Re: | ROHDE / TECHARCH | Pages: | 4, including cover |
| CC: | | | |

Mr. James:

Per the message I left on your voice mail, attached are the following documents that should explain Appeals' reduction in the total TFRP liability from $254,000 to $210,000.

Let me know if you need anything further.

Dale Veer
St. Paul Appeals

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

| | |
|---|---|
| St. Paul Office of Appeals<br>380 Jackson St., Suite 600<br>St. Paul, MN 55101-2906<br>Tele: (651) 290-3867, ext. 316<br>Fax: (651) 290-3080 | INTERNAL REVENUE SERVICE |

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | JOHN JAMES | **Fax:** | 612-339-8064 |
| **From:** | Dale R. Veer | **Date:** | 12-16-2003 |
| **Re:** | ROHDE / TECHARCH | **Pages:** | 3, including cover |
| **CC:** | | | |

Mr. James:

Per our conversation yesterday afternoon, here is the latest trust fund penalty computation adjusted to reflect:

1. The express designation of the two $4,500 payments to the 200209 period,
2. The implied designation of the Federal Tax Deposit made for the 200206 period, and
3. Application of all three $7,500 payments to the 200103 period (which ended up all being applied to trust fund taxes only for TFRP computation purposes)

I've also enclosed the relevant IRM section, which also references the latest Revenue Procedure (2002-26) for application of payments in this case.

Please forward the Jan. 12, 2001 payroll information **by December 23, 2003,** to enable me to reduce the 200103 TFRP amount in the amount of the employer's portion of FICA for that specific payroll.

As I stated, our office will be sustaining the Revenue Officer's decisions to a) deny Techarch's penalty abatement request, b) assess the TFRP against Susan Rohde for periods 200103, 200206, and 200209 in the properly adjusted amounts, and c) the proposed collection action under CDP.

Please contact me with any questions or concerns.

Dale Veer
St. Paul Appeals

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

N 41-1841273 ASED 4/15/2005 Trust Fund Recovery Penalty Data Thur Nov. 6, 2003
TECHARCH, INC.

| Tax Period | Payment Data | Tax Only | FICA Employer | FICA Employee | Income Tax Withheld | **Trust Fund** | Late Payment Penalty | Late Deposit Penalty | Interest | TOTAL BALANCE DUE |
|---|---|---|---|---|---|---|---|---|---|---|
| | Amount | 276109.10 | 61480.56 | 61480.56 | 153147.98 | **214628.54** | 42606.18 | 41416.36 | 38999.03 | 399130.67 |
| **200103** | Paid | 157277.36 | 61480.56 | 61480.56 | 34316.24 | **95796.80** | 0.00 | 41416.36 | 0.00 | 198693.72 |
| | Balance | 118831.74 | 0.00 | 0.00 | 118831.74 | **118831.74** | 42606.18 | 0.00 | 38999.03 | **200436.95** |
| | Amount | 128614.61 | 30150.30 | 30150.31 | 68314.00 | **98464.31** | 14218.55 | 15962.69 | 10610.19 | 169406.04 |
| **200206** | Paid | 34576.83 | 30150.30 | 4426.53 | 0.00 | **4426.53** | 0.00 | 0.00 | 0.00 | 34576.83 |
| | Balance | 94037.78 | 0.00 | 25723.78 | 68314.00 | **94037.78** | 14218.55 | 15962.69 | 10610.19 | **134829.21** |
| | Amount | 53857.90 | 12516.45 | 12516.45 | 28825.00 | **41341.45** | 4612.57 | 7703.65 | 2773.90 | 68948.02 |
| **200209** | Paid | 16500.00 | 12516.45 | 3983.55 | 0.00 | **3983.55** | 0.00 | 0.00 | 0.00 | 16500.00 |
| | Balance | 37357.90 | 0.00 | 8532.90 | 28825.00 | **37357.90** | 4612.57 | 7703.65 | 2773.90 | **52448.02** |
| | Amount | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** | 0.00 | 905.76 | 7.32 | 24295.14 |
| **200303** | Paid | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** | 0.00 | 0.00 | 0 | 23382.06 |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** | 0.00 | 905.76 | 7.32 | **913.08** |
| | Amount | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** | 0.00 | 281.48 | 2.55 | 19592.83 |
| **200306** | Paid | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** | 0.00 | 0.00 | 0.00 | 19308.80 |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** | 0.00 | 281.48 | 2.55 | **284.03** |
| **Balance Totals** | | 250227.42 | 0.00 | 34256.68 | 215970.74 | **250227.42** | 61437.30 | 24853.58 | 52392.99 | **388911.29** |



RECEIVED TIME MAY. 18. 11:11AM

N 41-1841273 ASED 4/15/2005 Trust Fund Recovery Penalty Data Mon Dec. 15
TECHARCH, INC.

| Tax Period | Payment Data | Tax Only | FICA Employer | FICA Employee | Income Tax Withheld | **Trust Fund** |
|---|---|---|---|---|---|---|
| | Amount | 276109.10 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| 200103 | Paid | 179777.36 | 61480.56 | 61480.56 | 56816.24 | **118296.80** |
| | Balance | 96331.74 | 0.00 | 0.00 | 96331.74 | **96331.74** |
| | Amount | 139935.42 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| 200203 | Paid | 139935.42 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| | Amount | 128614.61 | 30150.30 | 30150.31 | 68314.00 | **98464.31** |
| 200206 | Paid | 22203.26 | 5208.13 | 5208.13 | 11787.00 | **16995.13** |
| | Balance | 106411.35 | 24942.17 | 24942.18 | 56527.00 | **81469.18** |
| | Amount | 53857.90 | 12516.45 | 12516.45 | 28825.00 | **41341.45** |
| 200209 | Paid | 9000.00 | 0.00 | 9000.00 | 0.00 | **9000.00** |
| | Balance | 44857.90 | 12516.45 | 3516.45 | 28825.00 | **32341.45** |
| | Amount | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** |
| 200303 | Paid | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| | Amount | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** |
| 200306 | Paid | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| **Balance Totals** | | 247600.99 | 37458.62 | 28458.63 | 181683.74 | **210142.37** |

The overall Tax Only Balance Total is $2,626.43 less than the previous FRP computation because this amount was transferred from the 200203 period to the 200103 period. The 200203 period was not listed on the prior FRP computation.)



RECEIVED TIME MAY. 18. 11:11AM

**Exhibit D-2**

**Payment Allocations for Second Quarter 2002 for TFRP Purposes Only**

| | Conservative Pro-IRS Allocations | Middle Ground | Aggressive Pro-Taxpayer Allocations |
|---|---|---|---|
| 200206 Tax per IRS[1] | $128,614.61 | $128,614.61 | $128,614.61 |
| 04/10/02 Tax Deposit [2] | 22,203.26 | 22,203.26 | 22,203.26 |
| Leaves | $106,411.35 | $106,411.35 | $106,411.35 |
| Trust Fund Portion per IRS | 81,469.18 | 81,469.18 | 81,469.18 |
| Non-Trust Fund Portion per IRS | 24,942.17 | 24,942.17 | 24,942.17 |
| Total Unpaid per IRS as of 06/30/02 | $106,411.35 | $106,411.35 | $106,411.35 |
| Trust Tax Percentage[3] | 76.56% | 76.56% | 76.56% |
| Initial Unpaid Trust Fund Tax | $ 81,469.18 | $ 81,469.18 | $ 81,469.18 |
| Allocation of 200206 installment payments 04/16/02, 05/16/02 and 06/14/02 totaling $45,000[4] | 34,452.00 | 34,452.00 | 34,452.00 |
| Allocation of pre-second quarter 2002 installment payments[5] | 1,096.38 | 38,149.44 | 45,344.63 |
| 12/11/02 payment allocated to 04/02 tax by IRS[6] | 4,873.57 | 4,873.57 | 1,672.55 |
| Remainder of 12/11/02 payment allocated to 200203 penalty by IRS[7] | 2,626.43 | 2,626.43 | --- |
| 02/04/03 payment[8] | 7,500.00 | 1,367.74 | --- |
| 02/28/03 payment[9] | 7,500.00 | --- | --- |
| 06/03/03 payment[10] | 4,500.00 | --- | --- |
| 07/01/03 payment[11] | 4,500.00 | --- | --- |
| Total Trust Fund Tax Payments | $ 67,048.38 | $ 81,469.18 | $81,469.18 |
| Leaves | $ 14,420.80 | 0.00 | 0.00 |

[1]Form 941 showed $128,61
Details of Unpaid Trust Fund Ta
[2]Exhibit D-1 shows th
[3]81,469.18/106,41
[4]IRS in fact allo
demonstrates, even
200206 payment
.7656 = $34,4
wilfulness
- Ma
ex

SBW

Department of the Treasury
Internal Revenue Service
CINCINNATI, OH 45999-0010

Date of this notice: OCT. 4, 2004
Taxpayer Identifying Number 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
Form: CVL PEN Tax Period: SEP. 30, 2002

For assistance you may call us at:

1-800-829-8374

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445

WE CHARGED YOU A PENALTY FOR NOT PAYING EMPLOYMENT TAX

ACCORDING TO OUR RECORDS, YOU HAVE NOT PAID THE EMPLOYMENT TAXES THAT YOU WERE RESPONSIBLE FOR WITHHOLDING ON THE FOLLOWING TAX ACCOUNT(S).

| EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED | EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED |
|---|---|---|---|---|---|
| 41-1841273 | 941 | SEP. 30, 2002 | | | |

THE LAW ALLOWS US TO CHARGE A PENALTY IF YOU DON'T COLLECT, ACCOUNT FOR, OR PAY OVER EMPLOYMENT TAXES. THE PENALTY IS THE AMOUNT OF UNPAID EMPLOYMENT TAXES WITHHELD FROM EMPLOYEES. WE USUALLY REFER TO THESE TAXES AS "TRUST FUND TAXES." THEREFORE, WE CALL THE PENALTY THE "TRUST FUND RECOVERY PENALTY."

WE FIGURED THE PENALTY AND INTEREST YOU OWE AS FOLLOWS:

| | |
|---|---|
| PENALTY | $32,341.45 |
| INTEREST FIGURED TO OCT. 4, 2004 | .00 |
| TOTAL AMOUNT DUE | $32,341.45 |

IF YOU AGREE WITH OUR FIGURES, PLEASE PAY THE AMOUNT SHOWN ABOVE BY OCT. 25, 2004 TO AVOID FURTHER INTEREST CHARGES.

IF YOU DON'T AGREE, THE LAW ALLOWS YOU TO FILE SUIT FOR REFUND. TO DO SO, YOU MUST:

- PAY THE WITHHELD TAX FOR ONE EMPLOYEE FOR ONE QUARTER OF LIABILITY; AND

- FILE A CLAIM FOR REFUND ON FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT, FOR THE AMOUNT PAID BY NOV. 3, 2004. HOWEVER, WE WILL CHARGE INTEREST ON ANY AMOUNT YOU DON'T PAY BY OCT. 25, 2004.

IF YOU WANT US TO SUSPEND COLLECTION OF THE PENALTY WHILE THE SUIT IS PENDING BEFORE THE COURT, YOU MUST:

- POST A BOND WITH THE INTERNAL REVENUE SERVICE FOR ONE AND A HALF TIMES THE BALANCE (THE PENALTY AMOUNT SHOWN ABOVE MINUS THE AMOUNT YOU PAID) BY NOV. 3, 2004.

HOWEVER, IF WE DETERMINE THAT THE COLLECTION OF THE AMOUNT DUE IS IN JEOPARDY, WE MAY COLLECT IT IMMEDIATELY WITHOUT WAITING UNTIL NOV. 3, 2004.

CP: 15L

CINCINNATI SERVICE CENTER 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 TAX PERIOD: SEP. 30, 2002

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

ETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
OUR TELEPHONE NUMBER BEST TIME TO CALL
) -

AMOUNT YOU OWE..................$32,341.45

LESS PAYMENTS NOT INCLUDED. $______________

618

PAY ADJUSTED AMOUNT........ $______________

BW

200438 17254-658-52112-4

INTERNAL REVENUE SERVICE
CINCINNATI, OH 45999-0010

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445



501849856 CW ROHD 55 0 200209 670 00003234145

Form **843** (Rev. November 2002)
Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves* ***(a)*** *one of the taxes shown on line 3a or* ***(b)*** *a refund or abatement of interest, penalties, or additions to tax on line 4a.*
***Do not*** *use Form 843 if your claim is for—*
- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

| Type or print | |
|---|---|
| Name of claimant: **Susan M. Rohde** | Your SSN or ITIN: **501 : 84 : 9856** |
| Address (number, street, and room or suite no.): **1944 East River Terrace** | Spouse's SSN or ITIN: |
| City or town, state, and ZIP code: **Minneapolis, MN 55414-3672** | Employer identification number (EIN): |
| Name and address shown on return if different from above | Daytime telephone number: ( **612** ) **316-0010** |

1 Period. Prepare a separate Form 843 for each tax period
From **07** / **01** / **02** to **09** / **30** / **02**

2 Amount to be refunded or abated $ **301.21**

3a Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ **6672**

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

**The IRS assessed trust fund recovery penalty ("TFRP") of $32,341.05 on October 4, 2004. A copy of the notice of assessment is attached as Exhibit A.**

**The assessment relates to the trust fund taxes of TechArch, Inc., EIN 41-1841273 ("TechArch"). A copy of the TechArch Payroll Summary for the third quarter of 2002 is attached as Exhibit B. As shown on Exhibit B, Denis J. Deutsch was a TechArch employee whose trust fund taxes totaled $301.21, consisting of income tax withholding of $179.00, Social Security tax of $99.05, and Medicare tax of $23.16. Taxpayer paid $301.21 of TFRP on June 17, 2005, directing that the entire payment be applied to pay in full the trust fund taxes of Denis J. Deutsch, as shown in the cover letter accompanying payment, a copy of which is attached as Exhibit C. Taxpayer believes that this claim must be allowed, and that no additional amount of TFRP is owed by Taxpayer for the above-referenced period, for the reasons set forth in the attached Exhibit D, Grounds for Inapplicability of the Trust Fund Recovery Penalty for the above-referenced period, and sub-exhibits D-1 - D-2.**

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Susan M. Rohde — 6/17/2005
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) — Date

Signature — Date

**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.** Cat. No. 10180R Form **843** (Rev. 11-2002)

**EXHIBIT A**

**Third Quarter of 2002**

**Notice of Assessment**

SBW

Department of the Treasury
Internal Revenue Service
CINCINNATI, OH 45999-0010

Date of this notice: OCT. 4, 2004
Taxpayer Identifying Number 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
Form: CVL PEN Tax Period: SEP. 30, 2002

For assistance you may call us at:

1-800-829-8374

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445

WE CHARGED YOU A PENALTY FOR NOT PAYING EMPLOYMENT TAX

ACCORDING TO OUR RECORDS, YOU HAVE NOT PAID THE EMPLOYMENT TAXES THAT YOU WERE RESPONSIBLE FOR WITHHOLDING ON THE FOLLOWING TAX ACCOUNT(S).

| EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED | EMPLOYER IDENTIFICATION NUMBER | TAX FORM | TAX PERIOD ENDED |
|---|---|---|---|---|---|
| 41-1841273 | 941 | SEP. 30, 2002 | | | |

THE LAW ALLOWS US TO CHARGE A PENALTY IF YOU DON'T COLLECT, ACCOUNT FOR, OR PAY OVER EMPLOYMENT TAXES. THE PENALTY IS THE AMOUNT OF UNPAID EMPLOYMENT TAXES WITHHELD FROM EMPLOYEES. WE USUALLY REFER TO THESE TAXES AS "TRUST FUND TAXES." THEREFORE, WE CALL THE PENALTY THE "TRUST FUND RECOVERY PENALTY."

WE FIGURED THE PENALTY AND INTEREST YOU OWE AS FOLLOWS:

| | |
|---|---|
| PENALTY | $32,341.45 |
| INTEREST FIGURED TO OCT. 4, 2004 | .00 |
| TOTAL AMOUNT DUE | $32,341.45 |

IF YOU AGREE WITH OUR FIGURES, PLEASE PAY THE AMOUNT SHOWN ABOVE BY OCT. 25, 2004 TO AVOID FURTHER INTEREST CHARGES.

IF YOU DON'T AGREE, THE LAW ALLOWS YOU TO FILE SUIT FOR REFUND. TO DO SO, YOU MUST:

-PAY THE WITHHELD TAX FOR ONE EMPLOYEE FOR ONE QUARTER OF LIABILITY; AND

-FILE A CLAIM FOR REFUND ON FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT, FOR THE AMOUNT PAID BY NOV. 3, 2004. HOWEVER, WE WILL CHARGE INTEREST ON ANY AMOUNT YOU DON'T PAY BY OCT. 25, 2004.

IF YOU WANT US TO SUSPEND COLLECTION OF THE PENALTY WHILE THE SUIT IS PENDING BEFORE THE COURT, YOU MUST:

-POST A BOND WITH THE INTERNAL REVENUE SERVICE FOR ONE AND A HALF TIMES THE BALANCE (THE PENALTY AMOUNT SHOWN ABOVE MINUS THE AMOUNT YOU PAID) BY NOV. 3, 2004.

HOWEVER, IF WE DETERMINE THAT THE COLLECTION OF THE AMOUNT DUE IS IN JEOPARDY, WE MAY COLLECT IT IMMEDIATELY WITHOUT WAITING UNTIL NOV. 3, 2004.

CP: 155

CINCINNATI SERVICE CENTER 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 TAX PERIOD: SEP. 30, 2002

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

---

RETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
YOUR TELEPHONE NUMBER BEST TIME TO CALL
( ) -

AMOUNT YOU OWE..................$32,341.45

LESS PAYMENTS NOT INCLUDED. $__________

618

PAY ADJUSTED AMOUNT........ $__________

CW

200438 17254-658-52112-4

INTERNAL REVENUE SERVICE
CINCINNATI, OH 45999-0010

SUSAN M ROHDE
1944 E RIVER TER
MINNEAPOLIS MN 55414-3672445



501849856 CW ROHD 55 0 200209 670 00003234145

# EXHIBIT B

## TechArch Payroll Summary

7:21 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
July through September 2002

| | Beckwith, Kenn C. | Billington, Kathleen M | Deutsch, Denis J |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Salary | 3,800.52 | 0.00 | 1,597.63 |
| Salary-Consultants | 0.00 | 6,576.93 | 0.00 |
| Deferred Salary | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 0.00 | 346.17 | 0.00 |
| PTO payout | 0.00 | 1,918.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 3,800.52 | 8,841.10 | 1,597.63 |
| Deductions from Gross Pay | | | |
| Dental Ins. | 0.00 | -33.24 | 0.00 |
| Employee 401(k) 1 | 0.00 | -394.62 | 0.00 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | 0.00 |
| Medical Ins. | 0.00 | -121.86 | 0.00 |
| Total Deductions from Gross Pay | 0.00 | -549.72 | 0.00 |
| Adjusted Gross Pay | 3,800.52 | 8,291.38 | 1,597.63 |
| Taxes Withheld | | | |
| Federal Withholding | 0.00 | -1,336.00 | -179.00 |
| Medicare Employee | -55.11 | -125.94 | -23.16 |
| Social Security Employee | -235.63 | -538.53 | -99.05 |
| MN - Withholding | 0.00 | 0.00 | -82.00 |
| Total Taxes Withheld | -290.74 | -2,000.47 | -383.21 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | 0.00 | -45.60 | 0.00 |
| Total Deductions from Net Pay | 0.00 | -45.60 | 0.00 |
| Net Pay | **3,509.78** | **6,245.31** | **1,214.42** |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 55.11 | 125.94 | 23.16 |
| Social Security Company | 235.63 | 538.53 | 99.05 |
| MN - Unemployment Company | 10.26 | 0.00 | 4.32 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **301.00** | **664.47** | **126.53** |

7:21 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
### July through September 2002

| | Gregg, John | Henney, John M | Hetland, Steve T |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Salary | 0.00 | 0.00 | 12,307.68 |
| Salary-Consultants | 3,076.92 | 30,230.76 | 0.00 |
| Deferred Salary | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 115.39 | 1,615.38 | 1,076.92 |
| PTO payout | 557.67 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 3,749.98 | 31,846.14 | 13,384.60 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -11.08 | -212.52 | -141.68 |
| Employee 401(k) 1 | -461.54 | -1,813.86 | -1,230.76 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -7.62 | -129.84 | 0.00 |
| Medical Ins. | -40.62 | -1,906.62 | -943.40 |
| Total Deductions from Gross Pay | -520.86 | -4,062.84 | -2,315.84 |
| Adjusted Gross Pay | 3,229.12 | 27,783.30 | 11,068.76 |
| Taxes Withheld | | | |
| Federal Withholding | -519.00 | -4,590.00 | -1,420.00 |
| Medicare Employee | -53.51 | -429.16 | -178.35 |
| Social Security Employee | -228.82 | -1,286.57 | -762.57 |
| MN - Withholding | -169.00 | -1,482.00 | -560.00 |
| Total Taxes Withheld | -970.33 | -7,787.73 | -2,920.92 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | -175.44 | 0.00 |
| STD/LTD Ins. (After-tax) | -22.12 | -209.52 | -85.28 |
| Total Deductions from Net Pay | -22.12 | -384.96 | -85.28 |
| Net Pay | **2,236.67** | **19,610.61** | **8,062.56** |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 53.51 | 429.16 | 178.35 |
| Social Security Company | 228.82 | 1,286.57 | 762.57 |
| MN - Unemployment Company | 0.00 | 0.00 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **282.33** | **1,715.73** | **940.92** |

7:21 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
July through September 2002

| | Johnson, Richard L. | Lassiter, Brian | Logajan, George M. |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Salary | 0.00 | 0.00 | 0.00 |
| Salary-Consultants | 3,153.85 | 6,766.72 | 7,211.54 |
| Deferred Salary | 0.00 | 0.00 | 0.00 |
| Medical Benefit Offset | 115.39 | 0.00 | 230.78 |
| PTO payout | 315.36 | 0.00 | 2,163.40 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 3,584.60 | 6,766.72 | 9,605.72 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -11.08 | 0.00 | 0.00 |
| Employee 401(k) 1 | -189.23 | 0.00 | -608.65 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | 0.00 |
| Medical Ins. | -49.62 | 0.00 | 0.00 |
| Total Deductions from Gross Pay | -249.93 | 0.00 | -608.65 |
| Adjusted Gross Pay | 3,334.67 | 6,766.72 | 8,997.07 |
| Taxes Withheld | | | |
| Federal Withholding | -529.00 | -628.00 | -1,851.00 |
| Medicare Employee | -51.10 | -98.12 | -139.28 |
| Social Security Employee | -218.49 | -419.54 | -595.56 |
| MN - Withholding | -165.00 | -284.00 | -582.00 |
| Total Taxes Withheld | -963.59 | -1,429.66 | -3,167.84 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | 0.00 |
| STD/LTD Ins. (After-tax) | -21.86 | 0.00 | -67.24 |
| Total Deductions from Net Pay | -21.86 | 0.00 | -67.24 |
| Net Pay | **2,349.22** | **5,337.06** | **5,761.99** |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 51.10 | 98.12 | 139.28 |
| Social Security Company | 218.49 | 419.54 | 595.56 |
| MN - Unemployment Company | 0.00 | 18.27 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | **269.59** | **535.93** | **734.84** |

7:21 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
### July through September 2002

| | Rodenberg, Anne M | Rohde, Susan M. | Savage, Carol |
|---|---|---|---|
| **Employee Wages, Taxes and Adjustments** | | | |
| Gross Pay | | | |
| Salary | 1,915.38 | 24,615.40 | 0.00 |
| Salary-Consultants | 0.00 | 0.00 | 19,615.40 |
| Deferred Salary | 0.00 | 0.00 | 1,176.93 |
| Medical Benefit Offset | 115.39 | 461.56 | 692.34 |
| PTO payout | 1,283.18 | 0.00 | 0.00 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 3,313.95 | 25,076.96 | 21,484.67 |
| Deductions from Gross Pay | | | |
| Dental Ins. | 0.00 | -44.32 | -66.48 |
| Employee 401(k) 1 | -400.00 | -1,476.92 | -117.69 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | -20.00 | -180.00 | -576.96 |
| Medical Ins. | -36.23 | -198.48 | -297.72 |
| Total Deductions from Gross Pay | -456.23 | -1,899.72 | -1,058.85 |
| Adjusted Gross Pay | 2,857.72 | 23,177.24 | 20,425.82 |
| Taxes Withheld | | | |
| Federal Withholding | -308.00 | -4,752.00 | -3,759.00 |
| Medicare Employee | -47.24 | -357.48 | -297.88 |
| Social Security Employee | -201.98 | -1,528.56 | -1,273.70 |
| MN - Withholding | -139.00 | -1,348.00 | -1,204.00 |
| Total Taxes Withheld | -696.22 | -7,986.04 | -6,534.58 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | -1,668.86 | 0.00 |
| STD/LTD Ins. (After-tax) | -13.28 | -170.60 | -163.14 |
| Total Deductions from Net Pay | -13.28 | -1,839.46 | -163.14 |
| **Net Pay** | **2,148.22** | **13,351.74** | **13,728.10** |
| **Employer Taxes and Contributions** | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 47.24 | 357.48 | 297.88 |
| Social Security Company | 201.98 | 1,528.56 | 1,273.70 |
| MN - Unemployment Company | 0.00 | 0.00 | 0.00 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| **Total Employer Taxes and Contributions** | **249.22** | **1,886.04** | **1,571.58** |

7:21 PM
04/25/05

# Techarch, Inc.
## Payroll Summary
### July through September 2002

| | Webster, Leon C. | Wiborg, Liesl K. | TOTAL |
|---|---|---|---|
| Employee Wages, Taxes and Adjustments | | | |
| Gross Pay | | | |
| Salary | 0.00 | 24,230.76 | 68,467.37 |
| Salary-Consultants | 20,769.24 | 0.00 | 97,401.36 |
| Deferred Salary | 0.00 | 0.00 | 1,176.93 |
| Medical Benefit Offset | 0.00 | 692.34 | 5,461.66 |
| PTO payout | 0.00 | 0.00 | 6,237.61 |
| Sales Commission | 0.00 | 0.00 | 0.00 |
| Total Gross Pay | 20,769.24 | 24,923.10 | 178,744.93 |
| Deductions from Gross Pay | | | |
| Dental Ins. | -44.32 | -66.48 | -631.20 |
| Employee 401(k) 1 | -2,076.92 | 0.00 | -8,770.19 |
| Employee 401(k) 2 | 0.00 | 0.00 | 0.00 |
| Employee 401(k) 3 | 0.00 | 0.00 | 0.00 |
| Flex. Benefit Plan | 0.00 | 0.00 | -914.42 |
| Medical Ins. | 0.00 | -243.72 | -3,838.27 |
| Total Deductions from Gross Pay | -2,121.24 | -310.20 | -14,154.08 |
| Adjusted Gross Pay | 18,648.00 | 24,612.90 | 164,590.85 |
| Taxes Withheld | | | |
| Federal Withholding | -3,620.00 | -5,334.00 | -28,825.00 |
| Medicare Employee | -300.51 | -356.88 | -2,513.72 |
| Social Security Employee | -1,087.73 | -1,526.00 | -10,002.73 |
| MN - Withholding | -1,128.00 | -1,554.00 | -8,697.00 |
| Total Taxes Withheld | -6,136.24 | -8,770.88 | -50,038.45 |
| Deductions from Net Pay | | | |
| 401(k) Loan Pmt. | 0.00 | 0.00 | -1,844.30 |
| STD/LTD Ins. (After-tax) | -143.96 | -167.88 | -1,110.48 |
| Total Deductions from Net Pay | -143.96 | -167.88 | -2,954.78 |
| Net Pay | 12,367.80 | 15,674.14 | 111,597.62 |
| Employer Taxes and Contributions | | | |
| Federal Unemployment | 0.00 | 0.00 | 0.00 |
| Medicare Company | 300.51 | 356.88 | 2,513.72 |
| Social Security Company | 1,087.73 | 1,526.00 | 10,002.73 |
| MN - Unemployment Company | 0.00 | 0.00 | 32.85 |
| 401k Match - COGS 2 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 1 | 0.00 | 0.00 | 0.00 |
| Employer 401(k) match 2 | 0.00 | 0.00 | 0.00 |
| Total Employer Taxes and Contributions | 1,388.24 | 1,882.88 | 12,549.30 |

**EXHIBIT C**

**Cover Letter with Payment**

LOMMEN NELSON
LAW FIRM
LOMMEN, NELSON, COLE & STAGEBERG, P.A.

2000 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

(612) 339-8131
National Toll-Free (800) 752-4297
FAX (612) 339-8064

John P. James
Attorney at Law

Minneapolis Office
Web Site: www.lommen.com
E-mail Address:JPJAMES@LOMMEN.COM
(612) 336-9317

Grandview Professional Building, Suite 210
400 South Second Street
Hudson, Wisconsin 54016

(715) 386-8217
Twin City Line (651) 436-8085
FAX (715) 386-8219

June 17, 2005

**Certified Mail, Return Receipt Requested**

Department of the Treasury
Internal Revenue Service
Cincinnati, OH 45999-0010

Re: Susan M. Rohde, 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

Payment on Trust Fund Recovery Penalty for Unpaid Unemployment Taxes of TechArch, Inc., 41-1841273 for Tax Periods Ended March 31, 2001, June 30, 2002, and September 30, 2002

Dear Sir/Madam:

Enclosed please find a Power of Attorney authorizing me to represent Susan M. Rohde in this matter and three checks of Susan M. Rohde, each in partial payment of trust fund recovery penalty relating to the employment taxes of TechArch, Inc. for the quarters ended March 31, 2001, June 30, 2002 and September 30, 2002, respectively. Also enclosed are copies of your assessment notices dated October 4, 2004 with respect to the above-referenced trust fund recovery penalty for each of the above-referenced periods.

Check No. 6159 in the amount of $793.00 is in full payment of the portion of the penalty relating to the withheld income taxes for TechArch employee John M. Henney for the tax period ended March 31, 2001. (The entire assessment for that tax period relates to withheld income taxes).

Check No. 6160 in the amount of $67.73 is in full payment of the portion of the penalty relating to the trust fund taxes for TechArch employee Brian A. Clark for the tax period ended June 30, 2002.

Check No. 6161 in the amount of $301.21 is in full payment of the portion of the penalty relating to the trust fund taxes for TechArch employee Denis J. Deutsch for the tax period ended

September 30, 2002.

The enclosed checks are to be allocated to the trust fund recovery penalty in the amounts and with respect to the employees and periods described above.

Sincerely,

John P. James

JPJ:dh
enclosures
cc: Susan M. Rohde

Doc. #: 316087

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6159

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 793.00

seven-hundred ninety-three and 00/100 DOLLARS

TARP
MEMO 1st QTR 2001 - re: w/h of John M Henney

Susan Rohde

⑈006159⑈ ⑆091000022⑆1202290907700⑈

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6160

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 67.73

sixty-seven and 73/100 DOLLARS

TARP
MEMO 2nd QTR 2002 re: w/h BRIAN A. CLARK

Susan Rohde

⑈006160⑈ ⑆091000022⑆1202290907700⑈

Susan M. Rohde
1944 E. River Terrace
Minneapolis, MN 55414-3672
(612) 375-0719

U.S. BANK NATIONAL ASSOCIATION
ALEXANDRIA, MN 56308-1892
17-2/910

6161

6/17/2005

PAY TO THE ORDER OF U.S. Treasury $ 301.21

three-hundred one and 21/100 DOLLARS



TARP
MEMO re 3rd QTR 2002 re: w/h of Denis J. Deutsch

Susan Rohde

⑈006161⑈ ⑆091000022⑆1202290907700⑈

**Susan M. Rohde**
**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**
**Form 843, Claim for Refund and Request for Abatement**
**Trust Fund Recovery Penalty for Third Quarter 2002**

**Exhibit D**
**Grounds for Inapplicability of Trust Fund Recovery Penalty for Third Quarter 2002**

**Table of Contents**

I. Introduction . . . . . . . . . . 2

II. Facts . . . . . . . . . . 3
A. Origin of the Amount of TFRP Assessed . . . . . . . . . . 3
B. Ms. Rohde's Status During the Third Quarter of 2002 and the Relation of Earlier Events to the Question of Her Liability for Third Quarter 2002 TFRP . . . . . . . . 4
C. TechArch's Subsequent Federal Employment Tax Performance . . . . . . . . . . 5
D. Requested Payment Allocation with Respect to 2002-3 Trust Fund Taxes . . . . . . 6

III. Grounds for Inapplicability of Trust Fund Recovery Penalty for 2002-3 . . . . . . . . . . 7
A. Requirements for TFRP Application . . . . . . . . . . 7
B. The Installment Agreement Payments Must Be Allocated, for TFRP Purposes Only, to TechArch's Trust Fund Taxes for the Period During Which Ms. Rohde Was a Responsible Person, Except that Payments During the Second and Third Quarters of 2002 Must Be Allocated as if They Were Current Employment Tax Deposits . . . . . . . . . . 7
C. The TFRP Does Not Apply to the Extent that Payments on the Installment Payment Agreement Could Have Been Applied to Reduce TFRP Exposure Because the Service Is Estopped to Allocate the Payments Otherwise By Its Misleading Advice to Ms. Rohde . . . . . . . . . . 8
D. The $15,000 July 2002 Installment Payment Must be Credited Against Third Quarter 2002 Employment Taxes Because, with Respect to it, Ms. Rohde Did Not Willfully Fail to Collect, Truthfully Account for or Pay Over the Trust Fund Taxes . . . . . . . . . . 8

IV. Conclusion . . . . . . . . . . 8

## I.
## Introduction

This combination claim for refund and request for abatement relates to the assessment of trust fund recovery penalty under Internal Revenue Code Section 6672 ("TFRP") against Susan M. Rohde ("Rohde") for unpaid trust fund taxes of TechArch, Inc. ("TechArch") for the third quarter of 2002. The Service assessed the TFRP against Ms. Rohde for the first quarter of 2001 and the second and third quarters of 2002. TechArch has had no unpaid trust fund taxes for any other period during its existence to date. Ms. Rohde is contemporaneously filing claims for all three quarters for which the TFRP has been assessed against her. Ms. Rohde hereby requests that the three claims be consolidated and treated together by the Service and hereby incorporates by reference her claims with respect to the other two quarters.

Ms. Rohde has been TechArch CEO throughout its existence. TechArch began operating in 1996. It most recently paid salaries in 2003 and received revenue in 2004. TechArch has been dormant since that time. It is expected to never again have active operations unless a valuable market emerges for certain software it owns, which is not expected. TechArch has not been formally liquidated and dissolved, but it currently has no activity whatsoever. Ms. Rohde has moved on and is now employed by Wells Fargo Bank, N.A.

As CEO, Ms. Rohde was a logical person for the Service to pursue for the TFRP penalty. Nevertheless, Ms. Rohde has grounds to contest the TFRP assessments which have been made against her. This situation is factually extraordinary in six respects: reasonable lack of involvement of Ms. Rohde in TechArch's finances; deception of Ms. Rohde (and the TechArch Board) by its CFO, which enabled TechArch's financial problems to spiral completely out of control before Ms. Rohde and the Board even learned they existed; the end of the technology consulting boom; the aftermath of 9-11; insistence by the Service on TechArch making very large monthly payments on the past employment tax liability, which led Ms. Rohde to have TechArch continue making those payments instead of staying current in 2002; and the infusion of several hundred thousand dollars into TechArch by Ms. Rohde and her family members in an effort to enable it to permanently dig out of the hole its CFO's deception had dug for it. This strange combination of circumstances delays the point in 2001 at which Ms. Rohde became a responsible person and negates willfulness on her part after she became a responsible person.

The grounds for a determination that the TFRP does not apply for the third quarter of 2002 include:

(1) Ms. Rohde cannot be held personally responsible for trust fund taxes that arose prior to when she became a responsible person, which she contends was February 10, 2001, beyond the amount of TechArch's unencumbered funds at the time she became a responsible person, which she contends was zero (Section III.D. of first quarter 2001 claim, the importance of which here is to preserve later payments for allocation against third quarter 2002 employment

taxes);

(2) The full net proceeds of the SBA loan must be allocated, for TFRP purposes only, to TechArch's 2001-1 employment taxes (Section III.E. of first quarter 2001 claims, important here for the same reasons as (1) above);

(3) The federal tax deposit penalties paid must be allocated, for TFRP purposes only, to TechArch's trust fund taxes for the period in which paid (important here for the same reasons as (1) above due to its application in the earlier quarters);

(4) All payments under TechArch's installment payment agreement with the Service with respect to employment taxes must be allocated, for TFRP purposes only, to reduce TechArch's trust fund taxes for the period during which Ms. Rohde was a responsible person except that payments during the second and third quarters of 2002 must be allocated as if they were current employment tax deposits (Section III.B.);

(5) The TFRP does not apply to the extent that payments on the installment payment agreement could have been applied to pay current employment taxes because the Service is estopped to allocate the payments otherwise due to its misleading advice to Ms. Rohde (Section III.C.); and

(6) The trust fund taxes must be reduced, for TFRP purposes only, by the trust fund share of the July 15, 2002 installment payment treated as a deposit because Ms. Rohde did not willfully fail to collect, truthfully account for, or pay over trust fund taxes to the extent thereof (Section III.D.).

## II.
## Facts

### A. Origin of the Amount of TFRP Assessed

The TFRP assessed for the third quarter 2002 was $32,341.45. That consists of $3,516.45 of employees' FICA and $28,825.00 of withheld income tax, as shown on the last page of **Exhibit D-1**, IRS Position on Details of Unpaid Trust Fund Taxes. This reflects the crediting against employees' FICA of $9,000 in payments that were designated by TechArch as for trust fund taxes. Ms. Rohde agrees that such allocation is correct, but under one of the payment methodologies discussed below they would be credited against second quarter 2002 trust taxes, which would, if applicable, increase the starting point for third quarter 2002 TFRP to $41,341.45.

**B. Ms. Rohde's Status During the Third Quarter of 2002 and the Relation of Earlier Events to the Question of Her Liability for Third Quarter 2002 TFRP**

Ms. Rohde became a "responsible person" under Section 6672 on February 10, 2001, at which point TechArch had no unencumbered funds, and continued to be a responsible person thereafter, including the full second and third quarters of 2002. Throughout the entire time, Ms. Rohde was dealing with the overhang of the deceit by TechArch's CFO of her, the Executive Management Committee, the Board, her family and Associated Bank.

If Ms. Rohde's positions regarding the TFRP for the first quarter of 2001 and the second quarter of 2002 are accepted, the third quarter 2002 TFRP will automatically be completely eliminated because TechArch's post-third quarter installment agreement payments exceed its third quarter TFRP exposure. Nevertheless, to facilitate decision making based on a full understanding of the situation, TechArch's third quarter 2002 and subsequent employment tax performance are described below.

As is explained in depth in Ms. Rohde's claim with respect to first quarter 2001TFRP, Ms. Rohde had been kept in the dark regarding TechArch's deteriorating financial condition by the deceit of TechArch's CFO. She did not realize there was a problem until the problem had become so huge that there ultimately turned out to be no financial recovery for TechArch. The CFO's deceit resulted in many things happening that increased Ms. Rohde's TFRP exposure (and exposure to personal liability to Associated Bank) and caused her and her family to infuse more than $400,000 of capital into TechArch in an attempt to salvage the situation.

Key points about the 2001 situation for purposes of the question of 2002-3 TFRP liability include the CFO's wrongful deception of her regarding TechArch's financial condition; the Rohde loans and investments into TechArch following discovery of the problem with respect to federal employment taxes; the negotiation of an installment payment agreement with the Service that required TechArch to make payments of $15,000 per month on its past due employment taxes, commencing in August 2001; and the proper application for TFRP purposes of the SBA Loan proceeds received on January 24, 2001, and the payments made on the installment payment agreement.

As explained in the refund claim for the second quarter of 2002, TechArch suffered greatly from the aftermath of 9-11, including an unexpected uncollectible receivable of $250,000 that was particularly hurtful. TechArch shrank dramatically in size in 2002. The shrinkage caused immediate cash flow problems due to the combination of the long lead time between employee work and employee pay explained in the refund claim for the first quarter of 2001 and the $15,000 per month installment agreement payments to the Service that had been agreed upon when TechArch was much larger and had hopes of returning to its peak size or beyond.

TechArch's and Ms. Rohde's situation in the third quarter of 2002 was simply a continuation of that which had begun back in 2001 and is described in Ms. Rohde's Claim regarding the 2002-2

TFRP. The business was shrinking; the required $15,000 per month payments on the old liability caused by the CFO's deceptive conduct with respect to a much larger business were not; and TechArch was caught in an economic vice. Caught in that vice, Ms. Rohde repeatedly made serious technical mistakes with respect to TechArch's employment taxes by making the payment of the old liabilities a higher priority than staying current. The mistakes were innocent; the Service got paid; but the misallocation of the payments by Ms. Rohde on TechArch's behalf led to a multiplication of the penalties.

Facing the reality of shrunken revenues, TechArch laid off a number of employees in early August, but it took until late September or October to conform TechArch's payroll costs to its level of business. The layoffs would have been made sooner, but the employees were needed to finish a $400,000 project that probably would have led to a lawsuit had it not been completed.

TechArch's third quarter 2002 employment tax delinquencies were due to a combination of making one more $15,000 installment payment in July; the inability to collect the $250,000 receivable that had plagued TechArch for nearly a year, draining its capacity to meet both current and installment payment employment tax obligations; and a shrinking business with a built in lag in employee salary payments that made shrinkage a financial disaster.

Ms. Rohde initiated efforts to renegotiate the $15,000 per month installment payment agreement during the third quarter of 2002. (TechArch went delinquent on it in August, 2002.) The Collection Officer refused to consider any reduction in the monthly payment amount, even though TechArch's biweekly payroll had shrunk from as high as $160,000 in the first quarter of 2001 to as low as $20,000 in the third quarter of 2002. TechArch had shrunk to from 1/8-1/4 of its 2001 size, which effectively made the $15,000 per month required payment level an impossible dream. Consequently, Ms. Rohde simply had TechArch pay what it could when it could.

## C. TechArch's Subsequent Federal Employment Tax Performance

Having right sized its staffing, TechArch again began meeting its Federal tax deposit obligations in the fourth quarter of 2002. All of the Federal tax deposits for the fourth quarter of 2002 and the first three quarters of 2003 were made, though several of them were late. Ms. Rohde believes that TechArch has paid all penalties in full, and that TechArch's last year of operation was one in which its employment tax obligations were paid in full.

In addition, TechArch again began making additional payments to the Service pursuant to the installment payment agreement, though in lesser amounts than it required, paying $7,500 on December 11, 2002 and again on February 4, and February 28, 2003, and paying $4,500 on June 3 and July 1, 2003. Throughout this time, TechArch was at least close to making its current federal tax deposits on time, and all of the employment taxes were paid in full.

After the third quarter of 2002, Ms. Rohde managed to have TechArch keep current on its

employment tax obligations, but she was out of money personally and unable to persuade Service personnel to shrink the outstanding liability or the required monthly payments to a level that TechArch had any chance of affording. She managed to make $31,500 in payments on the installment agreement in the fourth quarter of 2002 and 2003. Finally, essentially forced out of business by the Service under conditions that gave the Service the legal right to do just that, TechArch ceased operations.

Had the Service been willing to reduce the monthly payment in the installment payment agreement and grant a business offer in compromise to eliminate penalties and reduce non-trust fund tax liabilities that could not realistically be paid, TechArch probably would still be in business, and gradually paying off a substantial portion of the employment tax delinquencies spawned by the combination of CFO deceit, high tech consulting decline, 9-11 aftermath, and Ms. Rohde's willingness to keep trying instead of giving up.

## D. Requested Payment Allocation with Respect to 2002-3 Trust Fund Taxes

Attached **Exhibit D-2**, Payment Allocations for Third Quarter of 2002 for TFRP Purposes Only, shows payment allocations under three separate methodologies - a conservative, pro-IRS methodology, a middle ground methodology, and an aggressive, pro-taxpayer methodology. Under the third, Ms. Rohde very clearly has no TFRP for the third quarter of 2002.

Under the middle ground methodology, Exhibit D-2 shows a tentative TFRP of $7,205.19 but that would be completely eliminated by concluding that Ms. Rohde became a responsible person on February 10, 2001, as discussed at note 12 to Exhibit D-2.

Under the conservative, pro-IRS allocation methodology, Exhibit D-2 shows a TFRP of $29,827.45 for the third quarter of 2002. This appears to be Ms. Rohde's maximum TFRP exposure for the third quarter of 2002. It would be close to, if not, completely eliminated if it is concluded that Ms. Rohde became a responsible person on February 10, 2001.

Please note that these requested allocations are for TFRP purposes only. Ms. Rohde claims no right to determine how the Service should allocate these payments for purposes of determining what TechArch owes. She claims, for the reasons set forth in Section III, Grounds for Inapplicability of Trust Fund Recovery Penalty for Third Quarter of 2002, that these payment allocations must be made with respect only to determining her exposure to TFRP liability. Also, the payment allocations here are dependent on the payment allocations determined with respect to the first quarter 2001 trust fund recovery penalty issue and with respect to the second quarter 2002 TFRP issue, which are set forth in full in the respective refund claims with respect thereto. If these grounds are upheld by the Service or the courts, Ms. Rohde has relatively little or no liability for third quarter 2002 TFRP.

## III.
## Grounds for Inapplicability of Trust Fund Recovery Penalty for 2002-3

### A. Requirements for TFRP Application

Internal Revenue Code §6672(a) provides in relevant part as follows:

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempt in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected or not accounted for and paid over...."

A person described in the foregoing statute generally is called a "responsible person." Clearly, a person cannot be liable for the TFRP unless he or she is a responsible person.

Assuming responsible person status, liability follows only if the failure to collect, truthfully account for and/or pay over the tax is "willful."

Thus, for Ms. Rohde to be held liable for the TFRP with respect to any unpaid trust fund taxes of TechArch employees, she must have been a responsible person and must have willfully failed to collect, truthfully account for and/or pay over the tax.

The timing of a person's accession to responsible person status can be important and, due to the timing of TechArch's failures to pay its federal employment taxes and the question of allocation of subsequent payments on those taxes, is very important in this case.

### B. The Installment Agreement Payments Must Be Allocated, for TFRP Purposes Only, to TechArch's Trust Fund Taxes for the Period During Which Ms. Rohde Was a Responsible Person, Except that Payments During the Second and Third Quarters of 2002 Must Be Allocated as if They Were Current Employment Tax Deposits

The rule that the installment agreement payments must be allocated, for TFRP purposes only, to TechArch's employment taxes for the period during which Ms. Rohde was the responsible person applies for exactly the same reasons set out in Section III.G. of the claim with respect to the first quarter of 2001, the details of which will not be repeated here. To go right to the bottom line, this rule must be applied under Kenagy v. U.S., 942 F2d 459 (8th Cir. 1991) so that the unencumbered funds rule established by the United States Supreme Court in Slodov v. U.S., 436 US 238 (1978) and followed by the Eighth Circuit in Elmore v. U.S., 843 F2d 1128 (8th Cir. 1988) is not circumvented.

The precise outcome of the arithmetical details with respect to TechArch's first quarter 2001 and

second quarter 2002 employment taxes affects whether the third quarter 2002 TFRP is completely or only partially eliminated. As indicated in **Exhibit D-2**, a conservative pro-IRS allocation would result in Ms. Rohde having a third quarter 2002 TFRP liability of $29,827.45, and a middle ground allocation would result in a TFRP liability of $7,205.19 whereas the pro-taxpayer allocations result in Ms. Rohde's TFRP for the third quarter of 2002 being completely eliminated.

**C. The TFRP Does Not Apply to the Extent that Payments on the Installment Payment Agreement Could Have Been Applied to Reduce TFRP Exposure Because the Service Is Estopped to Allocate the Payments Otherwise By Its Misleading Advice to Ms. Rohde**

The grounds for estoppel are the same as expressed in the refund claim for the second quarter of 2002 and will not be repeated here. In the third quarter of 2002, they apply only to the $15,000 payment made in July 2002.

**D. The $15,000 July 2002 Installment Payment Must be Credited Against Third Quarter 2002 Employment Taxes Because, with Respect to it, Ms. Rohde Did Not Willfully Fail to Collect, Truthfully Account for or Pay Over the Trust Fund Taxes**

As noted in the refund claim for the second quarter of 2002, lack of willfulness for the failures to pay over the trust taxes in 2002 is on a different footing than in 2001. Moreover, the footing changes from the second to third quarters as well.

Up through the July 15, 2002, $15,000 installment agreement payment, the basis for a lack of willfulness on Ms. Rohde's part is the same in the third quarter as it was throughout the second. TechArch was continuing to make the onerous $15,000 per month payments, notwithstanding its much shrunken state. Therefore, for the same reasons as expressed in the second quarter refund claim, the $15,000 payment on July 15, 2002, must be treated as a current employment tax deposit. The reasons are lack of willfulness, the Slodov/Elmore/Kenagy line of cases, and equitable estoppel.

After July 15, 2002, the regular monthly installment agreement payments stopped, and Ms. Rohde concedes that she cannot avoid TFRP with respect to subsequent payments on the ground of a lack of willfulness, but rather must rely on the payment allocations for TFRP purposes only that are mandated by law.

## IV.
## Conclusion

Susan Rohde became a responsible person on February 10, 2001. TechArch had no unencumbered funds at that time. Ms. Rohde respectfully submits that these two propositions are established by the first quarter 2001 refund claim.

If the foregoing propositions are correct and the allocations for the first quarter of 2001 and the second quarter of 2002 are as discussed in those respective refund claims and summarized in the Conclusion to the second quarter 2002 claim, then the results for the third quarter of 2002 occur more or less automatically.

Under the conservative, pro-IRS method, the initial exposure of $41,341.45 is reduced only by the trust fund share of the $15,000 July installment agreement payment, which amounts to $11,514.00, and reduces the TFRP for the third quarter to $29,827.45. There are no other reductions because all the post-third quarter payments have already been allocated to reduce the second quarter 2002 TFRP.

Under the middle ground method, there are substantial amounts of post- third quarter payments to allocate, as a result of which the initial exposure of $41,341.45 is reduced to only $7,205.19.

Under the middle ground method, if it is established that Ms. Rohde became a responsible person on February 10, 2001, the third quarter 2002 TFRP is completely eliminated. Under the conservative, pro-IRS method, the same conclusion would either drastically reduce or eliminate the third quarter 2002 TFRP.

Under the pro-taxpayer method, utilizing less than all of the post-third quarter payments to reduce the third quarter TFRP exposure clearly and unequivocally completely eliminates the third quarter TFRP.

Thus, Ms. Rohde's third quarter 2002 TFRP exposure appears to be from zero to $29,827.45, and in any case less than the $32,341.45 that was assessed. Ms. Rohde respectfully submits that the correct answer to her TFRP for the third quarter of 2002 is zero.

Doc. #: 317540

**Exhibit D-1**

IRS Position on Details of Unpaid Trust Fund Taxes

St. Paul Office of Appeals
380 Jackson St., Suite 600
St. Paul, MN 55101-2906

Tele: (651) 290-3867, ext. 316
Fax: (651) 290-3080

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | JOHN JAMES | **Fax:** | 612-339-8064 |
| **From:** | Dale R. Veer | **Date:** | 5/18/2005 |
| **Re:** | ROHDE / TECHARCH | **Pages:** | 4, including cover |
| **CC:** | | | |

Mr. James:

Per the message I left on your voice mail, attached are the following documents that should explain Appeals' reduction in the total TFRP liability from $254,000 to $210,000.

Let me know if you need anything further.

Dale Veer
St. Paul Appeals

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

St. Paul Office of Appeals
380 Jackson St., Suite 600
St. Paul, MN 55101-2906

Tele: (651) 290-3867, ext. 316
Fax: (651) 290-3080

# facsimile transmittal

| | | | |
|---|---|---|---|
| To: | JOHN JAMES | Fax: | 612-339-8064 |
| From: | Dale R. Veer | Date: | 12-16-2003 |
| Re: | ROHDE / TECHARCH | Pages: | 3, including cover |
| CC: | | | |

Mr. James:

Per our conversation yesterday afternoon, here is the latest trust fund penalty computation adjusted to reflect:

1. The express designation of the two $4,500 payments to the 200209 period,
2. The implied designation of the Federal Tax Deposit made for the 200206 period, and
3. Application of all three $7,500 payments to the 200103 period (which ended up all being applied to trust fund taxes only for TFRP computation purposes)

I've also enclosed the relevant IRM section, which also references the latest Revenue Procedure (2002-26) for application of payments in this case.

Please forward the Jan. 12, 2001 payroll information **by December 23, 2003**, to enable me to reduce the 200103 TFRP amount in the amount of the employer's portion of FICA for that specific payroll.

As I stated, our office will be sustaining the Revenue Officer's decisions to a) deny Techarch's penalty abatement request, b) assess the TFRP against Susan Rohde for periods 200103, 200206, and 200209 in the properly adjusted amounts, and c) the proposed collection action under CDP.

Please contact me with any questions or concerns.

Dale Veer
St. Paul Appeals

CONFIDENTIALITY NOTICE: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

N 41-1841273 ASED 4/15/2005 Trust Fund Recovery Penalty Data Thur Nov. 6, 2003
TECHARCH, INC.

| Tax Period | Payment Data | Tax Only | FICA Employer | FICA Employee | Income Tax Withheld | **Trust Fund** | Late Payment Penalty | Late Deposit Penalty | Interest | TOTAL BALANCE DUE |
|---|---|---|---|---|---|---|---|---|---|---|
| | Amount | 276109.10 | 61480.56 | 61480.56 | 153147.98 | **214628.54** | 42606.18 | 41416.36 | 38999.03 | 399130.67 |
| **200103** | Paid | 157277.36 | 61480.56 | 61480.56 | 34316.24 | **95796.80** | 0.00 | 41416.36 | 0.00 | 198693.72 |
| | Balance | 118831.74 | 0.00 | 0.00 | 118831.74 | **118831.74** | 42606.18 | 0.00 | 38999.03 | **200436.95** |
| | Amount | 128614.61 | 30150.30 | 30150.31 | 68314.00 | **98464.31** | 14218.55 | 15962.69 | 10610.19 | 169406.04 |
| **200206** | Paid | 34576.83 | 30150.30 | 4426.53 | 0.00 | **4426.53** | 0.00 | 0.00 | 0.00 | 34576.83 |
| | Balance | 94037.78 | 0.00 | 25723.78 | 68314.00 | **94037.78** | 14218.55 | 15962.69 | 10610.19 | **134829.21** |
| | Amount | 53857.90 | 12516.45 | 12516.45 | 28825.00 | **41341.45** | 4612.57 | 7703.65 | 2773.90 | 68948.02 |
| **200209** | Paid | 16500.00 | 12516.45 | 3983.55 | 0.00 | **3983.55** | 0.00 | 0.00 | 0.00 | 16500.00 |
| | Balance | 37357.90 | 0.00 | 8532.90 | 28825.00 | **37357.90** | 4612.57 | 7703.65 | 2773.90 | **52448.02** |
| | Amount | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** | 0.00 | 905.76 | 7.32 | 24295.14 |
| **200303** | Paid | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** | 0.00 | 0.00 | 0 | 23382.06 |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** | 0.00 | 905.76 | 7.32 | **913.08** |
| | Amount | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** | 0.00 | 281.48 | 2.55 | 19592.83 |
| **200306** | Paid | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** | 0.00 | 0.00 | 0.00 | 19308.80 |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** | 0.00 | 281.48 | 2.55 | **284.03** |
| **Balance Totals** | | 250227.42 | 0.00 | 34256.68 | 215970.74 | **250227.42** | 61437.30 | 24853.58 | 52392.99 | **388911.29** |

IN 41-1841273 ASED 4/15/2005 Trust Fund Recovery Penalty Data
TECHARCH, INC.

Mon Dec. 15

| Tax Period | Payment Data | Tax Only | FICA Employer | FICA Employee | Income Tax Withheld | Trust Fund |
|---|---|---|---|---|---|---|
| | Amount | 276109.10 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| **200103** | Paid | 179777.36 | 61480.56 | 61480.56 | 56816.24 | **118296.80** |
| | Balance | 96331.74 | 0.00 | 0.00 | 96331.74 | **96331.74** |
| | Amount | 139935.42 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| **200203** | Paid | 139935.42 | 61480.56 | 61480.56 | 153147.98 | **214628.54** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| | Amount | 128614.61 | 30150.30 | 30150.31 | 68314.00 | **98464.31** |
| **200206** | Paid | 22203.26 | 5208.13 | 5208.13 | 11787.00 | **16995.13** |
| | Balance | 106411.35 | 24942.17 | 24942.18 | 56527.00 | **81469.18** |
| | Amount | 53857.90 | 12516.45 | 12516.45 | 28825.00 | **41341.45** |
| **200209** | Paid | 9000.00 | 0.00 | 9000.00 | 0.00 | **9000.00** |
| | Balance | 44857.90 | 12516.45 | 3516.45 | 28825.00 | **32341.45** |
| | Amount | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** |
| **200303** | Paid | 23382.06 | 5701.53 | 5701.53 | 11979.00 | **17680.53** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| | Amount | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** |
| **200306** | Paid | 19308.80 | 5139.40 | 5139.40 | 9030.00 | **14169.40** |
| | Balance | 0.00 | 0.00 | 0.00 | 0.00 | **0.00** |
| **Balance Totals** | | 247600.99 | 37458.62 | 28458.63 | 181683.74 | **210142.37** |

The overall Tax Only Balance Total is $2,626.43 less than the previous (TFRP computation because this amount was transferred from the 200203 period to the 200103 period. The 200203 period was not listed on the prior TFRP computation.)

**Exhibit D-2**

**Payment Allocations for Third Quarter of 2002 for TFRP Purposes Only**

| | Conservative Pro-IRS Allocations | Middle Ground | Aggressive Pro-Taxpayer Allocations |
|---|---|---|---|
| 200209 Tax[1] | $53,857.90 | $53,857.90 | $53,857.90 |
| Trust Fund Tax[2] | $41,341.45 | $41,341.45 | $41,341.45 |
| Non Trust Fund Tax[3] | 12,516.45 | 12,516.45 | 12,516.45 |
| Total Tax | $53,857.90 | $53,857.90 | $53,857.90 |
| Trust Tax Percentage[4] | 76.76% | 76.76% | 76.76% |
| Initial Unpaid Trust Fund Tax[5] | $41,341.45 | $41,341.45 | $41,341.45 |
| 7/12/02 payment[6] | $11,514.00 | $11,514.00 | $11,514.00 |
| 12/11/02 payment[7] | -- | --- | 5,827.45 |
| 2/4/03 payment[8] | -- | 6,122.26 | 7,500.00 |
| 2/28/03 payment[9] | -- | 7,500.00 | 7,500.00 |
| 6/3/03 payment[10] | -- | 4,500.00 | 4,500.00 |
| 7/1/03 payment[11] | -- | 4,500.00 | 4,500.00 |
| Total Trust Fund Tax Payments | $11,514.00 | $34,136.26 | $41,341.45 |
| Leaves[12] | $29,827.45 | $ 7,205.19 | $ 0.00 |

---

[1]Form 941 and IRS agree on $53,857.90. No deposits were made.

[2]Per IRS. See last page of Exhibit D-1.

[3]Same as footnote 2.

[4]41,341.45/53,857.90 = 76.76%

[5]IRS shows only $32,341.45 on last page of Exhibit D-1 because credited the $9,000 in 2003 payments specifically directed to trust tax to 20
to the extent needed.

[6]This is the final timely $15.
estoppel plainly require tr

[7]Slodov/Elmore/Ken
Full $7,500 alloc
to 200206 und

[8]Grounds
under

[9]
res
$41,7
TFRP lia
February 20
February 10, 2
Ms. Rohde did not
also all of the TFRP